JEFFREY L. FILLERUP (SBN 120543)
jfillerup@rinconlawllp.com
RINCON LAW LLP
200 California St., Suite 400
San Francisco, CA  94111
Telephone:      (415) 996-8199
Facsimile:       (415) 680-1712

WENDY MURPHY (pro hac vice application pending)
wmurphy@nesl.edu
New England Law/Boston
154 Stuart Street
Boston, MA 02116
Telephone:  (617) 422-7410

Attorneys for The Women's and Children's Advocacy Project,
Equal Means Equal, National Coalition Against Violent Athletes,
Faculty Against Rape, and Allies Reaching for Equality,
Women Matter, and We Are Woman

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| SURVJUSTICE, INC.,<br>1015 15th Street NW, Suite 632<br>Washington, DC 20005<br><br>EQUAL RIGHTS ADVOCATES,<br>1170 Market Street, Suite 700<br>San Francisco, CA 94102<br><br>VICTIM RIGHTS LAW CENTER<br>520 SW Yamhill Street<br>Portland, OR 97204,<br><br>            Plaintiffs,<br><br>v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of Education,<br>400 Maryland Avenue SW<br>Washington DC 20202, et al.,<br><br><br>            Defendants. | Case No. 3:18-cv-00535-JSC<br><br>**AMICUS CURIAE BRIEF ON BEHALF OF THE WOMEN'S AND CHILDREN'S ADVOCACY PROJECT, EQUAL MEANS EQUAL, NATIONAL COALITION AGAINST VIOLENT ATHLETES, ALLIES REACHING FOR EQUALITY, WOMEN MATTER, AND WE ARE WOMAN**<br><br>Date:       July 19, 2018<br>Time:      9:00 a.m.<br>Place:     450 Golden Gate Ave., 15th Fl.<br>           Courtroom F<br>           Hon. Jacqueline Scott Corley<br>           San Francisco, CA  94102 |

Table of Contents

TABLE OF AUTHORITIES..............................................................................iii

INTRODUCTION..........................................................................................1

ARGUMENT ...............................................................................................2

    **A. Title IX Requires The Fully Equal Treatment of Sex-Based Harms**...............2

    **B. Title IX Requires That Harms Based on Sex be Treated the Same as Harms Based on Race and National Origin**........................................................3

    **C. Title IX Forbids Separate and Different Treatment of Sex-Based Harms**.....4

    **D. Title IX's Mandate of Equitable Redress Requires Use of the Preponderance of Evidence Standard**................................................5

    **E. Title IX Requires Use of "Unwelcome" as the Definitional Standard to Determine Sex-Based Harms**................................................6

    **F. The DeVos Rules Unlawfully Require and Permit Different and Unequal Treatment of Sex-Based Harms**..............................................7

        1. Sex-Based Harms Are Subjected to Separate and Different Treatment..........7

        2. Schools May Apply a Clear and Convincing Evidence Standard and Provide Fair Rather Than Equitable Redress....................................8

        3. More Onerous Criminal Law Definitions Are Permitted, if not Required......10

        4. Schools Are Encouraged to Grant *Offenders* of Sex-Based Civil Rights Harms the Same Rights as *Victims* of Sex-Based Civil Rights Harms...........12

        5. Schools Are Encouraged to Treat Sex-Based Civil Rights Harms the Same as Non-Civil Rights Harms.............................................. 12

    **G. The DeVos Rules Injure All Women**....................................... 12

    **H. The DeVos Rules Are Final Agency Action**................................ 14

    **I. Other Claims and Constitutional Infirmities Not Asserted by the Plaintiffs, That Greatly Affect Women's Rights**...............................18

        1. Title IX.....................................................................18

        2. Tenth Amendment......................................................18

3.   Spending Clause.................................................................................................19

**CONCLUSION**...............................................................................................................20

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Auer v. Robbins,* 519 U.S. 452 (1997)…………………………………………………………15

*Cannon v. University*, 441 U.S. 677 (1979). …………………………...............2, 3, 16, 18, 19

*Christensen v. Harris Cty.,* 529 U.S. 576 (2000) …………………………………………14

City of Los Angeles, Dep't of Water and Power v. Manhart, 435 U.S. 702 (1978)…….12, 17, 20

*Cobb v. Dept. of Education*, 487 F.Supp. 1049 (D.Minn. 2007)………………………………..18

*Cohen v. Brown Univ.,* 101 F.3d 155 (1ˢᵗ Cir. 1996) ……………………..…………………17

*Colon v. Sec. Dept. Health and Human Services,* 2007 WL 268781 (Fed. Cl. 2007)………….....8

*Commonwealth v. King*, 374 Mass. 5 (1977) ……………………………………………...20

*Cruzan v. Director, Missouri Department of Health,* 497 U.S. 261 (1990) ……………………..8

*Davis v. Monroe Cnty. Bd. of Ed.*, 526 U.S. 629 (1999)…………………………………………2

*Doe v. Brandeis Univ.*, 177 F.3d 561 (D. Mass. 2016)…………………………………………9

*Doe v. U.S. Dept. of Health and Human Services*, 85 F. Supp. 3d 1 (D.D.C. 2015)……………1

*Fertilizer Inst. v. EPA*, 935 F.2d 1303 (D.C. Cir. 1991) …………………………………………14

*Gautreaux v. Romney*, 448 F.2d 731 (7ᵗʰ Cir. 1971) …………………………………………...18

*Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 291 (1998)………………………………2

*Glycine & More, Inc. v. United States*, 880 F.3d 1335 (Fed. Cir. 2018)……………………16, 17

*Kollaritsch et al., v. Michigan State University Board of Trustees, et al.,*
    1:15-cv-01191-PLM-PJG, United States District Court, W.D. Mich……………………...18

*Montgomery Improvement Ass'n, Inc. v. U.S. Dept. of Housing and Urban Dev.,*
    645 F.2d 291 (5ᵗʰ Cir. 1981)…………………………..………………………………...18

*Nat'l Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) ………………......19

*Roberto v. Dep't of Navy*, 440 F.3d 1341 (Fed. Cir. 2006)………………………………14, 15

*South Dakota v. Dole,* 483 U.S. 203 (1987) …………………………………..……………...19

*Steadman v. Securities & Exchange Commission*, 450 U.S. 375 (1983). ……………………...5

*Tesoro Haw. Corp. v. United States*, 405 F.3d 1339 (Fed. Cir. 2005) …………………….........15

*Tsirelman v. Daines*, 19 F.Supp. 3d 438 (E.D.N.Y. 2014)……………………………….........5

*U.S. v. Morrison*, 529 U.S. 598 *(2000)*……………………….………...…………………..18, 19

*U.S. Army Corp. of Eng'rs v. Hawkes Co*., 136 S.Ct. 1807 (2016)…………………………15

*Valmonte v. Bane*, 18 F.3d 992, 994 (2d Cir. 1994)…………………………………………..5

*Women's Equity Action League v. Cavazos*, 906 F.2d 742 (D.C. Cir. 1990) …………………18

