1  CHAD A. READLER
   Acting Assistant Attorney General
2
   ALEX G. TSE
3  Acting United States Attorney

4  CARLOTTA P. WELLS
   Assistant Branch Director
5  Civil Division

6  STEVEN A. MYERS (NY Bar # 4823043)
   Trial Attorney
7  United States Department of Justice
   Civil Division, Federal Programs Branch
8  20 Massachusetts Ave. NW, Rm. 7334
   Washington, DC 20530
9  Tel: (202) 305-8648
   Fax: (202) 616-8460
10 E-mail: steven.a.myers@usdoj.gov

11 *Attorneys for Defendants*

12                      **UNITED STATES DISTRICT COURT FOR THE**
                        **NORTHERN DISTRICT OF CALIFORNIA**
13                             **SAN FRANCISCO DIVISION**

14

15 SURVJUSTICE, INC.,
   EQUAL RIGHTS ADVOCATES, and
16 VICTIM RIGHTS LAW CENTER,

17              Plaintiffs,

18                                              Case No. 18-cv-0535-JSC
        v.
19                                              **DEFENDANTS' SUPPLEMENTAL**
20 ELISABETH D. DEVOS,                          **MEMORANDUM IN SUPPORT OF**
   in her official capacity as Secretary of     **MOTION TO DISMISS**
21 Education,
   KENNETH L. MARCUS,
22 in his official capacity as Assistant Secretary
   for Civil Rights, and
23 U.S. DEPARTMENT OF EDUCATION,

24              Defendants.

25

26

27

28

**TABLE OF CONTENTS**

I. Compliance with the 2017 Guidance Is Not Dispositive of Deliberate Indifference; Accordingly, the 2017 Guidance Does Not Have Legal Consequences..........................................1

II. The 2017 Guidance Is Not Final Agency Action Merely Because It May Be Eligible for Certain Deference..................................................................................................................5

III. Whether OCR Employees Follow the 2017 Guidance Is Not a Legal Consequence that Permits Judicial Review...........................................................................................................7

IV. The 2017 Guidance Does Not Produce Legal Consequences Because of Certain OCR and OMB Assurance Forms....................................................................................................9

V. Conclusion .........................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**                                                        **PAGE(S)**

*Air Brake Sys. Inc. v. Mineta*,
   357 F.3d 632 (6th Cir. 2004) ............................................................................................... 6

*AT&T Co. v. EEOC*,
   270 F.3d 973 (D.C. Cir. 2001) .............................................................................................. 6

*Auer v. Robbins*,
   519 U.S. 452 (1997) .......................................................................................................... 6, 7

*Bleiler v. Coll. of Holy Cross*,
   No. 11-11541, 2013 WL 4714340 (D. Mass. Aug. 26, 2013) ............................................ 2, 3

*Bowles v. Seminole Rock & Sand Co.*,
   325 U.S. 410 (1945) ............................................................................................................. 6

*Butters v. James Madison Univ.*,
   208 F. Supp. 3d 745 (W.D. Va. 2016) ............................................................................... 2, 3

*Ciba-Geigy Corp. v. EPA*,
   801 F.2d 430 (D.C. Cir. 1986) .......................................................................................... 5, 6

*Columbia Riverkeeper v. U.S. Coast Guard*,
   761 F.3d 1084 (9th Cir. 2014) .............................................................................................. 8

*Cook v. United States*,
   855 F.2d 848 (Fed. Cir. 1998) .............................................................................................. 5

*Ctr. For Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
   452 F.3d 798 (D.C. Cir. 2006) .............................................................................................. 6

*Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*,
   526 U.S. 629 (1999) ............................................................................................................. 1

*Doe ex rel. Doe v. Derby Bd. of Educ.*,
   451 F. Supp. 2d 438 (D. Conn. 2006) ................................................................................... 4

*Doe v. Bibb Cty. Sch. Dist.*,
   126 F. Supp. 3d 1366 (M.D. Ga. 2015) ................................................................................ 4

*Doe v. Forest Hills Sch. Dist.*,
   No. 1:13-CV-428, 2015 WL 9906260 (W.D. Mich. Mar. 31, 2015) .................................... 3

*DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*,
   76 F.3d 1212 (D.C. Cir. 1996) ............................................................................................ 10

*Fairbanks N. Star Borough v. U.S. Army Corp of Eng'rs*,
   543 F.3d 586 (9th Cir. 2008) ............................................................................................ 3, 6

*FTC v. Standard Oil Co.*,
   449 U.S. 232 (1980) ............................................................................................................. 9

*Gebser v. Lago Vista Indep. Sch. Dist.*,
   524 U.S. 274 (1998) .................................................................................................... 1, 2

*Hernandez v. Baylor Univ.*,
   274 F. Supp. 3d 602 (W.D. Tex. 2017) ............................................................................ 3

*Holistic Candlers & Consumers Ass'n v. FDA*,
   664 F.3d 940 (D.C. Cir. 2012) ......................................................................................... 6

*Indep. Equip. Dealers Ass'n v. EPA*,
   372 F.3d 420 (D.C. Cir. 2004) ......................................................................................... 6

*Karasek v. Regents of the Univ. of Cal.*,
   No. 15-3717, 2015 WL 8527338 (N.D. Cal. Dec. 11, 2015) ......................................... 2, 4

*Karasek v. Regents of the Univ. of Cal.*,
   226 F. Supp. 3d 1009 (N.D. Cal. 2016) ........................................................................... 4

*Kollaritsch v. Mich. State Univ. Bd. of Trs.*,
   298 F. Supp. 3d 1089 (W.D. Mich. 2017) ........................................................................ 2

*Leader v. Harvard Univ. Bd. of Overseers*,
   No. 16-10254, 2017 WL 1064160 (D. Mass. Mar. 17, 2017) .......................................... 2

*Lincir v. Comm'r*,
   32 F. App'x 278 (9th Cir. 2002) ....................................................................................... 7

*Moore v. Regents of the Univ. of Cal.*,
   No. 15-5779, 2016 WL 4917103 (N.D. Cal. Sept. 15, 2016) .......................................... 2

*Nat'l Home Builders v. Norton*,
   415 F.3d 8 (D.C. Cir. 2005) ............................................................................................. 3

*Or. Natural Desert Ass'n v. U.S. Forest Serv.*,
   465 F.3d 977 (9th Cir. 2006) ........................................................................................... 8

*Perez v. Mortgage Bankers Ass'n*,
   135 S. Ct. 1199 (2015) .................................................................................................... 8

*Reliable Automatic Sprinkler Co. v. U.S. Consumer Prod. Safety Comm'n*,
   173 F. Supp. 2d 41 (D.D.C. 2001) ............................................................................... 5, 6

*Rochester Tel. Corp. v. United States*,
   307 U.S. 125 (1939) ...................................................................................................... 10

*Shaw v. Experian Info. Sols., Inc.*,
   891 F.3d 749 (9th Cir. 2018) ........................................................................................... 5

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) ........................................................................................................ 6

*Soundboard Ass'n v. FTC*,
    888 F.3d 1261 (D.C. Cir. 2018) ................................................................................ 3

*T.B. ex rel Brenneise v. San Diego Unified School District*,
    806 F.3d 451 (9th Cir. 2015) .................................................................................... 5

*Taylor-Callahan-Coleman Ctys. Dist. Adult Prob. Dep't v. Dole*,
    948 F.2d 953 (5th Cir. 1991) .................................................................................... 4

*U.S. Army Corps of Eng'rs v. Hawkes*,
    136 S. Ct. 1807 (2016) ......................................................................................... 3, 7

*Yu v. Vassar*,
    97 F. Supp. 3d 448 (S.D.N.Y. 2015) ........................................................................ 2

*Zachary v. Rescare Okla., Inc.*,
    471 F. Supp. 2d 1183 (N.D. Okla. 2006) ................................................................. 5

**REGUALTIONS**

33 C.F.R pt. 331, App. C ................................................................................................ 7

**LOCAL RULES**

Civil L.R. 7-3(d) ............................................................................................................. 1