Statutes, Codes, and Constitutional Provisions

Article I, § 8, U.S. Constitution …………………………………………………………..19

Campus SaVE Act of 2013 ………………………………………………….…………*Passim*

Civil Rights Restoration Act of 1987……………………………………………………........4

Clery Act of 1990 ………………………………………………………….........................1

Equal Educational Opportunities Act of 1974  ……………………………………....….…2

Mass. General Law, c. 93 § 102 ……………………………………………………………20

Title IV of the Civil Rights Act of 1964 ……………………………...…………….....*Passim*

Title VI of the Civil Rights Act of 1964 …………………………………….……......*Passim*

Title IX of the Education Amendments of 1972 ...............................................................*Passim*

U.S. Constitutional Amendment X ………………………………………………………18

5 U.S.C. § 553 et. seq.……………………………………………………………14, 16

20 U.S.C. § 1092 ………………………………………………………………….1, 16

20 U.S.C. § 1681 et seq. ………………………………………………….....1, 2, 3

20 U.S.C. § 1687……………………………………………………………………4

28 C.F.R. Part 54 ………………………………………………………………4

29 U.S.C. § 794……………………………………………………………......3, 4

34 C.F.R. Part 106, et seq.……………………………………………….............1, 4, 5, 6

34 C.F.R. § 668, et seq. ……………………………………………………......9, 10, 11

42 U.S.C. §§ 2000c et seq. ……………………………………………………......2

42 U.S.C. §§ 2000d………………………………………………………………2, 3, 4

Other Authorities

Columbia University, *Essential Policies for the Columbia Community*, http://www.essential-policies.columbia.edu/gender-based-misconduct-policies-students …………………………..11

Georgia Institute of Technology, *Sexual Misconduct Policy*, http://policylibrary.gatech.edu/student-affairs/ student-sexual-misconduct-policy-change …...11

Education & Title IX, National Women's Law Center, http://www.nwlc.org/our-issues/education-%2526-title-ix……………….......................................................................7

Freyd, J. et al., Preliminary Results from the University of Oregon Sexual Violence and Institutional Behavior Campus Survey, 2014 …………………………………………………...8

Koss, M.P. (1988). *Hidden Rape: Incidence, Prevalence and Descriptive Characteristics of Sexual Aggression and Victimization in a National Sample of College Students,* In Burgess, A.W. (ed.) Sexual Assault. Vol. II. New York: Garland Pub………....……………………...7, 8

Letter from Gary D. Jackson, Regional Civil Rights Director, OCR Region X, to Jane Jervis, President, Evergreen State College (April 4, 1995) …………………………………………..5

Letter from Sheralyn Goldbecker, OCR D.C. Office, to John J. DeGioia, President, Georgetown University (May 5, 2004)……………………………………………………………………...5

Murphy, W., Krakauer's Missoula: Where Subversive Meets Verisimilitude, 42 Journal of College and University Law, number 2, pp. 479-516 (2016)…………....……...7

National Institute of Justice, Stalking in America: Findings from the National Violence Against Women Survey, 1998 …………………….......................................................................8

University of Delaware, *Sexual Misconduct Policy*; https://sites.udel.edu/sexualmisconduct/files/2015/08/FINALSexual-Misconduct-PolicyJuly-2015-1-2l7elf5.pdf…..11

University of Michigan, *Student Sexual Assault Policy*, https://studentsexualmisconductpolicy.umich.edu/ …………………………………………………………………………11

University of Oregon, *Student Conduct Code*, http://policies.uoregon.edu/vol-3-administration-student-affairs/ch-1-conduct/student-conduct-code …………………………………………11

Vanderbilt University, *Sexual Misconduct and Other Forms of Power-Based Personal Violence,* http://www.vanderbilt.edu/student_handbook/sexual-misconduct/…………………………..11

U.S. DEPT. OF EDUCATION, OFFICE FOR CIVIL RIGHTS, DEAR COLLEAGUE LETTER (October 26, 2010)……………………………….…………………………………………..6, 7, 12

U.S. DEPARTMENT OF EDUCATION, OFFICE FOR CIVIL RIGHTS, DEAR COLLEAGUE LETTER (Apr. 4, 2011), http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html...................5, 16

U.S. DEPARTMENT OF EDUCATION, OFFICE FOR CIVIL RIGHTS, Region III, *Response Letter,* case no. 03142350, dated August 12, 2014……………………………………………………………………..1

U.S. DEPARTMENT OF EDUCATION, OFFICE FOR CIVIL RIGHTS, Title VI Enforcement Highlights, http://www2.ed.gov/documents/press-releases/title-vi-enforcement.pdf ......................................3

U.S. DEPARTMENT OF EDUCATION, OFFICE FOR CIVIL RIGHTS, *Questions and Answers on Title IX and Sexual Violence,* April 29, 2014, https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf..................................................................................................................1, 11, 16

U.S. DEPARTMENT OF EDUCATION, OFFICE FOR CIVIL RIGHTS, *Questions and Answers on Campus Sexual Misconduct,* September 22, 2017, https://www2.ed.gov/about/offices/list/ocr/docs/qa-201709.pdf.......................................................................................................................*passim*

U.S. DEPARTMENT OF JUSTICE, *2003 National Crime Victimization Survey.* ……………………8

U.S. DEPARTMENT OF JUSTICE, BUREAU OF JUSTICE STATISTICS, Violence Against Women, 1994 .......................................................................................7

U.S. DEPARTMENT OF JUSTICE, *Justice Department Announces Investigations of the Handling of Sexual Assault Allegations by the University of Montana, the Missoula, Mont., Police Department and the Missoula County Attorney's Office,* Department of Justice (May 1, 2012), http://www.justice.gov/ opa/pr/2012/ May/12-crt-561.html………………………………………...3

U.S. DEPARTMENT OF JUSTICE, CIVIL RIGHTS DIVISION; U.S. DEPARTMENT OF EDUCATION, OFFICE FOR CIVIL RIGHTS, Educational Opportunities Section, Among the University of Montana – Missoula, RESOLUTION AGREEMENT, http://www.justice.gov/crt/about/edu/documents/ montanaagree.pdf……………………………….........................................................................3

U.S. DEPARTMENT OF JUSTICE, *findings letter against the University of New Mexico,* (April 22, 2016), https://www.justice.gov/opa/file/843901/download ..........................................................3

U.S. DEPARTMENT OF JUSTICE, *Title IX Legal Manual,* http://www.justice.gov/crt/about/cor/ coord/ixlegal.php………………………………………………………….……3, 13, 17

U.S. DEPARTMENT OF JUSTICE, *Violence by Intimates: Analysis of Data on Crimes by Current or Former Spouses, Boyfriends, and Girlfriends,* (March 1998)………………………..8

## I.      INTRODUCTION

Plaintiffs filed an action for injunctive relief under the Administrative Procedures Act, (APA) the Equal Protection Clause of the Fifth Amendment, and the Ultra Vires doctrine, (Comp. pp.37-40) seeking relief from new rules issued by Defendant Department of Department of Education (DOE) and announced by Defendant DeVos on September 22, 2017. (DeVos Rules) (Comp. pp.2-3) The DeVos Rules affect the way schools respond to and redress sex-based civil rights harms covered by Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, and implementing regulations, 34 C.F.R. part 106 et. seq. (Title IX) (Comp. pp.31-33) Specifically, the DeVos Rules permit schools to subject sex-based civil rights harms to separate, different, and worse treatment compared to other civil rights harms.