At the hearing on Defendants' motion to dismiss, the Court authorized supplemental briefing on one specific issue that Plaintiffs had raised for the first time at that hearing: whether the 2017 Title IX Guidance ("2017 Guidance") issued by the Department of Education ("ED") can be challenged as final agency action on the theory that a school following it could not be found liable for deliberate indifference in violation of Title IX in a private damages action.[1] Plaintiffs' supplemental brief addresses that issue in a mere two and a half pages, *see* Pls.' Suppl. Br. at 2–4, ECF No. 68, and as addressed below, their argument is meritless. The remainder of Plaintiffs' memorandum consists of additional argument on unrelated theories, and thus effectively constitutes unauthorized supplementary material. *See* Civil L.R. 7-3(d). The Court should disregard those new arguments for that reason alone. Nevertheless, should the Court consider them, they are equally meritless.

**I.   Compliance with the 2017 Guidance Is Not Dispositive of Deliberate Indifference; Accordingly, the 2017 Guidance Does Not Have Legal Consequences.**

Plaintiffs contend that "following [ED's] guidance can immunize schools from damages claims as a matter of law," Pls.' Suppl. Br. at 2, and that this legal immunity suffices to render the guidance final agency action. That argument fails because while a factfinder is permitted to *consider* the guidance in evaluating whether a school was deliberately indifferent to its obligations under Title IX, the guidance is not legally binding on any issue, including specifically the issue of deliberate indifference.

Title IX authorizes a private right of action where a school is deliberately indifferent to discrimination, i.e., where "an official who . . . has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *accord Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999) ("[F]unding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively

---

[1] *See, e.g.*, Mot. Dismiss Hr'g Tr. (MTD Hr'g Tr.) at 42:8-9 ("[M]aybe what I'll do is I'll allow supplemental briefing on that issue because it wasn't raised, but it's intriguing at least . . . ."); *id.* at 84:22-85:11 ("I do want to have some supplemental briefing on the issue you raised because it was something I hadn't thought about . . . your argument that you raised was that because of the deliberate indifferen[ce] standard, the effect is to create a right, essentially a safe harbor in a sense.").

offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."). As the Supreme Court has squarely held, failure to follow ED's regulations, including even its binding legislative rules, does not amount to deliberate indifference. *See Gebser*, 524 U.S. at 291-92 ("Lago Vista's alleged failure to comply with the regulations . . . does not establish the requisite actual notice and deliberate indifference.").

Consistent with *Gebser*, court after court after court has held that while ED's subregulatory guidance may be considered in assessing whether a school was deliberately indifferent under Title IX, whether or not a school complies with such guidance is not legally dispositive on that or any other issue. *See Moore v. Regents of the Univ. of Cal.*, No. 15-5779, 2016 WL 4917103, at *3 (N.D. Cal. Sept. 15, 2016) (Seeborg, J.) ("Adherence to the DCL might be good policy, but failure to adhere, standing alone, does not constitute deliberate indifference."); *Karasek v. Regents of the Univ. of Cal.*, No. 15-3717, 2015 WL 8527338, at *14 (N.D. Cal. Dec. 11, 2015) (Orrick, J.) ("[T]he DCL does not define what amounts to deliberate indifference for purposes of this case. In determining whether plaintiffs have adequately alleged deliberate indifference, I will look to *Davis* and its progeny, not the DCL."); *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 298 F. Supp. 3d 1089, 1104 (W.D. Mich. 2017) ("Courts have generally not allowed plaintiffs to show deliberate indifference when a university does not follow the guidance suggested by the Department of Education's Dear Colleague Letter."), *appeal filed*, No. 18-1715 (6th Cir. June 25, 2018); *Leader v. Harvard Univ. Bd. of Overseers*, No. 16-10254, 2017 WL 1064160, at *7 (D. Mass. Mar. 17, 2017) ("[Plaintiff] may not rest her theory of liability upon Harvard's failure to abide by those guidance documents, [but] such documents may at least inform the reasonableness of choices made by Harvard in responding to [Plaintiff's] complaints."); *Butters v. James Madison Univ.*, 208 F. Supp. 3d 745, 758 (W.D. Va. 2016) ("[E]ven if JMU had violated the guidance set forth above . . . that would not be dispositive on the issue of deliberate indifference").[2]