As authority for their issuance, Defendants rely heavily on regulations promulgated under a law other than Title IX, known as the Campus SaVE Act. (SaVE) SaVE was enacted as an amendment to the Violence Against Women Reauthorization Act of 2013, 113 Pub. L. No. 4, 127 Stat. 54. SaVE amended § 485(f) of the Higher Education Act of 1965 (20 U.S.C. § 1092(f)), commonly known as the Clery Act. (DeVos Rules, p.2, n.8)

The DeVos Rules incorporated SaVE into Title IX even though SaVE did not amend Title IX, the DOE does not enforce it,[1] and at least one federal court has ruled that SaVE can have "no effect" on Title IX because it amended the Clery Act. *Doe v. U.S. Dept. of Health and Human Services*, 85 F. Supp. 3d 1, 11 (D.D.C. 2015). The DOE itself conceded in an August 2014 guidance document that "[n]othing in [SaVE] … relieves a school of its obligation to comply with the requirements of Title IX …" Dept. of Education, Office for Civil Rights, *Questions and Answers on Title IX and Sexual Violence*, April 29, 2014, p.44.

Because SaVE did not amend Title IX, regulations promulgated pursuant to SaVE cannot be

---

[1] See e.g., U.S. Dept. of Education, Office for Civil Rights, Region III, *Response Letter,* case no. 03142350, dated August 12, 2014, acknowledging that OCR has no jurisdiction over SaVE, and stating "OCR does not enforce the SaVE Act; accordingly the SaVE Act is not relevant to complaints filed with OCR."

AMICUS CURIAE BRIEF ON BEHALF OF THE WOMEN'S AND CHILDREN'S ADVOCACY PROJECT, EQUAL MEANS EQUAL, NATIONAL COALITION AGAINST VIOLENT ATHLETES, ALLIES REACHING FOR EQUALITY, WOMEN MATTER, AND WE ARE WOMAN

incorporated into the DeVos Rules, much less can they provide the legal foundation for those provisions of the DeVos Rules that substantively weaken Title IX.

## II.  ARGUMENT

### A.  Title IX Requires The Fully Equal Treatment of Sex-Based Harms

Title IX of the Education Amendments of 1972 is a federal civil rights law that forbids sex discrimination, 20 U.S.C. § 1681(a), including sex-based assaults. *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 291 (1998); *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 641 (1999) in or by federally funded educational entities. Persons protected by Title IX may seek redress by filing grievances on campus and complaints with federal oversight agencies, such as the Office for Civil Rights (OCR) at the Department of Education (DOE), as well as through a private right of action. *Cannon v. University*, 441 U.S. 677, 703, n.33 (1979). Title IV of the Civil Rights Act of 1964 applies to public schools and prohibits the same harm as that which is prohibited by Title IX. Title IV also prohibits discrimination, including assaults, on the basis of race, color, religion, and national origin. 42 U.S.C. §§ 2000c through 2000c-9; Equal Educational Opportunities Act of 1974, Title II, 20 U.S.C. §§ 1701-1758.

Long misunderstood to be primarily a sports equity rule for female athletes, Title IX was modeled after Title VI of the Civil Rights Act of 1964, which provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," 42 U.S.C. §§ 2000d - 2000d-7. Title IX uses exactly the same enabling language and states, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…" 20 U.S.C. § 1681(a).

AMICUS CURIAE BRIEF ON BEHALF OF THE WOMEN'S AND CHILDREN'S ADVOCACY PROJECT, EQUAL MEANS EQUAL, NATIONAL COALITION AGAINST VIOLENT ATHLETES, ALLIES REACHING FOR EQUALITY, WOMEN MATTER, AND WE ARE WOMAN

**B. Title IX Requires That Harms Based on Sex Be Treated The Same As Harms Based on Race and National Origin**

Harms based on sex are entitled to the same treatment as harms based on race and national origin under Title IV[2] and Title VI[3]. Title IX is coextensive with civil rights laws that protect against other civil rights harms, such as those based on race and national origin. *Cannon v. University of Chicago*, *supra,* at 694-98 (1979) (Congress intended that Title IX would be interpreted and applied as Title VI has been); *U.S. Department of Justice, findings letter against the University of New Mexico*, (April 22, 2016) (noting that Title IX, Title VI, and Title IV are coextensive civil rights laws);  https://www.justice.gov/opa/file/843901/download;  *Justice Department Announces Investigations of the Handling of Sexual Assault Allegations by the University of Montana, the Missoula, Mont., Police Department and the Missoula County Attorney's Office,* Department of Justice (May 1, 2012), http://www.justice.gov/opa/pr/2012/ May/12-crt-561.html (announcing Title

---

[2]  Among the University of Montana - Missoula, the U.S. Department of Justice, Civil Rights Division, Educational Opportunities Section and the U.S. Department of Education, Office for Civil Rights, RESOLUTION AGREEMENT, available at http://www.justice.gov/crt/about/edu/documents/montanaagree.pdf (announcing resolution agreement with the University of Montana and noting that Title IV and Title IX both require "equity" and are subject to the same regulations and standards of enforcement).

[3]  *Title VI Enforcement Highlights Office for Civil Rights,* U.S. DEPARTMENT OF EDUCATION, http://www2.ed.gov/documents/press-releases/title-vi-enforcement.pdf (repeatedly noting that Title VI requires schools to apply standard of "equity"); *Title IX Legal Manual*, THE UNITED STATES DEPARTMENT OF JUSTICE, http://www.justice.gov/crt/about/cor/coord/ixlegal.php; *see also* 42 U.S.C. § 2000d-7 (requiring equal treatment on behalf of all protected class categories). A section labeled "Civil rights remedies equalization" provides that "(1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of § 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794], Title IX of the Education Amendments of 1972 [20 U.S.C. 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C. 6101 et seq.], Title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." This "Civil rights remedies equalization" mandate further states that "(2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State."

IX compliance review and Title IV investigation of the University of Montana and noting, "Title IX of the Education Amendments of 1972 and Title IV of the Civil Rights Act of 1964 each prohibit sex discrimination, including sexual assault and sexual harassment in education programs"); *Resolution Agreement, http://www. justice.gov/ crt/about/edu/documents/montanaagree.pdf* (announcing resolution agreement with the University of Montana and noting that Title IV and Title IX are subject to the same regulations to ensure enforcement of rights regarding discrimination, harassment, and violence. 28 C.F.R. Part 54 and 34 C.F.R. Part 106). *See also,* Civil Rights Restoration Act of 1987, equating standards from Title VI with Title IX, 20 U.S.C. § 1687; 29 U.S.C. § 794, 42 U.S.C. § 2000d-4a, and 42 U.S.C. § 6101; 34 C.F.R. § 106.71 (stating that the procedural provisions applicable to Title VI of the Civil Rights Act, 34 CFR §§ 100.6-100.11, are adopted and incorporated therein).