---

[2] Plaintiffs have identified two cases in which they say "courts have relied upon compliance with the 2011 DCL to find that a school's disciplinary processes were not so flawed that they led to an erroneous outcome nor were they based on discriminatory bias against men." Pls.' Supp. Br. at 3. Plaintiffs' first case, *Yu v. Vassar*, 97 F. Supp. 3d 448 (S.D.N.Y. 2015), merely references the 2011 DCL in passing in concluding that the plaintiff was not denied due process; it contains no holding as to deliberate indifference. *See, e.g.*, *id.* at 465, 471. Plaintiffs' other case, *Bleiler v. Coll. of Holy Cross*, No. 11-11541, 2013 WL 4714340 (D. Mass. Aug. 26, 2013), makes clear that "the Department's published guidance does

To be sure, while "a school's failure to comply with certain [ED] guidelines generally cannot, alone, demonstrate a school's deliberate indifference," such guidelines "may still be consulted when assessing the appropriateness of a school's response to reports of sexual assault." *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 614 (W.D. Tex. 2017) (citations omitted); *see also Butters*, 208 F. Supp. 3d at 757 (similar); *Doe v. Forest Hills Sch. Dist.*, No. 1:13-CV-428, 2015 WL 9906260, at *10 (W.D. Mich. Mar. 31, 2015) (similar); *Bleiler*, 2013 WL 4714340, at *5 (similar). But while the 2017 Guidance may be among the interpretive sources that a factfinder could consider in evaluating deliberate indifference, that is not sufficient to render it final agency action.

As the Ninth Circuit and other courts have made clear, there is a key difference between a particular agency action *requiring* a particular result in a further proceeding (in which case it might have legal consequences), or instead merely being among the things that could be considered in a further proceeding (in which case it does not). Accordingly, the fact that an agency action or policy "could eventually be *evidence* on the issue of whether a particular course of conduct was undertaken in good or bad faith" is not sufficient to create final agency action. *Fairbanks N. Star Borough v. U.S. Army Corp of Eng'rs*, 543 F.3d 586, 595 (9th Cir. 2008) (emphasis added)[3]; *accord*, *e.g.*, *Soundboard Ass'n v. FTC,* 888 F.3d 1261, 1273 (D.C. Cir. 2018) (letter "offers an interpretation of [the Telemarketing Sales Rule]," but "fixes no specific, legally enforceable rights or legal obligations" and "does not *independently* trigger any penalties." (emphasis added)); *Nat'l Home Builders v. Norton*, 415 F.3d 8, 15-16 (D.C. Cir. 2005) (protocols not final agency action because they "constitute just one piece of the evidence necessary to obtain an injunction" and "the scope of a landowner's liability under [the statute] remains exactly as it was before the Protocols' publication"); *Taylor-Callahan-Coleman Ctys. Dist. Adult Prob. Dep't v. Dole*,

---

not have independent force of law," but instead only "informs this Court's evaluation of whether the College's procedures were 'equitable.'" *Id*. at *5. While the Court gave some consideration to the DCL in rejecting the plaintiffs' due process challenge, *see id.* at *10, the guidance was not (and could not be) legally dispositive of the plaintiff's constitutional due process claim.

[3] The Supreme Court later held in *U.S. Army Corps of Eng'rs v. Hawkes*, 136 S. Ct. 1807 (2016), that jurisdictional determinations under the Clean Water Act are final agency action, abrogating *Fairbanks*. As explained in Defendants' reply memorandum, however, *Hawkes* turned on unique legal consequences given to jurisdictional determinations, and not the good faith theory articulated by the plaintiffs in *Fairbanks*. *See* Defs.' Reply Br. at 7, ECF No. 48 at 7.

*SurvJustice, Inc. v. DeVos*, **No. 18-cv-0535-JSC, Defendants' Supplemental Brief**
3

948 F.2d 953, 959 (5th Cir. 1991) (Department of Labor opinion letters provide "the Administrator's opinion as to how governing regulations" apply, but "do not have the status of law with penalties for noncompliance" and thus "are not final agency action subject to judicial review").