## C.  Title IX Forbids Separate and Different Treatment of Sex-Based Harms

Longstanding regulations duly promulgated under Title IX explicitly forbid "different treatment" with regard to sex-based matters, in a comprehensive scheme that begins "No person shall, on the basis of sex be . . . subjected to discrimination." 34 C.F.R. part 106.31(a). The regulations list specific prohibitions that forbid funding recipients to: "subject any person to separate or different rules of behavior, sanctions, or other treatment;" or otherwise "limit any person in the enjoyment of any right, privilege, advantage or opportunity;" "treat one person differently from another" in "determining whether such person satisfies any requirement of condition for the provision of such aid, benefit, or service;" or "provide different aid, benefits or services in a different manner;" 34 C.F.R. part 106.31(b)(1-7). Title IX regulations further prohibit the "use or distribut[ion of] a publication, which suggests by text or illustration that such school treats applicants, students or employees differently on the basis of sex" 34 C.F.R. part 106.9(b)(2), and mandate that funding recipients "adopt and publish grievance procedures providing for prompt and equitable resolution

of student and employee complaints alleging any action, which would be prohibited by Title IX."

34 C.F.R. part 106.8(b).

### D. Title IX's Mandate of Equitable Redress Requires Use of the Preponderance of Evidence Standard

The preponderance of evidence standard is routinely applied in federal administrative proceedings,[4] and as an aspect of equitable grievance procedures under Title IX, has been required for decades.[5] Indeed, that Title IX's mandate of equitable grievance procedures requires application of the preponderance standard was acknowledged during congressional hearings pertaining to the enactment of SaVE. A congressman who wanted schools to be able to apply a burden of proof more

---

[4] The preponderance standard is broadly applicable in federal administrative proceedings, even when the issue involves fraud, and the imposition of serious sanctions such as an order permanently barring an individual from practicing his or her profession. *Steadman v. Securities & Exchange Commission*, 450 U.S. 375, 389-90 (1983). The preponderance standard is also used in administrative cases involving stigmatizing actions. See, e.g., *Valmonte v. Bane*, 18 F.3d 992, 994 (2d Cir. 1994) (publication of names of suspected child abusers on central registry); *Petition of Grimm*, 635 A.2d 456 (N.H. 1993) (physician disciplinary proceedings involving sexual misconduct with patient). The risk that a person may suffer reputational harm is insufficient to require an agency to apply the clear and convincing evidence standard where there is a countervailing public interest. *See Tsirelman v. Daines*, 19 F.Supp. 3d 438 (E.D.N.Y. 2014).

[5] Letter from Sheralyn Goldbecker, OCR D.C. Office, to John J. DeGioia, President, Georgetown University (May 5, 2004) ("[C]omplaints of sexual harassment were resolved using a clear and convincing evidence standard, a higher standard than the preponderance of the evidence standard, which is the appropriate standard under Title IX for sex discrimination complaints, including those alleging sexual harassment."); Letter from Gary D. Jackson, Regional Civil Rights Director, OCR Region X, to Jane Jervis, President, Evergreen State College (April 4, 1995) (the "evidentiary standard of proof applied to Title IX actions is that of a 'preponderance of the evidence;'" requiring "'clear and convincing proof'" imposes "a heavier burden of proof than that which is required under Title IX.") OCR also uses a preponderance of the evidence standard when it resolves complaints against recipients, and in fund termination hearings. "Grievance procedures that use [a] higher standard are inconsistent with the standard of proof established for violations of the civil rights laws, and are thus not equitable under Title IX." See U.S. DEPT. OF EDUCATION OFFICE FOR CIVIL RIGHTS, DEAR COLLEAGUE LETTER (Apr. 4, 2011), available at *http://www2.ed.gov/about/offices/list/o*cr/letters/colleague-201104.html, pg. 12. (emphasis added). Note that although the 2011 Dear Colleague Letter was rescinded in September 2017, its observation about why only the preponderance standard is equitable remains valid because the Letter merely cited to other sources of legal authority that make the same point.

onerous than preponderance in Title IX matters was strikingly candid about why removing the word "equitable" from SaVE would accomplish that goal: "The majority bill said that college campuses must provide for 'prompt and equitable investigation and resolution' of charges of violence or stalking. This would have codified a proposed rule of the Department of Education that would have required imposition of a civil standard or preponderance of the evidence for what is essentially a criminal charge … The substitute eliminates this provision." *Testimony of Senator Grassley, Iowa*, 158 Cong Rec. S 2761, Congressional Record, Sen., 112th Congress, 2nd Session Senate, April 26, 2012; Violence Against Women Reauthorization Act of 2011, Reference: Vol. 158, No. 61. That a member of Congress would describe a civil rights offense being addressed in a civil rights proceeding on campus as a "criminal charge" is curious. Yet the comment is no less clear in its acknowledgement that Title IX's mandate of equitable redress forbids application of a clear and convincing burden of proof.

### E.  Title IX Requires Use of "Unwelcome" as the Definitional Standard to Determine Sex-Based Harms

A sex-based offense under Title IX is one that is unwelcome, and is defined as that which a person considers to be "undesirable or offensive." http://www2.ed.gov/about/offices/list/ocr/docs/ocrshpam.html. This definition must be used when schools address sex-based harms because the Title IX regulation covers "*any action*, which would be prohibited by Title IX." 34 C.F.R. part 106.8(b) (emphasis added). The "action," not the label used to describe the behavior, dictates whether a school must respond under Title IX, pursuant to Title IX standards. *Letter from Russlynn Ali*, Asst. Sec'y for Civil Rights, DEPARTMENT OF EDUCATION, OFFICE FOR CIVIL RIGHTS, p.8, (October 26, 2010) ("The label used to describe an incident (*e.g.*, bullying, hazing, teasing) does not determine how a school is obligated to respond. Rather, the nature of the conduct itself must be assessed for civil rights implications. So, for example, if the abusive behavior is on the basis of race, color, national origin, sex, or disability, and creates a hostile environment, a school is obligated to

respond in accordance with the applicable federal civil rights statutes and regulations enforced by OCR"); http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf; *Education & Title IX,* NATIONAL WOMEN'S LAW CENTER. http://www.nwlc.org/our-issues/education-%2526-title-ix.

Because "the nature of the conduct" dictates a funding recipient's responsibilities under Title IX, criminal law definitions such as "sexual assault" may not be used in the determination of Title IX matters, as they require more and different evidence than that which establishes that an act was unwelcome. For example, sexual assault typically requires proof of non-consent, which is a more onerous standard than unwelcome. *Murphy, W., Krakauer's Missoula: Where Subversive Meets Verisimilitude*, 42 Journal of College and University Law, no. 2, 479, 496-97 (2016) (explaining how the definition of non-consent under sexual assault law requires more and different proof than unwelcome). *Letter From Russlyn Ali, supra; Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986) ("The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome'"); *Chancellor v. Pottsgrove School Dist.*, 501 F.Supp.2d 695 (E.D. Pa. 2007) (unwelcome does not ask whether a person "consented," or even consented "voluntarily," but rather, whether the words or actions were "welcome").

**F.   The DeVos Rules Unlawfully Require and Permit Different and Unequal Treatment of Sex-Based Harms**

1. Sex-Based Harms Are Subjected to Separate and Different Treatment

The DeVos Rules are applicable only to the following sex-based civil rights harms: "dating

AMICUS CURIAE BRIEF ON BEHALF OF THE WOMEN'S AND CHILDREN'S ADVOCACY PROJECT, EQUAL MEANS EQUAL, NATIONAL COALITION AGAINST VIOLENT ATHLETES, ALLIES REACHING FOR EQUALITY, WOMEN MATTER, AND WE ARE WOMAN

violence,[6] domestic violence,[7] sexual assault,[8] and stalking,"[9] (DeVos Rules, p.1, 2) and are not applicable to other civil rights categories, such as race and national origin.