Nor is it surprising that the 2017 Guidance would not be legally dispositive of deliberate indifference claims, since that is not the purpose of the 2017 Guidance. The 2017 Guidance exists to "provide information about how OCR will assess a school's compliance with Title IX" in its administrative capacity, not to set a standard for litigation between private parties; it does not purport to apply the deliberate indifference standard. *See* 2017 Q&A at 1; *accord* 2011 DCL at 4 & n.12 (explaining that the 2011 DCL provides the "standard for administrative enforcement of Title IX and in court cases where plaintiffs are seeking injunctive relief," and that this standard does not apply to "private lawsuits for monetary damages"). Consistent with that purpose, the 2017 Guidance explains that Title IX requires schools to take various corrective action "where the school knows or reasonably should know of an incident of sexual misconduct." 2017 Q&A at 1. As Judge Orrick has explained, "the guidance provided by the DCL is obviously broader than the scope of liability for private causes of action under Title IX." *Karasek*, 2015 WL 8527338, at *13; *accord Doe v. Bibb Cty. Sch. Dist.*, 126 F. Supp. 3d 1366, 1377 *n.13 (M.D. Ga. 2015) (similar), *aff'd*, 688 F. App'x 791 (11th Cir. 2017).

Plaintiffs nonetheless suggest that it is "difficult to imagine a situation where a recipient complying with ED's guidance could be found to be acting in a 'clearly unreasonable' matter." Pls.' Suppl. Br. at 2 (emphasis omitted). But Plaintiffs' speculation about what conclusions a factfinder might reach in hypothetical enforcement proceedings is irrelevant. As the Court has observed, a school in such a circumstance might "have a strong equitable argument," but that is different from "as a legal matter . . . something that says that . . . the agencies are bound by the guidance they give, and therefore, cannot engage in enforcement actions that contradict whatever guidance they give." MTD Hr'g Tr. at 31:19-31:24. A factfinder might conclude that a school should not be found deliberately indifferent when it is complying with ED guidance, but that does not mean that the ED guidance would compel such a finding as a matter of law. Indeed, whether a school acted with deliberate indifference under Title IX is a question of *fact*. *See, e.g.*, *Karasek*, 226 F. Supp. 3d 1009, 1026 (N.D. Cal. 2016); *Doe ex rel. Doe v. Derby Bd. of Educ.*, 451 F. Supp. 2d 438, 447 (D. Conn. 2006).

Finally, Plaintiffs' cases do not change the analysis. *T.B. ex rel Brenneise v. San Diego Unified School District*, 806 F.3d 451 (9th Cir. 2015), which Plaintiffs concede is "not . . . directly on point," arose under the Rehabilitation Act, did not analyze whether a particular agency decision was final agency action under the Administrative Procedure Act ("APA"), and rejected a finding of deliberate indifference; it says nothing about whether compliance with an ED guidance document bars a finding of deliberate indifference as a matter of law. As for *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749 (9th Cir. 2018), it held that certain agency guidance "suggests" that the defendant's conduct did not rise to the level of recklessness, not that it precluded a recklessness finding as a matter of law. *Id.* at 761. Indeed, the court also relied upon other factors, including the fact that a district court had agreed with the defendant's interpretation of the statute, in rejecting a recklessness finding. *Id.* As for *Cook v. United States*, 855 F.2d 848 (Fed. Cir. 1998), and *Zachary v. Rescare Okla., Inc.*, 471 F. Supp. 2d 1183 (N.D. Okla. 2006) those cases arose under the Fair Labor Standards Act, not Title IX; considered issues of willfulness and reckless disregard, not deliberate indifference; and contained no holding as to final agency action. They offer no support for Plaintiffs' position here.

## II. The 2017 Guidance Is Not Final Agency Action Merely Because It May Be Eligible for Certain Deference.

Plaintiffs further contend that the 2017 Guidance is final agency action because it may be eligible for deference as Defendants' interpretation of the underlying statute and regulations. *See* Pls.' Suppl. Br. at 4–5. The upshot of Plaintiffs' theory, which relies almost exclusively on one D.C. Circuit decision, *see Ciba-Geigy Corp. v. EPA*, 801 F.2d 430 (D.C. Cir. 1986), is that any agency statement of opinion is necessarily final agency action.