2. Schools May Apply a Clear and Convincing Evidence Standard and Provide Fair Rather Than Equitable Redress

The DeVos Rules permit schools to apply a clear and convincing evidence burden of proof[10] when redressing sex-based harms (DeVos Rules, p.5), which is different and more onerous than the preponderance of the evidence standard[11] required by Title IX. Preponderance is mandatory under

---

[6] 92% of all domestic violence incidents are committed by men against women. *Violence Against Women, Bureau of Justice Statistics*, U.S. Department of Justice, January, 1994; 84% of raped women know their assailants and 57% of rapes occur on a date. Koss, M.P. (1988). *Hidden Rape: Incidence, Prevalence and descriptive Characteristics of Sexual Aggression and Victimization in a National Sample of College Students*. In Burgess, A.W. (ed.) *Sexual Assault*. Vol. II. New York: Garland Pub.

[7] Women are less likely than men to be victims of violent crimes overall, but are five to eight times more likely than men to be victimized by an intimate partner. Violence by Intimates: *Analysis of Data on Crimes by Current or Former Spouses, Boyfriends, and Girlfriends, U.S. Department of Justice*, March, 1998. Violence by an intimate partner accounts for about 21% of violent crime experienced by women and about 2% of the violence experienced by men. Id.

[8] Nine out of ten rape victims are female, U.S. DEPARTMENT OF JUSTICE, 2003 National Crime Victimization Survey 2003; Women aged 16-24 are four times more likely to be raped than any other group. Koss, M.P., supra. One in three to one in four women are victimized by sexual assault during college. Freyd, J. et al., *Preliminary Results from the University of Oregon Sexual Violence and Institutional Behavior Campus Survey*, 2014, *http://dynamic.uoregon.edu/jjf/campus/UO-campus-results-30Sept14.pdf*; *https://www.ncjrs.gov/pdffiles1/nij/grants/221153.pdf*, p.xii-xiii and 2-1 (2007).

[9] 8% of women and 2% of men in the United States have been stalked at some time in their life. 78% of stalking victims identified in a survey were women, and 22 percent were men. Thus, four out of five stalking victims are women. By comparison, 94 percent of the stalkers identified by female victims and 60 percent of the stalkers identified by male victims were male. Overall, 87 percent of the stalkers identified by the victims were male. NATIONAL INSTITUTE OF JUSTICE, 1998. *Stalking in America: Findings from the National Violence Against Women Survey*).

[10] *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261, 285, 310 (1990) (clear and convincing means "an abiding conviction," a firm belief or conviction … evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts…")

[11] *Colon v. Sec. Dept. Health and Human Services*, 2007 WL 268781 (Fed. Cl. 2007) (the preponderance of the evidence means "50% and a feather.") *See also U.S. v. Restrepo*, 946 F.2d 654,

8
3:18-cv-00535-JSC

1  Title IX because, as noted above, equitable redress is mandatory and preponderance is mandatory

2  under the meaning of the word equitable.

3        Although the DeVos Rules make reference to Title IX's standard of equitable redress (DeVos

4  Rules, p.3), they also separately incorporate SaVE, (DeVos Rules, p.2, n.8), which nowhere requires

5  equitable redress, and instead requires only a "… *fair*, and impartial process from the initial

6  investigation to the final result" 34 C.F.R. § 668.46(k)(2)(i)(emphasis added). SaVE states that

7  schools must *disseminate* the standard of proof used to address sex-based harms, (DeVos Rules, p.5,

8  n.19) but it does not specify which burden of proof must be used, 34 C.F.R. § 668.46(k)(l)(ii). Nor

9  does SaVE permit use of a standard more onerous than preponderance.

10        The distinction between equitable and fair is important. While longstanding Title IX

11  authority provides that only the preponderance standard is equitable, no relevant authority holds that

12  preponderance is required under the meaning of the word fair. Hence, a burden of proof more

13  onerous than preponderance, though improper under the meaning of the word equitable, may well

14  be lawful under the meaning of the word fair. The fact that the word fair is different, and that

15  equitable was removed in order to permit the use of a more onerous burden of proof, demonstrates

16  that the DeVos Rules permit different and unequal treatment of sex-based harms.

17        In further support of the clear and convincing evidence standard, the DeVos Rules cite *Doe*

18  *v. Brandeis Univ.*, 177 F.3d 561, 607 (D. Mass. 2016). However, that case did not involve any Title

19  IX claims, or include an analysis of claims *under Title IX*. The DeVos Rules also cite *Brandeis* for

20  the proposition that the defendant school "lower[ed] … the standard [of proof] … as a "deliberate

21  choice by the university to make cases of sexual misconduct easier to prove … [and that] it "retained

22  the higher standard of proof for virtually all other forms of student misconduct."  (DeVos Rules, p.5,

23  n.19). In fact, the university did not "lower" the standard of proof because preponderance had been

24  the standard of proof in campus-based civil rights proceedings for decades, as determined not only

25
―――――――――――――――――――――

26  661 (9th Cir. 1991) (preponderance means a fact can be considered true "if the fact-finder is
   convinced that the fact is more probably true than not….a 50%-plus chance that it is true.)

27  AMICUS CURIAE BRIEF ON BEHALF OF THE WOMEN'S AND CHILDREN'S ADVOCACY
   PROJECT, EQUAL MEANS EQUAL, NATIONAL COALITION AGAINST VIOLENT ATHLETES, ALLIES

28  REACHING FOR EQUALITY, WOMEN MATTER, AND WE ARE WOMAN

by agency guidance but also court decision. (*supra*, pp.5-6). The *Brandeis* court's use of the phrase "virtually all," rather than "all," effectively acknowledges that schools do not, and cannot, use a burden of proof more onerous than preponderance when addressing civil rights harms, including those covered by Title IX.

The DeVos Rules nowhere state that schools should or may use the clear and convincing standard when addressing harms based on other protected class categories, such as race or national origin. As noted repeatedly above, this treatment of sex-based harms is forbidden.

### 3. More Onerous Criminal Law Definitions Are Permitted, if not Required

The DeVos Rules permit or require the use of criminal law definitions of offenses when schools "address[ ] allegations of dating violence, domestic violence, sexual assault, or stalking." (DeVos Rules p.2), citing 34 C.F.R. § 668.46. These definitions cover the same conduct as that which is covered by Title IX, but, as noted above, are more onerous because they require more and different proof, beyond that which is required to establish an offense under Title IX's definition of unwelcome.[12] The DeVos Rules also require the under of criminal law definitions because they incorporate SaVE by reference, and state that schools "are subject to" SaVE when "addressing allegations of dating violence, domestic violence, sexual assault, or stalking." (DeVos Rules p.2), citing 34 C.F.R. § 668.46. SaVE, in turn, requires schools to have disciplinary policies in place in cases of "dating violence, domestic violence, sexual assault and stalking" as those terms are defined

---

[12] For example, "unwelcome" requires proof that the person "did not request or invite" the conduct complained of, and "considered it to be undesirable or offensive." http://www2.ed.gov/about/offices/list/ocr/docs/ocrshpam.html. "Dating violence," as defined by 34 C.F.R. 668.46(a), requires proof of "violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim." Obviously, "unwelcome" sex-based conduct would suffice under Title IX, but would not prove "dating violence."

in § 668.46(a),[13] 34 C.F.R. § 668.46(b)((11)(ii) and (vi). A separate section of SaVE utilizes the

same criminal law definitions from § 668.46(a), as well as "[t]he definition[s] of "dating violence,"

"domestic violence," "sexual assault," "stalking" and "consent," (in reference to sexual activity),

"in the applicable jurisdiction." 34 C.F.R. § 668.46(j)(1)(i)(B) and (C). Although described as a

section about prevention policies, this part of SaVE clearly pertains to Title IX because it

incorporates subsection "(k)(2)," 34 C.F.R. § 668.46(j)(1)(i)(F), and subsection (k)(2) addresses the

policies and substantive standards schools must adopt and utilize when redressing sex-based harms.