Plaintiffs' argument fails. At the outset, *Ciba-Geigy* is not even a final agency action case: it "concerned ripeness, not a determination of what constitutes final agency action." *Reliable Automatic Sprinkler Co. v. U.S. Consumer Prod. Safety Comm'n*, 173 F. Supp. 2d 41, 46 (D.D.C. 2001), *aff'd*, 324 F.3d 726 (D.C. Cir. 2003). It is also distinguishable: it involved a challenge to an agency decision that was intended to have the force of law, insofar as it imposed "new labeling requirements" upon manufacturers of pesticides and "emphatically required Ciba-Geigy's immediate compliance." *Ciba-Geigy*, 801 F.2d at 437 (internal quotation marks omitted); *see also id.* at 432. The D.C. Circuit has since

squarely held that "argument on the basis of *Ciba-Geigy* that . . . a 'series of agency pronouncements' can make out final agency action is misplaced." *Reliable Automatic Sprinkler*, 324 F.3d at 734 (internal citation omitted). Notwithstanding *Ciba-Geigy*, the law in the D.C. Circuit is abundantly clear that bare statements of agency opinion are not final agency action. *See, e.g.*, *Ctr. For Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 808 (D.C. Cir. 2006) ("There is no doubt that the guidelines reflect NHTSA's views on the legality of regional recalls. But this does not change the character of the guidelines from a policy statement to a binding rule."); *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 941, 944-45 (D.C. Cir. 2012) (warning letters sent by FDA "to several of the appellant manufacturers, advising that the agency considered their candles to be adulterated and misbranded medical devices" are not final agency action); *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.) ("We have held that we lacked authority to review claims where 'an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party.'" (quoting *AT&T Co. v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001))). More to the point, this is also the law in the Ninth Circuit. *See Fairbanks*, 543 F.3d at 593–94 ("bare statement of the agency's opinion" does not produce legal consequences). An agency opinion on a legal question may always be eligible for *some* level of deference, *see Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), but the law remains well established that such bare statements of opinion do not create legal consequences.

The Sixth Circuit's decision in *Air Brake Sys. Inc. v. Mineta*, 357 F.3d 632, 643–44 (6th Cir. 2004), is not to the contrary. That case suggested in dicta that an agency statement construing an agency regulation might constitute final agency action on the theory that it is eligible for deference under *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945)—sometimes referred to as *Auer* deference, *see Auer v. Robbins*, 519 U.S. 452 (1997). The Sixth Circuit reached no holding on this issue, finding that such deference did not apply and that there was accordingly no need to determine whether such deference would support final agency action. The Ninth Circuit has also not adopted this line of reasoning, but has instead recognized that pure statements of agency opinion are not final agency action.[4]

---

[4] Nor is there any reason to expect that the Ninth Circuit would adopt this Sixth Circuit dicta. Indeed, it makes little sense to treat an agency statement of opinion as final under the APA merely because it is eligible for *Auer* deference: numerous informal agency statements, which have specifically been held

Finally, it bears emphasis that there is a fundamental tension in Plaintiffs' threshold and merits arguments. Deference under *Auer* and *Seminole Rock* is available when the agency interpretation is not "plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461 (internal quotation marks and citations omitted). But the heart of Plaintiffs' APA claim is that the 2017 Guidance *is* plainly erroneous and inconsistent with binding law. To the extent that Plaintiffs are now saying that they prevail on Defendants' threshold final agency action challenge because Defendants are going to win on the merits, the result is the same: the Court should dismiss this case.