(DeVos Rules, p.3, n.11).

Following the enactment of SaVE in 2013, and despite the fact that Congress cannot

substantively amend Title IX by amending a different statute, the DOE itself declared in 2014 that

SaVE has "no effect" on Title IX. U.S. DEPT. OF EDUCATION OFFICE FOR CIVIL RIGHTS, *Questions*

*and Answers on Title IX and Sexual Violence, p.44* (Apr. 29, 2014), *available at*

http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.   (Archived)   Nonetheless,

after SaVE was enacted many schools adopted criminal law definitions to address sex-based harms

covered by Title IX.[14] The DeVos Rules then, in 2017, unlawfully incorporated SaVE's regulations

---

[13] 34 C.F.R. 668.46(a) defines the four categories of sex-based harm: Dating violence is defined as "violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim," and includes "sexual or physical abuse or the threat of such abuse." Domestic violence is defined as "a felony or misdemeanor crime of violence committed – (A) by a current or former spouse or intimate partner of the victim; (B) By a person with whom the victim shares a child in common; (C) By a person who is cohabiting with, or has cohabited with, the victim as a spouse or intimate partner; (D) By a person similarly situated to a spouse of the victim under the domestic violence laws of the jurisdiction in which the crime of violence occurred; or (E) By any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred." Sexual assault is defined as "[a]n offense that meets the definition of rape, fondling, incest, or statutory rape as used in the FBI's UCR program…" Stalking is defined as "[e]ngaging in a course of conduct directed at a specific person that would cause a reasonable person to – (A) Fear for the person's safety or the safety of others; or (B) Suffer substantial emotional distress."

[14] *See e.g.,* Columbia University, *Essential Policies for the Columbia Community*, http://www.essential-policies.columbia.edu/gender-based-misconduct-policies-students   Student Sexual Assault Policy, University of Michigan, https://studentsexualmisconductpolicy. umich.edu/;

into Title IX, thereby making SaVE's more onerous definitions applicable to Title IX, while *also* permitting schools *not* to apply Title IX's definition of unwelcome because the word unwelcome appears nowhere in the DeVos Rules, while criminal law terms such as "sexual assault," "dating violence," "domestic violence," "stalking," appear *thirty-five times*.

4. <u>Schools Are Encouraged to Grant *Offenders* of Sex-Based Civil Rights Harms the Same Rights as *Victims* of Sex-Based Civil Rights Harms</u>

The DeVos Rules state that offenders who *commit* sex-based civil rights harms should receive the same rights as victims who *suffer* such harms. (DeVos Rules, pp. 4-5). Defendants do not encourage schools to provide offenders who commit civil rights harms based on other protected class categories, such as race and national origin, with the same rights as their victims.

5. <u>Schools Are Encouraged to Treat Sex-Based Civil Rights Harms the Same as Non-Civil Rights Harms</u>

The DeVos Rules equate sex-based civil rights harms with non-civil rights "student misconduct" harms, and state that schools "should" subject sex-based civil rights harms to the same burden of proof (need not be preponderance) as that which is applied in non-civil rights cases. (DeVos Rules p.5, n.19). Defendants do not encourage schools to subject civil rights harms based on other protected class categories, such as race and national origin, to non-civil rights redress. In fact, they forbid it. *Letter from Russlynn Ali*, October 26 2010, *supra*.

---

University of Delaware, Sexual Misconduct Policy; https://sites.udel.edu/ sexualmisconduct/files/2015/08/FINALSexual-Misconduct-PolicyJuly-2015-1-2l7elf5.pdf; *Sexual Misconduct and Other Forms of Power-Based Personal Violence,* Vanderbilt University, http://www.vanderbilt.edu/student_handbook/sexual-misconduct/; Student Sexual Misconduct Policy, Georgia Institute of Technology, http://policylibrary.gatech.edu/student-affairs/student-sexual-misconduct-policy-change; Student Conduct Code, University of Oregon, http://policies.uoregon.edu/vol-3-administration-student-affairs/ch-1-conduct/student-conduct-code.

AMICUS CURIAE BRIEF ON BEHALF OF THE WOMEN'S AND CHILDREN'S ADVOCACY PROJECT, EQUAL MEANS EQUAL, NATIONAL COALITION AGAINST VIOLENT ATHLETES, ALLIES REACHING FOR EQUALITY, WOMEN MATTER, AND WE ARE WOMAN

### G.  The DeVos Rules Injure All Women

It requires little imagination to understand how the DeVos Rules are unlawful and injure all women because of the myriad ways the Rules permit separate, different, unequal, and inequitable treatment of sex-based harm. *See City of Los Angeles, Dep't of Water and Power v. Manhart*, 435 U.S. 702, 707-11 (1978) (a statute designed to prevent sex discrimination cannot permit different treatment based on sex); *Title IX Legal Manual*, THE UNITED STATES DEPARTMENT OF JUSTICE, http://www.justice.gov/crt/about/cor/coord/ixlegal.php, p.62 ("policies or practices that explicitly classify individuals on the basis of sex … violate Title IX ...) For example, applying a burden of proof more onerous than preponderance only for sex-based harms means that if a male student is physically beaten on the basis of his national origin, the matter is resolved under a "preponderance of the evidence" standard, and if the evidence shows just barely that the offense more likely than not occurred, it is deemed sufficiently proved. However, if the ***exact*** same offender causes ***exactly*** the same harm to a female student on the basis of her sex, and ***exactly*** the same quality of evidence is presented, schools may assess the matter under the more onerous standard of clear and convincing evidence, and the matter will be deemed unproven. Further, the redress of dual identity claims would be subject to absurd assessments such that a black woman assaulted in a single offense on the basis of her race ***and*** her sex would have her case simultaneously subjected to the clear and convincing and preponderance standards. The use of criminal law definitions would yield similarly absurd results because a single offense could fail to meet the definition of domestic violence under the DeVos Rules, while overwhelmingly satisfying the standard of unwelcome and based on sex, yet lead to a finding of no responsibility.

In addition, because the DeVos Rules require that offenders of sex-based civil rights harms receive the same substantive rights as victims of sex-based civil rights harms, but do not require that offenders of race or national origin-based civil rights harms receive the same rights as the victims of such harms, if a victim suffers a single offense based on her sex and her race, the offender would

AMICUS CURIAE BRIEF ON BEHALF OF THE WOMEN'S AND CHILDREN'S ADVOCACY PROJECT, EQUAL MEANS EQUAL, NATIONAL COALITION AGAINST VIOLENT ATHLETES, ALLIES REACHING FOR EQUALITY, WOMEN MATTER, AND WE ARE WOMAN

receive the same rights as the victim for the sex-based aspect of his offense, but not for the race-based aspect of his offense. This is not only physically and intellectually impossible when an offender commits a single act against a single victim, it is ridiculous.