### III. Whether OCR Employees Follow the 2017 Guidance Is Not a Legal Consequence that Permits Judicial Review.

Plaintiffs next argue that the 2017 Guidance creates legal consequences because it "binds the hundreds of employees of ED's OCR located in 12 regional offices as they make findings in response to complaints about whether or not a school has violated Title IX or its regulations." Pls.' Suppl. Br. at 7. This argument conflates legal consequences with non-legal consequences. As the Court observed at oral argument, a final agency action must have "a real legal consequence." MTD Hr'g Tr. 27:8–9 (citing *Hawkes Co.*, 136 S. Ct. at 1814). There is no doubt that the 2017 Guidance "provide[s] information about how OCR will assess a school's compliance with Title IX," including to its employees. *See* 2017 Q&A at 1. But even if the 2017 Guidance informs OCR employees' decisions, the documents themselves have no "impact in court at all." MTD Hr'g Tr. 27:19. In contrast to the jurisdictional determinations at issue in *Hawkes Co.*, which legally bind the Army Corps of Engineers for five years, 136 S. Ct. at 1814 (citing 33 C.F.R. pt. 331, App. C), the 2017 Guidance does not *legally* bind ED. Rather, the ultimate legal authorities for whether a school has violated the law is Title IX and its implementing regulations.

Plaintiffs counter that ED has a practice of citing guidance documents in letters of findings and has in fact done so in the past. Of course, Defendants do not dispute that the 2017 Guidance informs OCR employees' decisions; because the 2017 Guidance sets out ED's "construction of the statutes and rules

---

not to be final agency action, are potentially eligible for *Auer* deference. As just one example, at issue in *Auer* itself was a brief filed in litigation, *see* 519 U.S. at 462, yet the Ninth Circuit has previously upheld the finding that such a brief is not final agency action. *See Lincir v. Comm'r*, 32 F. App'x 278, 281 (9th Cir. 2002).

which it administers," *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1204 (2015), it is unsurprising that ED would refer to the guidance in assessing a recipient's compliance with Title IX. As Plaintiffs observe, the Case Processing Manual (CPM), which "provides OCR with the procedures to promptly and effectively investigate and resolve complaints, compliance reviews and directed investigations," states that letters of findings should include "as appropriate . . . reference [to] the relevant facts, the applicable regulation(s) and OCR policy, and the appropriate legal standards." CPM at 2, 17 (Mar. 5, 2018), www.ed.gov/ocr/docs/ocrcpm.pdf. And, as Plaintiffs also observe, OCR's December 30, 2014 letter of finding to Harvard Law School refers to the 2011 DCL. However, mere reference or citation to a guidance document does not mean that the document has a legal effect. Plaintiffs provide no legal authority for this proposition, and Defendants are unaware of any. Nor would such a rule make sense; the very purpose of the Guidance is to set out ED's understanding of what Title IX requires, so of course ED would refer to the Guidance in making findings.

Furthermore, both the CPM and the December 30, 2014 letter leave no doubt that OCR's findings are based on Title IX and its implementing regulations alone: The CPM states at the outset of its section on case planning, investigation, and resolution that "OCR resolution agreements will be drafted to ensure compliance with the civil rights *laws and regulations* enforced by OCR," CPM at 14 (emphasis added), not civil rights guidance or policy. And the December 30, 2014 letter indicates that OCR investigated the complaint "under Title IX . . . and it[s] implementing regulation" and that its conclusions were based on Title IX and its implementing regulations, not related guidance or policy. *See* Letter from Joel J. Berner, Regional Director, OCR, to Martha Minnow, Dean, Harvard Law School (Dec. 30, 2014), www.ed.gov/documents/press-releases/harvard-law-letter.pdf.

At bottom, Plaintiffs do not point to a single instance where OCR treated the 2017 Guidance as though it "has the status of law or comparable legal force" or in which "immediate compliance with its terms is expected," *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1095 (9th Cir. 2014) (quoting *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 987 (9th Cir. 2006)).[5] At most,

---

[5] Plaintiffs assert that it is "difficult to find additional examples" because no resolution agreements postdating the 2017 Guidance appear on ED's website. *See* Pls.' Supp. Br. at 9 n.13. However, OCR continues to post resolution documents online. There is typically a three month delay from the time when a case is resolved to the time when the document is posted. This delay occurs because OCR redacts certain