Furthermore, because the DeVos Rules apply only to the most severe forms of sex discrimination, and do not apply to less serious types of sex discrimination, such as verbal discrimination, severe sex-based offenses are subject to a clear and convincing evidence burden of proof, while minor sex-based offenses are subjected to a preponderance of the evidence standard. This means that severe physical offenses based on sex are less likely to be successfully addressed and prevented compared to minor verbal offenses.

Finally, because the DeVos Rules state that schools should apply the same burden of proof for sex-based civil rights harms as is applied in the redress of non-civil rights harms, but nowhere imposes this obligation on schools with regard to civil rights harms based on race and national origin, sex-based civil rights harms are less likely to be successfully addressed and prevented compared to other civil rights harms.

### H.   The DeVos Rules Are Final Agency Action

The DeVos Rules are not merely rules of "organization, procedure, or practice" under the APA, Sec. 553(b)(A), or "interpretive rules, general statements of policy, or rules of agency organization" such that they are not subject to formal rulemaking. Nor does it matter that the DeVos Rules state that they "do not add requirements to applicable law." (DeVos Rules, p.7). A declaration that new rules add no requirements to applicable law does not make it so. Agency rules are subject to formal rulemaking when, "under the guise of interpreting a regulation, [an agency] create[s] de facto a new regulation." *Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000). An agency can declare its understanding of what a statute requires without providing notice and comment, but it "cannot go beyond the text of a statute" and *regulate* without first providing "adequate notice and comment."

*Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1308 (D.C. Cir. 1991).

Courts construing agency regulations use the same rules as when they construe statutes, and they examine the language to ascertain its plain meaning. *Roberto v. Dep't of Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006). When the language is unambiguous, the court must "enforce it according to its obvious terms and not use words and phrases so as to incorporate therein a new and distinct provision." *Tesoro Haw. Corp. v. United States*, 405 F.3d 1339, 1347 (Fed. Cir. 2005)(citations omitted). If the "plain meaning of the regulation is clear, no further inquiry is required into agency interpretations or the regulatory history to determine its meaning." *Roberto, supra,* at 1350. An agency's interpretation of its own regulation is not entitled to deference if it is "inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

Defendants concede that the DeVos Rules are subject to formal rulemaking because the Rules themselves state that formal rulemaking will occur, albeit at some unspecified time in the future. (DeVos Rules p.1) Contrary to Defendants' argument, whether rules are final is not determined in the temporal sense that they were issued after formal rulemaking, but rather, whether "rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S.Ct. 1807, 1813 (2016).

The DeVos Rules obviously determine rights and obligations from which legal consequences will flow because they: permit the use of a burden of proof more onerous than Title IX's preponderance of the evidence standard (DeVos Rules, p.5); require the use of criminal law definitions to address sex-based offenses rather than Title IX's less onerous definition of unwelcome (DeVos Rules, pp.2, 3 & n.11-12; 5 & n.22-23; 6 & n.25); permit *fair* redress for victims of sex-based harms (DeVos Rules, p.3 & n.11), rather than *equitable* redress, which is mandatory under Title IX; permit and require separate and different treatment of sex-based harms, while Title IX prohibits separate and different treatment; grant offenders of sex-based civil rights harms the same rights as victims of sex-based civil rights harms (DeVos Rules at p.4, 5), while offenders of civil

rights harms based on other protected class categories, such as race or national origin, are not granted the same rights as their victims. The DeVos Rules also mandate that sex-based civil rights harms be treated the same as non-civil rights harms (DeVos Rules, p.5, n.19), while civil rights harms based on other protected class categories, such as race or national origin, are not treated the same as non-civil rights harms. These aspects of the DeVos Rules obviously affect rights and obligations, and have legal consequences. The DeVos Rules also affect rights and obligations, and have serious legal consequences, because they incorporate regulations promulgated under SaVE, a law that, as noted above, did not amend Title IX but which requires different and worse treatment of sex-based harms compared to that which is required under Title IX.[15]

Despite the obvious and significant effects on individual rights and legal obligations, the DeVos Rules state that they constitute only a "guidance document" (DeVos Rules, p. 7). A guidance document is a "frequently used term to describe an agency's instructions published informally, … without formal notice and comment rulemaking pursuant to 5 U.S.C. § 553(b)(A) of the APA, and encompasses what are termed general statements of policy, and interpretive rules." *Glycine & More, Inc. v. United States*, 880 F.3d 1335, ---- n.2 (Fed. Cir. 2018). The DeVos Rules themselves support their attempted characterization as a guidance document because they state that they do "not add requirements to applicable law." (DeVos Rules, p. 7). Also, the DOE's September 22, 2017 Dear Colleague Letter,[16] issued as an accompaniment to the DeVos Rules, suggests that the Rules are intended to be subregulatory because they replace the DOE's subregulatory 2011 *Dear Colleague*

---

[15] SaVE significantly affects individual rights because it denies victims a private right of action. 20 U.S.C. § 1092 (2013) ("Nothing in this subsection shall be construed … to provide a right of action to any person to enforce any provision of this subsection … or to create a cause of action against any institution of higher education or any employee of the institution for any civil liability.") By contrast, victims have a right to sue under Title IX. *Cannon v. University*, 441 U.S. 677, 703, n.33 (1979).

[16] U.S. DEPT. OF EDUCATION OFFICE FOR CIVIL RIGHTS, DEAR COLLEAGUE LETTER (Sept. 22, 2017), *available at* http://www2.ed.gov/about/offices/list/ocr/letters/ colleague-Title-ix-201709.pdf.

*Letter* (DCL),[17] and related subregulatory "Questions and Answers" guidance from 2014.[18]   *See 2017 Dear Colleague Letter* at 2.

Notwithstanding the internal inconsistency in the DeVos Rules themselves about whether they are a guidance document, or must be subjected to formal rulemaking, the Rules are obviously not merely interpretive and subregulatory as they subvert and conflict with the plain and unambiguous language of substantive provisions of the Title IX statute and regulations. Thus, the DeVos Rules affect rights and obligations and cannot stand, because a guidance document cannot amend a duly enacted regulation or statute. *Glycine*, *supra,* (guidance document granted no deference because it "represented an incompatible departure from the clear meaning of the regulation … [and] "was not simply and interpretive statement regarding an ambiguity in the regulation…")

The DeVos Rules further affect rights and obligations because SaVE's regulations have the force of law,[19] thus *do* change schools' obligations under Title IX. Indeed, the changes imposed by SaVE include *requiring* schools to subject sex-based harms to different treatment when complying with a law that *forbids* them to do so. On this point it should be emphasized that even if the DeVos Rules had been subjected to formal rulemaking, they would be unlawful because a statute that forbids sex discrimination can never produce regulations that permit, much less mandate, sex discrimination. *See City of Los Angeles, Dep't of Water and Power v. Manhart*, *supra*, at 707-11 (1978) (a statute designed to prevent sex discrimination cannot permit different treatment based on sex); *Title IX Legal Manual, supra* at 62 ("policies or practices that explicitly classify individuals on the basis of sex … violate Title IX...)