1  Plaintiffs cite an ED spokesperson's statement "that OCR is in the process of correcting its correspondence
2  with the university to let it know [UNC's] policy is consistent with the department's temporary rules."
3  *See* Pls.' Suppl. Br. at 9–10, ECF No. 68 (quoting Jeremy Bauer-Wolf, *The "Confusing" Case of UNC's*
4  *Title IX Violations*, Inside Higher Ed (June 27, 2018), www.insidehighered.com/news/2018/06/27/unc-
5  found-have-violated-title-ix-multiyear-investigation). The theory seems to be that ED's correspondence
6  to a university was informed by the guidance. But the correspondence itself was not final agency action,
7  *cf. FTC v. Standard Oil Co.*, 449 U.S. 232, 243 (1980) (filing of even administrative complaint is not final
8  agency action), and the fact that the 2017 Guidance informs ED correspondence or that ED clarified that
9  a university's policy is "consistent with the department's temporary rules" does not render the guidance
10 final agency action, either.

**IV.    The 2017 Guidance Does Not Produce Legal Consequences Because of Certain OCR and OMB Assurance Forms.**

Last, with respect to Plaintiffs' argument that the 2017 Guidance produces legal consequences because some entities sign assurances, Plaintiffs raise two points. First, they assert that because ED has interchangeably used the terms "guidance" and "guidelines" in a press release, the OCR assurance, which requests compliance with "guidelines," encompasses the 2017 Guidance. *See* Pls.' Suppl. Br. at 10. And second, they assert that because an OMB standard assurance requests compliance with certain "policies," and because the 2017 Guidance is a policy, the OMB assurance likewise produces legal consequences. *See id.*

These additional points are without merit. Press releases are issued for general, non-legal audiences; a single press release's passing reference to the guidance as "guidelines" does not affect the guidance's status under the OCR assurance. Rather, as discussed in the reply, the terms "guidelines" and "standards" refer to certain notices or appendices that ED published in the Federal Register or Code of Federal Regulations or to specific standards referenced in the regulations. *See* Defs.' Reply Br. at 14–15, ECF No. 48. The terms do not refer to the 2017 Guidance.

Similarly, the term "policies" in the cited OMB standard assurance do not encompass the 2017

---

information to protect privacy and reformats the document for accessibility.

Guidance. The OMB assurance for non-construction programs is an assurance that certain grantees provide to certify compliance with, among other things, the terms of the grant and various laws related to that grant. For example, states must sign the assurance to obtain federal funding under the Elementary and Secondary Education Act of 1965, as amended by the Every Student Succeeds Act. *See* Revised Assurances Template, OMB No. 1810-0576, at 6–7 (May 2017), www.ed.gov/admins/lead/account/ stateplan17/reviseded18100576.pdf. The assurance contains a paragraph stating that the applicant "[w]ill comply with all Federal statutes relating to nondiscrimination" and names Title IX as one such statute. *Id.* at 6. The final paragraph of the assurance, upon which Plaintiffs rely, is a catch-all provision that states that the applicant "[w]ill comply with all applicable requirements of all other Federal laws, executive orders, regulations, and policies governing this program." *Id.* at 7. Once again, however, the 2017 Guidance does not impose requirements. Therefore, although a grantee may violate the OMB assurance because it violated Title IX or its implementing regulations, it would not violate the assurance because it did not comply with the advice contained in the 2017 Guidance.

Finally, even if Plaintiffs were correct that violating the 2017 Guidance would also violate the OMB assurance, it is still the case that final agency action would arise only if the agency enforced that violation. *See, e.g.*, *DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (no final agency action where order "'does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action'" (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939))). Plaintiffs point to no instances where ED has enforced an assurance because a recipient did not follow a guidance document, let alone the 2017 Guidance.

## V. Conclusion

For the foregoing reasons, and for the reasons stated in Defendants' motion to dismiss, the Amended Complaint should be dismissed.

Dated: August 30, 2018                                      Respectfully Submitted,

                                                            CHAD A. READLER
                                                            Acting Assistant Attorney General

                                                            ALEX G. TSE
                                                            Acting United States Attorney

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division

/s/ *Steven A. Myers*
STEVEN A. MYERS
(NY Bar # 4823043)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Rm. 7334
Washington, DC 20530
Tel: (202) 305-8648
Fax: (202) 616-8460
E-mail: steven.a.myers@usdoj.gov

*Attorneys for Defendants*