---

[17]  U.S. DEPT. OF EDUCATION OFFICE FOR CIVIL RIGHTS, DEAR COLLEAGUE LETTER (Apr. 4, 2011), *available at* http://www2.ed.gov/about/offices/list/ocr/letters/ colleague-201104.html. (Archived)
[18] U.S. DEPT. OF EDUCATION OFFICE FOR CIVIL RIGHTS, QUESTIONS AND ANSWERS ON TITLE IX AND SEXUAL VIOLENCE (Apr. 29, 2014), *available at* http://www2.ed.gov/about/offices/list/ocr /docs/qa-201404-title-ix.pdf. (Archived)
[19]  *Cohen v. Brown Univ*., 101 F.3d 155, 172 (1st Cir. 1996).

AMICUS CURIAE BRIEF ON BEHALF OF THE WOMEN'S AND CHILDREN'S ADVOCACY PROJECT, EQUAL MEANS EQUAL, NATIONAL COALITION AGAINST VIOLENT ATHLETES, ALLIES REACHING FOR EQUALITY, WOMEN MATTER, AND WE ARE WOMAN

Finally, The DeVos Rules affect rights and obligations and have legal consequences because they were made immediately effective upon issuance, prior to formal rulemaking, and OCR is already applying the DeVos Rules to investigations and compliance reviews. ("In the interim, [these rules] … provide information about how OCR will assess a school's compliance with Title IX.") (DeVos Rules, p.1) Moreover, courts in Title IX cases are already considering the DeVos Rules to determine whether a school should be held liable for violating Title IX. See e.g., *Kollaritsch et al., v. Michigan State University Board of Trustees, et al.*, 1:15-cv-01191-PLM-PJG, United States District Court, Western District of Michigan, (court order issued 10/17/17 denying motion to strike and granting defendants leave to file supplemental authority regarding the DeVos Rules, described as a "significant change in Guidance on Title IX").

## I. Other Claims and Constitutional Infirmities Not Asserted by the Plaintiffs, That Greatly Affect Women's Rights

### 1. Title IX

Plaintiffs inexcusably neglected to include a Title IX claim even though a federal agency may be sued when it engages in its own discrimination, or facilitates or encourages a funding recipient's discrimination. *Cannon v. University of Chicago*, 441 U.S. at 703, n.33, citing *Hills v. Gautreaux*, 425 U.S. 284, 286 (1976); *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 750 (D.C. Cir. 1990) (post-*Cannon*, "[a] federal agency itself might be charged with discrimination, or, as provider of financial assistance, with facilitating or encouraging a specific fund recipient's discrimination); *Cobb v. Dept. of Education*, 487 F.Supp. 1049 (D. Minn. 2007), *Montgomery Improvement Ass'n, Inc. v. U.S. Dept. of Housing and Urban Dev.*, 645 F.2d 291, 295 (5th Cir. 1981). *Gautreaux v. Romney*, 448 F.2d 731, 740 (7th Cir. 1971).

### 2. Tenth Amendment

The Tenth Amendment to the United States Constitution reserves to the states all powers except those limited powers granted to the federal government. U.S. Const. Amend. X It is well settled that violence against women is not a national concern, and must be regulated by the states. *U.S. v. Morrison*, 529 U.S. 598 (2000). The DeVos Rules explicitly regulate violence against women, thus are unconstitutional because if Congress lacks authority to regulate violence against women, then the DOE lacks similar authority as its power is derived from Congress.

### 3. Spending Clause

The Spending Clause, Article 1, § 8 of the United States Constitution, limits the power of Congress to attach conditions to the receipt of federal funds. *Nat'l Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012). To be valid, the exercise of spending power must pertain to a "federal interest," and not independently violate other constitutional provisions. *South Dakota v. Dole*, 483 U.S. 203, 207-08 (1987). As noted above, violence against women is not a "federal interest," and regulation is not permitted under other constitutional provisions.

Another spending clause limitation is that Congress may not intrude excessively into the authority of the states, or allow federal pressure to become that "compulsion." *Id.* The DeVos Rules obviously violate these limitations because they require funding recipients to participate in the federal government's regulation of violence against women; a matter the federal government cannot regulate. *Morrison, supra*. If the federal government may not regulate violence against women, then even a minor intrusion is an excessive one.

Of course, the federal government can regulate civil rights, *Cannon v. University of Chicago, 441 U.S. 708-09,* however, the DeVos Rules nowhere use the phrase "civil rights," or adopts civil rights definitions of offenses. To the contrary, the DeVos Rules discuss only criminal law offenses throughout. This violates the Spending Clause not only because the DeVos Rules expressly regulate that which they cannot regulate at all, but also because they intrude excessively by dictating details

such as definitions of offenses, how investigations must be conducted, and what burdens of proof may be applied.

The DeVos Rules clearly turn "pressure into compulsion," especially in jurisdictions where state constitutions guarantee fully equal protection of the law because the Rules require recipients to violate state constitutional law as a condition of receiving federal funds. For example, in Massachusetts, the DeVos Rules compel funding recipients to violate the Constitution of the Commonwealth, which requires the fully equal treatment of sex-based harms, subject to strict scrutiny review. *Commonwealth v. King*, 374 Mass. 5, 21 (1977) (The Equal Protection Clause of the Massachusetts Constitution prohibits discriminatory and unequal treatment based on sex, and claims of sex discrimination are subject to strict scrutiny). Massachusetts also requires that persons within its jurisdiction receive "the full and equal benefit of all laws and proceedings for the security of persons …" G.L. c. 93, § 102, (Massachusetts Equal Rights Act). It is unduly coercive to expect funding recipients to subject sex-based civil rights harms to different and worse treatment, in violation of important state constitutional protections, as a quid pro quo for receiving federal funds – especially when those federal funds are *supposed* to be conditioned upon the agreement of funding recipients *not* to discriminate on the basis of sex. *See City of Los Angeles v. Manhart*, 435 U.S. at 709 (a statute designed to prevent sex discrimination cannot permit different treatment based on sex).

Finally, Congress may not require funding recipients to engage in activities that would be discriminatory or unconstitutional. *Dole, supra,* at 210. The DeVos Rules plainly induce recipients to discriminate because, as discussed at length, they require or permit the separate, different, and inequitable treatment of sex-based harms as a condition of receiving federal funds.

## CONCLUSION

For the foregoing reasons, Amici respectfully request that this Court vacate the DeVos Rules and order all schools to subject women and sex-based harms to fully equal treatment.

20                                                           3:18-cv-00535-JSC

DATED:  June 14, 2018                 RINCON LAW LLP


                                      By: */s/Jeffrey L. Fillerup*
                                          Jeffrey L. Fillerup
                                          Attorneys for The Women's and Children's
                                          Advocacy Project, Equal Means Equal, National
                                          Coalition Against Violent Athletes, Faculty Against
                                          Rape, and Allies Reaching for Equality, Women
                                          Matter, and We Are Woman

AMICUS CURIAE BRIEF ON BEHALF OF THE WOMEN'S AND CHILDREN'S ADVOCACY
PROJECT, EQUAL MEANS EQUAL, NATIONAL COALITION AGAINST VIOLENT ATHLETES, ALLIES
REACHING FOR EQUALITY, WOMEN MATTER, AND WE ARE WOMAN