WENDY MURPHY, Pro Hac Vice
wmurphy@nesl.edu
New England Law/Boston
154 Stuart Street
Boston, MA 02116
Telephone:  (617)422-7410

JEFFREY L. FILLERUP (SBN 120543)
jfillerup@rinconlawllp.com
RINCON LAW LLP
200 California St., Suite 400
San Francisco, CA  94111
Telephone:     (415) 996-8199
Facsimile:     (415) 680-1712

Attorneys for The Women's and Children's Advocacy Project,
Equal Means Equal, National Coalition Against Violent Athletes,
Allies Reaching for Equality, Women Matter, We Are Woman,
and SAFE Campuses, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SURVJUSTICE, INC.,<br>1015 15th Street NW, Suite 632<br>Washington, DC 20005<br><br>EQUAL RIGHTS ADVOCATES,<br>1170 Market Street, Suite 700<br>San Francisco, CA 94102<br><br>VICTIM RIGHTS LAW CENTER<br>520 SW Yamhill Street<br>Portland, OR 97204,<br><br>                    Plaintiffs,<br><br>v.<br><br>ELISABETH DEVOS, in her official<br>capacity as Secretary of Education,<br>400 Maryland Avenue SW<br>Washington DC 20202, et al.<br><br><br>                    Defendants. | Case No. 3:18-cv-00535-JSC<br><br>**NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE AS PLAINTIFFS, MEMORANDUM OF POINTS AND AUTHORITIES, AND PROPOSED COMPLAINT IN INTERVENTION**<br><br>Date:          October 18, 2018<br>Time:          9:00 a.m.<br>Place:         450 Golden Gate Ave., 15th Fl.<br>               Courtroom F<br>               San Francisco, CA  94102<br>Judge:         Hon. Jacqueline Scott Corley |

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................... 4

II.  PRIOR PROCEEDINGS ......................................................................................... 4

III. INTERESTS OF PUTATIVE INTERVENORS ..................................................... 5

IV.  ARGUMENT ........................................................................................................... 8

   A.  Equality Advocates Have a Right to Intervene ................................................... 8

      1.   The Application is Timely ............................................................................. 8

      2.   Equality Advocates Have a Significant Interest in the Subject of this Action ............... 8

   B.  Standing/Injury ................................................................................................... 8

   C.  Title IX ............................................................................................................. 10

   D.  How The DeVos Rules Require or Permit the Unequal Treatment of Women ................... 12

   E.  The Campus SaVE Act ...................................................................................... 13

   F.  Administrative Redress ..................................................................................... 14

   G.  Private Right of Action ..................................................................................... 14

   H.  Disposition of this Action Will Impair or Impede Equality Advocates' Ability to Protect Their Interests ............... 15

   I.  In the Alternative, Permissive Intervention Should be Granted ......................... 16

V.   CONCLUSION ..................................................................................................... 17

NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE

### NOTICE OF MOTION AND MOTION TO INTERVENE

**PLEASE TAKE NOTICE THAT** on October 18, 2018 at 9:00 a.m., a hearing will be held before the Hon. Jacqueline Scott Corley in  Courtroom F, 15th Floor,  at the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, 94102, on the Women's and Children's Advocacy Project, Equal Means Equal, National Coalition Against Violent Athletes,  Allies Reaching for Equality, Women Matter, We Are Woman, and SAFE Campuses, LLC (collectively "Equality Advocates") motion for leave to intervene as Plaintiffs.

This case addresses the lawfulness of new rules affecting Title IX of the Education Amendments of 1972, (Title IX) issued by Defendants in September 2017 in the form of a "Dear Colleague Letter" and "Question and Answer" document. (Comp. pp.2-3) (DeVos Rules) The DeVos Rules dictate how women's civil rights under Title IX are to be enforced, with particular regard to their application to sex-based harms. Equality Advocates have a significant interest in this matter, and seek to advance claims and arguments on behalf of women as a class, whose right to equal treatment under Title IX is at stake in this litigation because the DeVos Rules permit or require unequal treatment of women and sex-based harms covered by Title IX.

This case has become even more urgent and has taken on greater significance because it was reported earlier this week in the New York Times that Defendants are prepared to change the Title IX regulations that will be codified in the Code of Federal Regulations. Erica Green, *New U.S. Sexual Misconduct Rules Bolster Rights of Accused and Protect Colleges,* August 29, 2018, New York Times, available at, https://www.nytimes.com/2018/08/29/us/politics/devos-campus-sexual-assault.html.  Unlike the subregulatory DeVos Rules, which derive their authority, albeit unlawfully, from the Campus SaVE Act, formal regulations promulgated under Title IX will carry the force of law. The government's announcement of the proposed changes to the Title IX regulation, which is posted at the website of the Office of Government and Regulatory Affairs, (OGRA) lists 9/00/2018

1   as the publication date, and cites 34 C.F.R., § 106, as the regulation to be amended, and 20 U.S.C.,

2   § 1681 et seq., as the Legal Authority.  These are references to the Title IX statute and regulation,

3   not the Campus SaVE Act.

4        Assuming the proposed changes to the Title IX regulations are published in September, as

5   suggested by the notice at the OGRA website, an entirely new lawsuit may need to be filed if and

6   when such regulations become final. But the DeVos Rules from 2017 remain in effect in the interim

7   and merit this court's analysis. This Court's opinion on the DeVos Rules will provide valuable

8   guidance on the proposed regulations because the New York Times reports that the regulatory

9   changes mirror the DeVos Rules from 2017.  For example, the New York Times story states that

10  the regulations will subject women and sex-based harms to unequal treatment by permitting schools

11  to apply a burden of proof more onerous than preponderance of the evidence, while preponderance

12  will remain the standard for other civil rights harms, based on race and national origin. In addition,

13  the New York Times story states that the regulations will change the definition of an offense from

14  unwelcome and based on sex, to unwelcome, based on sex, and so "severe or pervasive" that it

15  interferes with a victim's access to education. This definitional change, currently applied only as a

16  liability standard in private lawsuits, not on campus or in administrative proceedings, will not be

17  made applicable in administrative matters involving exactly the same hams covered by Title VI,

18  based on race and national origin. Thus, this Court's ruling on the 2017 DeVos Rules will provide

19  valuable guidance on the proposed regulations because this Court has been asked to rule that

20  Defendants have no authority to issue guidance documents that subject women and sex-based harms

21  to unequal treatment because the Title IX regulations forbid unequal treatment, and the regulations

22  were issued in furtherance of the Title IX statute which also forbids unequal treatment. Only

23  Congress has authority to amend the Title IX statute to permit unequal treatment. Thus, it is

24  axiomatic that just as Defendants have no authority to issue guidance documents that exceed

25  regulatory authority, they have no authority to promulgate regulations that exceed statutory

26  authority.

27

28

NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE

Equality Advocates attempted to avoid intervening in this matter by submitting an amicus brief in connection with Defendants' motion to dismiss. A hearing on that motion was held on July 19, 2018, but neither the parties nor the court addressed the main issue raised by Equality Advocates, namely, that the DeVos Rules are unlawful because they subject women and victims of sex-based harms (hereafter collectively "women") to unequal treatment. A wealth of legal authority supports the proposition that women are entitled to equal treatment under Title IX, on par with the treatment afforded other protected class categories, such as race and national origin.

As discussed in the accompanying Memorandum and Points of Authorities, intervention as of right is warranted because the interests of women as a class are not adequately represented by the Plaintiffs. The Plaintiffs have not asked this court for equal treatment, nor have they plead claims that could result in this Court issuing a decision affirming the right to equal treatment. To the contrary, in all claims, pleadings, and arguments submitted thus far, Plaintiffs failed to ask for, or cite a single law, regulation or other authority supporting women's right to fully equal treatment under Title IX.

Equality Advocates initially refrained from seeking to intervene in the hope the Plaintiffs would amend their complaint and argue in favor of women's right to equal treatment after they had a chance to review the amicus brief submitted by Equality Advocates. But that did not happen. Even after the hearing on Defendants' Motion to Dismiss, at which this Court specifically asked the parties to submit additional briefs addressing the rights are at stake for women in this controversy, Plaintiffs filed a supplemental brief nowhere asserting women's right to equal treatment. Thus, Equality Advocates now seek to intervene to ensure that this critically important aspect of Title IX is fully advanced in this litigation.

In support of this Motion, Equality Advocates submit the following Memorandum of Points and Authorities and the Proposed Complaint in Intervention, which is attached hereto as **<u>Exhibit "A"</u>** and incorporated herein by reference.

/ / /

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Equality Advocates seek to intervene in this matter to advance women's right to equal treatment under Title IX because the DeVos Rules permit or require unequal treatment of women and the Plaintiffs advance no claims or arguments on behalf of women's right to equal treatment. The DeVos Rules cannot stand because: they were issued without authority; they violate Title IX's equal treatment mandate; they violate the Spending Clause of the U.S. Constitution; and they violate the Administrative Procedure Act. In short, the DeVos Rules have effectively and unlawfully repealed Title IX and its duly promulgated regulations that mandate equal treatment of women. If left to stand, or modified only in accordance with the arguments and claims set forth by the Plaintiffs, the DeVos Rules will cause harm to women as a class.

## II.    PRIOR PROCEEDINGS

Plaintiffs filed their complaint on January 25, 2018, purporting to represent the rights and interests of women as a class under Title IX. They amended their complaint on February 21, 2018. Neither complaint includes a Title IX claim, or a Spending Clause claim. Defendants filed a Motion to Dismiss on May 2, 2018. Plaintiffs filed an opposition in which it nowhere addresses or advocates for equal treatment of women. As a result, Equality Advocates filed a motion for leave to file an amicus brief on June 14, 2018,[1] which was granted on June 29, 2018. The brief filed by Equality Advocates extensively addressed women's right to equal treatment under Title IX. A hearing on Defendants' Motion to Dismiss was held on July 19, 2018. During the hearing, equal treatment of women was not addressed by any party or the court. At the end of the hearing, the Court asked for supplemental briefing on the issue of which rights and obligations are affected by the DeVos Rules. Plaintiffs submitted a supplemental brief on August 2, 2018. Their brief nowhere mentions women's

---

[1] The first lawsuit to challenge the DeVos Rules was filed against Defendants in the United States District Court for the District of Massachusetts on October 19, 2017. *Equal Means Equal, et al., v. U.S. Dep't of Education, et al.*, 1:17cv12043-MLW. Unlike this case, the Massachusetts lawsuit seeks fully equal treatment of women.

right to equal treatment under Title IX, and nowhere argues that the DeVos Rules violate this mandate. Nor does their brief point out that unequal treatment of women is a cognizable legal injury.

In light of Plaintiffs' failure to advance women's right to equal treatment, Equality Advocates now seek to intervene as Plaintiffs because the disposition of this action will impact the rights and interests of women as a class.

## III.   **INTERESTS OF PUTATIVE INTERVENORS**

The **Women's and Children's Advocacy Project** (WCAP) is a public interest law project of the Center for Law and Social Responsibility at New England Law|Boston. The WCAP engages in direct litigation, and submits amicus briefs in state and federal court on behalf of the rights and interests of abused women and children. The co-Director of WCAP has been involved in litigation related to sexual assault and Title IX since the early 1990s, and has written many scholarly articles on the topic, including a seminal law review article explaining how and why Title IX applies to campus sexual assault.[2]

**Equal Means Equal** (EME) is a national nonprofit 501(c)(4) organization that Advocates for sex/gender equality and the fully equal treatment of women and girls. Through the use of grassroots activism, social media, and documentary filmmaking, EME has actively lead or participated in hundreds of events to support sex/gender equality. In 2016, EME produced and released the film *Equal Means Equal*. In 2018, EME testified before the Illinois legislature in support of that state's successful ratification of the 1972 Equal Rights Amendment. Equal Means

---

[2] *Using Title IX's "Prompt and Equitable" Hearing Requirements to Force Schools to Provide Fair Judicial Proceedings to Redress Sexual Assault on Campus*, 40 New England Law Review, No. 4, pp. 1007-1022 (2006); *Sexual Harassment and Title IX: What's Bullying Got To Do With It*, New England Journal on Criminal and Civil Confinement, 37, 305-324 (2011); *Bullying and Harassment in Schools: Analysis of Legislation and Policy,* in M.A. Paludi (Ed.), Women and Management, Global Issues and Promising Solutions, volume 2: Signs of Solutions (pp. 29-51) (Santa Barbara, CA Praeger 2013); *Effective Gender Activism: An Exercise in Marginalization*, in Martin, J.L. (Ed.), Racial Battle Fatigue: Insights from the Front Lines of Social Justice Advocacy, (pp. 191-208) (Santa Barbara, CA Praeger 2015); Murphy, W., *Krakauer's Missoula: Where Subversive Meets Verisimilitude*, 42 Journal of College and University Law, number 2, pp. 479-516, at 490, n.45 (2016).

Equal is based in California, where its founder and president, actress Kamala Lopez, resides. EME's mission is to advocate for the fully equal treatment of women under all laws.

The **National Coalition Against Violent Athletes** (NCAVA) is a national 501(c)(3) non-profit organization that advocates for victims of violence, including sexual assault and domestic violence, as well as prevention training for athletes. Through media, prevention training, legal advocacy, research, grassroots advocacy and policy writing, the NCAVA has led a twenty-year movement for equal rights for victims. NCAVA is based in Colorado, where its founder and president, Katherine Redmond, resides. NCAVA's mission is to advocate for the equal treatment of women under all laws.

**Allies Reaching for Equality** (A.R.E.) was formed in 2017 to address the significant issue of university practices that allow hostile environments to go unchecked and places the achievement of women and other intersectional populations in jeopardy. A.R.E. is serving as advocate for university community members navigating discrimination and retaliation. A.R.E. will also provide effective training, resources, and empowerment for university staff to uphold civil rights law, including Title IX, Title VII, and 1964 civil rights laws to stop the uneven playing field and ensure equal access to education. The corporatization of higher education and the competitive environment to attract students has provoked a disincentive for universities to allocate resources to point to institutional problems dealing with gender and intersectional harassment. A.R.E.'s mission is to partner with university leadership, faculty, staff, and students to create a community prioritizing and upholding gender, race, and intersectionality equity at our universities. The United States government is not equipped to guarantee compliance with civil rights laws and attempts to enforce have historically caused a reaction with little effort to prevent the significant harms experienced by survivors of sexual assault, harassment, and retaliation. With its programs, A.R.E. is working to close the gap caused by lack of government oversight with research-driven information and guided resources. A.R.E.'s mission is to advocate for the equal treatment of women, including equal treatment of civil rights laws.

**Women Matter** is an organization based in Virginia. It supports gender equality under the law by advocating for ratification of the Equal Rights Amendment.  (ERA) Through education and advocacy, Women Matter has increased bipartisan support for the ERA in Virginia and has assisted Nevada and Illinois in their recent successful ratification efforts. In collaboration with members of other regional and national organizations, Women Matter has helped establish a network of activists in Virginia and further elevated support for the Amendment's ratification by the Virginia General Assembly.  Women Matter also participates in efforts by People Demanding Action to enlist sponsors and passage of bills in Congress to remove the deadline for ratification. Since its inception in 2013, Women Matter has advocated for the equal treatment of women under the United States Constitution and, consequently, all state and federal government action, including legislation and rulemaking.

**We Are Woman (WAW)** is a national nonprofit 501(c)(3) organization that advocates for the rights of women and families. The organization's mission is to enshrine the Equal Rights Amendment in the United States Constitution.  WAW advocates on behalf of women for a variety of women's issues including domestic abuse, reproductive rights and providing education about the importance of voting in all elections. Through grassroots advocacy, social media activism, and participation in coalitions, WAW has led or participated in events throughout the country in support of its mission.

**SAFE Campuses, LLC** provides education and training for all levels of education, in the United States and abroad, on a wide range of campus security issues including sexual assault, dating violence, and stalking. Founded in 2017, SAFE Campuses works with institutions and victims, and has extensive experience in higher education security issues and regulatory compliance, including Title IX, other civil rights laws, and the Jeanne Clery Act.

/ / /

/ / /

/ / /

1  IV.   **ARGUMENT**

2       The requirements for intervention in federal actions are set forth in Rule 24 of the Federal

3  Rules of Civil Procedure. Under Rule 24(a), intervention is allowed as a matter of right.

4  Intervention is permissive under Rule 24(b).

5       A.   **Equality Advocates Have a Right to Intervene**

6       Federal Rules of Civil Procedure 24(a) provides that upon timely motion, a court must permit

7  anyone to intervene who: 1) is given an unconditional right to intervene by a federal statute; or 2)

8  claims an interest relating to the property or transaction that is the subject of the action, and is so

9  situated that disposing of the action may, as a practical matter, impair or impede the movant's ability

10  to protect its interest, unless existing parties adequately represent that interest.

11       Equality Advocates satisfy the requirements for intervention as of right.

12            1.   The Application is Timely

13       Plaintiffs filed their first amended complaint six months ago, and in the interim the

14  Defendants have filed a Motion to Dismiss, which has not been decided.   Equality Advocates seek

15  to intervene at this point in the litigation because it was only after Plaintiffs filed their supplemental

16  brief on August 2, 2018 in response to the Court's request for briefing specifically on the issue of

17  which rights are at stake in this litigation that it became clear that Plaintiffs are not interested in

18  advancing equal rights for women as a class. The parties will not be prejudiced by intervention at

19  this time because the issues raised by Equality Advocates have already been submitted in this case,

20  in the form of an amicus brief.

21            2.   Equality Advocates Have a Significant Interest in the Subject of this Action

22       Equality Advocates have a significant interest in the subject matter of this action because the

23  DeVos Rules require or permit the unequal treatment of women, and Equality Advocates seek to

24  advance the fully equal treatment of women.

25       B.   **Standing/Injury**

26       Equality Advocates have as much standing to seek a remedy as the Plaintiffs. Moreover, the

27

28
NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE

denial of equal treatment is a cognizable legal injury. *See American Civ. Liberties Union of N.M. v. Santillanes*, 546 F.3d 1313, 1319 (10th Cir. 2008) ("The injury in fact is the denial of equal treatment. Although the City argues that the bases identified by the district court to show injury are speculative or non-existent, the fact remains that the individual Plaintiffs will still be required to present photo identification that must be accepted if they vote in-person whereas those voting absentee will not.") *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004) ("[A] voter cannot know in advance that his or her name will be dropped from the rolls, or listed in an incorrect precinct, or listed correctly but subject to a human error by an election worker who mistakenly believes the voter is at the wrong polling place. It is inevitable, however, that there will be such mistakes. The issues Appellees raise are not speculative or remote; they are real and imminent.") (finding standing and holding that the denial of equal treatment is an injury in fact.) These cases make clear that the deprivation of equal treatment is more than just a "subjective chill," see *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1090-91 (10th Cir. 2006).

Equality Advocates also have prudential standing under the Administrative Procedure Act, (APA) because women as a class are within the zone of interests recognized by the APA as a class of people intended to be protected by Title IX. 5 U.S.C. § 702 (a person is within the zone of interests if they are "adversely affected or aggrieved …" within the meaning of a relevant statute.) The APA is broadly remedial, and those whose interests are directly affected by a broad or narrow interpretation of a statute or regulation are easily identifiable. *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150 (1970). The plaintiff need only fall within the "zone of interests protected or regulated by the statutory provision … invoked in the suit." APA, 5 U.S.C. §702; *Bennett v. Spear*, 520 U.S. 154, 162-63 (1997). *See Thompson v. North American Stainless*, 131 S. Ct. 863, 869-70 (2011) (A person who has standing under Title VII of the Civil Rights Act of 1964 is anyone within the "zone of interests" as that phrase is used in APA standing jurisprudence.) All women fall within Title IX's zone of interests because Title IX is intended to ensure that no person is subjected to sex discrimination in federally assisted programs. See

*Guardians Ass'n v. Civil Serv. Comm'n of N.Y.*, 463 U.S. 582, 633 (1983) (Because Title VI is intended to ensure that 'no person' is subject to discrimination in federally assisted programs, private parties function as third-party beneficiaries to these contracts). *See also Barlow v. Collins,* 397 U.S. 159 (1970) (Tenant farmers had standing to challenge Department of Agriculture regulation because they were intended beneficiaries under the statute).

## C. **Title IX**

Title IX of the Education Amendments of 1972 forbids sex discrimination, including sex-based assaults. *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 291 (1998); *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 641 (1999) in or by federally funded educational entities. 20 U.S.C. § 1681(a). Title IV of the Civil Rights Act of 1964 prohibits the same harm as that which is prohibited by Title IX, and covers race, color, religion, and national origin. 42 U.S.C. §§ 2000c through 2000c-9.

Long misunderstood to be primarily a sports equity rule for female athletes, Title IX was modeled after Title VI of the Civil Rights Act of 1964, which provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," 42 U.S.C. §§ 2000d - 2000d-7. Title IX uses exactly the same enabling language and states, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…" 20 U.S.C. § 1681(a).

The Title IX regulations forbid schools, on the basis of sex, to: "subject any person to separate or different rules of behavior, sanctions, or other treatment;" or otherwise "limit any person in the enjoyment of any right, privilege, advantage or opportunity;" "treat one person differently from another" in "determining whether such person satisfies any requirement of condition for the provision of such aid, benefit, or service;" or "provide different aid, benefits or services in a different manner;" 34 C.F.R. part 106.31(b)(1-7). Title IX regulations further prohibit the "use or distribut[ion

NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE

of] a publication, which suggests by text or illustration that such school treats applicants, students or employees differently on the basis of sex" 34 C.F.R. part 106.9(b)(2), and mandate that funding recipients "adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action, which would be prohibited by Title IX." 34 C.F.R. part 106.8(b).

Sex as a civil rights category is entitled to the same treatment as race and national origin. *Among the University of Montana - Missoula, the U.S. Department of Justice, Civil Rights Division, Educational Opportunities Section and the U.S. Department of Education*, Office for Civil Rights, RESOLUTION AGREEMENT, available at http://www.justice.gov/crt/about/ edu/documents/montanaagree.pdf (announcing resolution agreement with the University of Montana and noting that Title IV and Title IX both require "equity" and are subject to the same regulations and standards of enforcement). Title IX is coextensive with civil rights laws that protect against other civil rights harms, such as those based on race and national origin. *Cannon v. University of Chicago*, *supra,* at 694-98 (1979) (Congress intended that Title IX would be interpreted and applied as Title VI has been); *U.S. Department of Justice, findings letter against the University of New Mexico*, (April 22, 2016) (noting that Title IX, Title VI, and Title IV are coextensive civil rights laws); https://www.justice.gov/opa/file/843901/download; *Justice Department Announces Investigations of the Handling of Sexual Assault Allegations by the University of Montana, the Missoula, Mont., Police Department and the Missoula County Attorney's Office,* Department of Justice (May 1, 2012), http://www.justice.gov/opa/pr/2012/ May/12-crt-561.html (announcing Title IX compliance review and Title IV investigation of the University of Montana and noting, "Title IX of the Education Amendments of 1972 and Title IV of the Civil Rights Act of 1964 each prohibit sex discrimination, including sexual assault and sexual harassment in education programs"); *Resolution Agreement, http://www. justice.gov/ crt/about/edu/documents/montanaagree.pdf* (announcing resolution agreement with the University of Montana and noting that Title IV and Title IX are subject to the same regulations to ensure

NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE

enforcement of rights regarding discrimination, harassment, and violence. 28 C.F.R. Part 54 and 34 C.F.R. Part 106). *See also,* Civil Rights Restoration Act of 1987, equating standards from Title VI with Title IX, 20 U.S.C. § 1687; 29 U.S.C. § 794, 42 U.S.C. § 2000d-4a, and 42 U.S.C. § 6101; 34 C.F.R. § 106.71 (stating that the procedural provisions applicable to Title VI of the Civil Rights Act, 34 CFR §§ 100.6-100.11, are adopted and incorporated therein); *Title VI Enforcement Highlights Office for Civil Rights,* U.S. DEPARTMENT OF EDUCATION, http://www2.ed.gov/documents/press-releases/title-vi-enforcement.pdf (repeatedly noting that Title VI requires schools to apply standard of "equity"); *Title IX Legal Manual*, THE UNITED STATES DEPARTMENT OF JUSTICE, http://www.justice.gov/crt/about/cor/coord/ixlegal.php; *see also* 42 U.S.C. § 2000d-7 (requiring equal treatment on behalf of all protected class categories, and in a section labeled "Civil rights remedies equalization" provides that "(1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of § 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794], Title IX of the Education Amendments of 1972 [20 U.S.C. 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C. 6101 et seq.], Title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." This "Civil rights remedies equalization" mandate further states that "(2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.)

## D.   <u>How The DeVos Rules Require or Permit the Unequal Treatment of Women</u>

As addressed at length in Equality Advocates' amicus brief at pages 7-12, which is incorporated herein by reference, the DeVos Rules require or permit the unequal treatment of women in the following ways: They allow the use of a burden of proof more onerous than Title IX's preponderance of the evidence standard (DeVos Rules, p.5); they require the use of criminal law definitions to address sex-based offenses rather than Title IX's less onerous definition of unwelcome

(DeVos Rules, pp.2, 3 & n.11-12; 5 & n.22-23; 6 & n.25); they permit schools to offer *fair* redress for victims of sex-based harms (DeVos Rules, p.3 & n.11), rather than *equitable* redress; they permit or require separate and different treatment of sex-based harms; they grant offenders of sex-based civil rights harms the same rights as victims of sex-based civil rights harms (DeVos Rules at p.4, 5), while offenders of civil rights harms based on other protected class categories, such as race or national origin, are not granted the same rights as their victims. The DeVos Rules also mandate that sex-based civil rights harms be treated the same as non-civil rights harms (DeVos Rules, p.5, n.19), while civil rights harms based on other protected class categories, such as race or national origin, are not treated the same as non-civil rights harms. These aspects of the DeVos Rules obviously affect the rights of women as a class to equal treatment.

**E.    The Campus SaVE Act**

The DeVos Rules incorporate regulations promulgated under SaVE, a statute that Amended the Clery Act, not Title IX, but which the DeVos Rules unlawfully incorporated into Title IX by reference and mandated that schools comply with SaVE when enforcing Title IX. At least one federal court has ruled that SaVE can have "no effect" on Title IX because it amended the Clery Act. *Doe v. U.S. Dept. of Health and Human Services*, 85 F. Supp. 3d 1, 11 (D.D.C. 2015). The Department of Education itself acknowledged as much in an August 2014 guidance document in which it wrote that "[n]othing in [SaVE] … relieves a school of its obligation to comply with the requirements of Title IX …" Dept. of Education, Office for Civil Rights, *Questions and Answers on Title IX and Sexual Violence*, April 29, 2014, p.44.  Moreover, as noted in Equality Advocates' amicus brief at page 1, OCR enforces Title IX and other civil rights laws, but it does not enforce SaVE.

While not all aspects of SaVE require or permit unequal treatment of women, key provisions outlined herein by Equality Advocates do, and they have the force of law. *Cohen v. Brown Univ.*, 101 F.3d 155, 172 (1st Cir. 1996).  Women have a protectable interest against the enforcement of regulations that require or permit discrimination under Title IX because Title IX forbids sex

NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE

discrimination. *See City of Los Angeles, Dep't of Water and Power v. Manhart, supra,* at 707-11 (1978) (a statute designed to prevent sex discrimination cannot permit different treatment based on sex); *Title IX Legal Manual, supra* at 62 ("policies or practices that explicitly classify individuals on the basis of sex … violate Title IX..."); Accord, *Glycine & More, Inc. v. United States,* 880 F.3d 13335 … n.2 (Fed. Cir. 2018) (guidance document granted no deference because it "represented an incompatible departure from the clear meaning of the regulation … [and] "was not simply an interpretive statement regarding an ambiguity in the regulation…")

### F.  Administrative Redress

Women also have a right under Title IX to have grievances on campus and complaints with federal oversight agencies, such as the Office for Civil Rights (OCR) at the Department of Education (DOE), redressed under fully equal legal standards. These administrative redress rights are affected by the DeVos Rules because the DeVos Rules permit or require schools and OCR to subject grievances to unequal treatment, and were made immediately effective upon issuance. Indeed, OCR is already applying the DeVos Rules to investigations and compliance reviews. ("In the interim, [these rules] …  provide information about how OCR will assess a school's compliance with Title IX.") (DeVos Rules, p.1)

### G.  Private Right of Action

The federal courts are also allowing the DeVos Rules to affect women's rights when determining whether schools should be held liable for violating Title IX. See e.g., *Kollaritsch et al., v. Michigan State University Board of Trustees, et al.*, 1:15-cv-01191-PLM-PJG, United States District Court, Western District of Michigan, (court order issued 10/17/17 denying motion to strike and granting defendants leave to file supplemental authority regarding the DeVos Rules, described as a "significant change in Guidance on Title IX").

Because the DeVos Rules incorporate SaVE, women's private right of action is also affected because SaVE forbids victims a private right of action. 20 U.S.C. § 1092 (2013) ("Nothing in this subsection shall be construed … to provide a right of action to any person to enforce any provision

of this subsection … or to create a cause of action against any institution of higher education or any employee of the institution for any civil liability.") By contrast, victims have a right to sue under Title IX. *Cannon v. University*, 441 U.S. 677, 703, n.33 (1979).

### H.   Disposition of this Action Will Impair or Impede Equality Advocates' Ability to Protect Their Interests

The inadequate representation element of Rule 24(a) is satisfied if the applicant shows that representation of his interests "may" be inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The burden of making that showing is minimal. *Id*. An applicant should be allowed to intervene unless it is clear that the party will provide adequate representation. 7A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1909 (1st ed. 1972).

The interests of women as a class are not adequately represented by the Plaintiffs because the DeVos Rules permit and require unequal treatment, in contravention of Title IX's equal treatment mandate, but the Plaintiffs' complaint nowhere asserts any claims requiring fully equal treatment. One claim asserts that the DeVos Rules violate the Equal Protection Clause of the Fifth Amendment, but this claim, even if successful, will *permit* rather than *preclude* unequal treatment because the Fifth Amendment's Equal Protection Clause affords women only middle-tier scrutiny, while other protected classes are afforded strict scrutiny. *Bolling v. Sharpe*, 347 U.S. 497 (1954); *Rostker v. Goldberg*, 453 U.S. 57 (1981).

In addition to filing an inadequate complaint, Plaintiffs do not advance in their memoranda any arguments in favor of fully equal treatment of women under Title IX. Instead, Plaintiffs identify fourteen mostly minor problematic aspects of the Devos Rules, (Amended Comp. p.31), and nowhere assert that those or any other aspects of the DeVos Rules are problematic *because* they subject women to unequal treatment and violate Title IX's equal treatment mandate.

Clearly, the disposition of this action will impair the ability of women as a class to protect their interests because even if the Court rules in Plaintiffs' favor, the ruling will not require the fully equal treatment of women.

NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE

## I.  In the Alternative, Permissive Intervention Should be Granted

If the Court finds that Equality Advocates do not satisfy the requirements for intervention as of right, permissive intervention should be granted.

Under Federal Rules of Civil Procedure 24(b)(1) the Court may liberally permit "anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Whether to grant permissive intervention is within the court's broad discretion, and the Court may consider factors such as the nature and extent of the intervenor's interest; its standing to raise relevant legal issues; the legal position it seeks to advance and its probable relation to the merits of the case; whether the intervenor's interests are adequately represented by other parties; whether intervention will prolong or unduly delay the litigation, and whether the party seeking intervention will significantly contribute to the full development of the legal questions presented. *Spangler v. Pasadena City Bd. Of Ed.,* 552 F.2d 1326, 1329 (9th Cir. 1977).

Equality Advocates meet the threshold requirements of 24(b)(1) for the reasons set forth in their previous arguments in favor of intervention as of right. Furthermore, the claims and interests of Equality Advocates are not dissimilar to the claims asserted by the Plaintiffs, except that Equality Advocates seeks fully equal treatment while the Plaintiffs do not. In addition, Equality Advocates satisfy the *Spangler* criteria because they have a strong interest in ensuring that women and sex-based harms receive fully equal treatment under Title IX, and that courts and federal agencies abide by Title IX's equality mandate. Finally, the participation of Equality Advocates will not unduly prolong or delay the litigation, and their involvement will contribute to the full development of the legal questions presented. Indeed, participation by Equality Advocates in this matter will likely conserve judicial resources in that Equality Advocates may choose not to pursue independent action in a different forum of their choosing.

1

**V.     <u>CONCLUSION</u>**

2      Sex equality - the most fundamental of rights for all women - is at stake in this litigation and

3 is not adequately being protected by the Plaintiffs. Equality Advocates urge this Court to grant their

4 motion to intervene, and order the clerk to file the proposed Complaint in Intervention, attached

5 hereto as **<u>Exhibit "A".</u>**

6

7 DATED:  August 31, 2018                NEW ENGLAND LAW/BOSTON

8

9                                       By: */s/Wendy Murphy*
                                           Wendy Murphy
10                                          Attorneys for The Women's and Children's
                                           Advocacy Project, Equal Means Equal, National
11                                          Coalition Against Violent Athletes, Allies Reaching
                                           for Equality, Women Matter, We Are Woman, and
12                                          SAFE Campuses, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   WENDY MURPHY, Pro Hac Vice
    wmurphy@nesl.edu
2   New England Law/Boston
    154 Stuart Street
3   Boston, MA 02116
    Telephone: (617)422-7410
4
5   JEFFREY L. FILLERUP (SBN 120543)
    jfillerup@rinconlawllp.com
6   RINCON LAW LLP
    200 California St., Suite 400
7   San Francisco, CA  94111
    Telephone:     (415) 996-8199
8   Facsimile:     (415) 680-1712
9   Attorneys for The Women's and Children's Advocacy Project,
    Equal Means Equal, National Coalition Against Violent Athletes,
10  Allies Reaching for Equality, Women Matter, We Are Woman,
    and SAFE Campuses, LLC
11                  IN THE UNITED STATES DISTRICT COURT
12                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
13                          SAN FRANCISCO DIVISION
14
15  SURVJUSTICE, INC.,                      Case No. 3:18-cv-00535-JSC
    1015 15th Street NW, Suite 632
    Washington, DC 20005                    **[PROPOSED] COMPLAINT IN
16                                          INTERVENTION**
    EQUAL RIGHTS ADVOCATES,                 **FOR DECLARATORY AND
17  1170 Market Street, Suite 700           INJUNCTIVE RELIEF**
    San Francisco, CA 94102
18
    VICTIM RIGHTS LAW CENTER
19  520 SW Yamhill Street
    Portland, OR 97204,
20
                       Plaintiffs,
21
    v.
22
    ELISABETH DEVOS, in her official
23  capacity as Secretary of Education,
    400 Maryland Avenue SW
24  Washington DC 20202, et al.
25
26                     Defendants.
27                                              1                    3:18-cv-00535-JSC
28       COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBIT A**

## I.      INTRODUCTION

1.      This complaint challenges the Department of Education's (DOE) seven-page "Q and A on Campus Sexual Misconduct," described by the DOE as a "significant guidance document" and publicly released by Defendant Betsy DeVos on September 22, 2017 (hereafter "DeVos Rules," attached as Exhibit 1). The DeVos Rules state, "the Department intends to engage in rulemaking on the topic of schools' Title IX responsibilities concerning complaints of sexual misconduct, including peer-on-peer sexual harassment and sexual violence." The Rules further state that they will serve as "interim information about how OCR (the Office for Civil Rights) will assess a school's compliance with Title IX." (DeVos Rules, p.1).

2.      The DeVos Rules subvert and violate the plain and unambiguous language of the Title IX statute and regulations.

3.      The DeVos Rules violate the Administrative Procedures Act because they were issued in excess of authority and jurisdiction, and without compliance with the APA

4.      Aspects of the DeVos Rules are unconstitutional because Congress has no general authority to regulate violence against women. *U.S. v. Morrison*, 529 U.S. 598 (2000). To the extent Congress may regulate under the Spending Clause, it cannot do so in a manner that is coercive or that intrudes unconstitutionally into the authority of the states, or otherwise violates the law. *N'tl Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012).

5.      Plaintiffs The Women's and Children's Advocacy Project, Equal Means Equal, National Coalition Against Violent Athletes, Allies Reaching for Equality, Women Matter, We Are Woman, and SAFE Campuses, LLC seek declaratory and injunctive relief to prevent application of the DeVos Rules in schools, enforcement agencies, and courts.

## II.      JURISDICTION AND VENUE

6.      Subject matter jurisdiction is conferred by 28 U.S.C. § 1651 (writs); 28 U.S.C.  § 1331 (federal question); 28 U.S.C.  § 1346(a)(2)(United States as defendant); 28 U.C.S.  § 1361 (compel agency to act or not act);  28 U.S.C.  § 2201, § 2202 (declaratory relief); and 5 U.S.C. §

**EXHIBIT A**

702 (legal wrong suffered because of agency action).

7.    Venue is appropriate under 28 U.S.C. § 1391(e) because the lead Plaintiff, Equal Means Equal, is a resident of this judicial district and defendants are officers and agencies of the United States.

### III.    PARTIES

8.    The Women's and Children's Advocacy Project (WCAP) is a public interest law project of the Center for Law and Social Responsibility at New England Law|Boston. The WCAP engages in direct litigation, and submits amicus briefs in state and federal court on behalf of the rights and interests of abused women and children. The co-Director of WCAP has been involved in litigation related to sexual assault and Title IX since the early 1990s, and has written many scholarly articles on the topic, including a seminal law review article explaining how and why Title IX applies to campus sexual assault.[1]

9.    Plaintiff Equal Means Equal (EME) is a 501(c)(4) organization, whose primary purpose is to advocate for sex/gender equality. The President is Kamala Lopez and the Directors are Kamala Lopez and Natalie White. It is incorporated in the State of California.

10.    Plaintiff The National Coalition Against Violent Athletes (NCAVA) is a 501(c)(3) organization. It was founded in 1997 and is a national non-profit organization whose mission is to serve the advocacy needs of victims of sex-based harm under Title IX and related laws.

11.    Plaintiff Allies Reaching for Equality (A.R.E.) was formed in 2017 to address the

---

[1] *Using Title IX's "Prompt and Equitable" Hearing Requirements to Force Schools to Provide Fair Judicial Proceedings to Redress Sexual Assault on Campus*, 40 New England Law Review, No. 4, pp. 1007-1022 (2006); *Sexual Harassment and Title IX: What's Bullying Got To Do With It*, New England Journal on Criminal and Civil Confinement, 37, 305-324 (2011); *Bullying and Harassment in Schools: Analysis of Legislation and Policy,* in M.A. Paludi (Ed.), Women and Management, Global Issues and Promising Solutions, volume 2: Signs of Solutions (pp. 29-51) (Santa Barbara, CA Praeger 2013); *Effective Gender Activism: An Exercise in Marginalization*, in Martin, J.L. (Ed.), Racial Battle Fatigue: Insights from the Front Lines of Social Justice Advocacy, (pp. 191-208) (Santa Barbara, CA Praeger 2015); Murphy, W., *Krakauer's Missoula: Where Subversive Meets Verisimilitude*, 42 Journal of College and University Law, number 2, pp. 479-516, at 490, n.45 (2016).

COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBIT A**

significant issue of university practices that allow hostile environments to go unchecked and places the achievement of women and other intersectional populations in jeopardy. A.R.E. is serving as advocate for university community members navigating discrimination and retaliation. A.R.E. will also provide effective training, resources, and empowerment for university staff to uphold civil rights law, including Title IX, Title VII, and 1964 civil rights laws to stop the uneven playing field and ensure equal access to education. The corporatization of higher education and the competitive environment to attract students has provoked a disincentive for universities to allocate resources to point to institutional problems dealing with gender and intersectional harassment. A.R.E.'s mission is to partner with university leadership, faculty, staff, and students to create a community prioritizing and upholding gender, race, and intersectionality equity at our universities. The United States government is not equipped to guarantee compliance with civil rights laws and attempts to enforce have historically caused a reaction with little effort to prevent the significant harms experienced by survivors of sexual assault, harassment, and retaliation. With its programs, A.R.E. is working to close the gap caused by lack of government oversight with research-driven information and guided resources. A.R.E.'s mission is to advocate for the equal treatment of women, including equal treatment of civil rights laws.

12.     Plaintiff Women Matter is an organization based in Virginia. It supports gender equality under the law by advocating for ratification of the Equal Rights Amendment. (ERA) Through education and advocacy, Women Matter has increased bipartisan support for the ERA in Virginia and has assisted Nevada and Illinois in their recent successful ratification efforts. In collaboration with members of other regional and national organizations, Women Matter has helped establish a network of activists in Virginia and further elevated support for the Amendment's ratification by the Virginia General Assembly. Women Matter also participates in efforts by People Demanding Action to enlist sponsors and passage of bills in Congress to remove the deadline for ratification. Since its inception in 2013, Women Matter has advocated for the equal treatment of women under the United States Constitution and, consequently, all state and federal government

COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBIT A**

action, including legislation and rulemaking.

13.     Plaintiff We Are Woman (WAW) is a national nonprofit 501(c)(3) organization that advocates for the rights of women and families. The organization's mission is to enshrine the Equal Rights Amendment in the United States Constitution.  WAW advocates on behalf of women for a variety of women's issues including domestic abuse, reproductive rights and providing education about the importance of voting in all elections. Through grassroots advocacy, social media activism, and participation in coalitions, WAW has led or participated in events throughout the country in support of its mission.

14.     Plaintiff SAFE Campuses, LLC provides education and training for all levels of education, in the United States and abroad, on a wide range of campus security issues including sexual assault, dating violence, and stalking. Founded in 2017, SAFE Campuses works with institutions and victims, and has extensive experience in higher education security issues and regulatory compliance, including Title IX, other civil rights laws, and the Jeanne Clery Act.

15.     Defendant United States Department of Education is an executive agency of the United States government. The Department's principal address is 400 Maryland Avenue, SW, Washington, D.C. 20202.

16.     Defendant Betsy DeVos is the United States Secretary of Education. Her regular place of business is 400 Maryland Avenue, S.W., Washington, D.C. 20202. She is sued in her official capacity and is responsible for the implementation and enforcement of Title IX and other civil rights laws.

## IV.     FACTS
### THE TITLE IX STATUTE AND REGULATIONS

17.     Title IX of the Education Amendments of 1972 is a civil rights law that states that "no person shall, on the basis of sex be . . . subjected to discrimination."  Title IX is coextensive with Title VI.  34 C.F.R. § 106.71 (procedural provisions applicable to Title VI of the Civil Rights Act (34 CFR §§ 100.6-100.11) are adopted and incorporated therein.) It is also coextensive with

COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBIT A**

1   Title IV of the Civil Rights Act of 1964.[2] Title IV prohibits discrimination on the basis of sex, race,

2   and national origin in public schools.  42 U.S.C. §§ 2000c through 2000c-9; Equal Educational

3   Opportunities Act of 1974, Title II, 20 U.S.C. §§ 1701-1758.  Title IX applies to public and private

4   schools that receive federal funds.

5          18.    Long misunderstood to be primarily a sports equity rule for female athletes, Title IX

6   was modeled after Title VI of the Civil Rights Act of 1964, which provides that "No person in the

7   United States shall, on the ground of race, color, or national origin, be excluded from participation

8   in, be denied the benefits of, or be subjected to discrimination under any program or activity

9   receiving Federal financial assistance," 42 U.S.C. §§ 2000d - 2000d-7. Title IX uses exactly the

10   same enabling language and states that "No person in the United States shall, on the basis of sex, be

11   excluded from participation in, be denied the benefits of, or be subjected to discrimination under

12   any education program or activity receiving Federal financial assistance…" 20 U.S.C. § 1681(a).

13

14

----

15   [2] *See Title IX Legal Manual,* THE UNITED STATES DEPARTMENT OF JUSTICE (last visited Jan. 30,
    2014), http://www.justice.gov/crt/about/cor/coord/ixlegal.php (noting that "Congress consciously
16   modeled Title IX on Title VI" and citing *Alexander v. Choate,* 469 U.S. 287, 294 (1985) for the
    proposition that because Title IX and Title VI contain parallel language, the same analytic
17   framework should apply in the context of administrative redress proceedings because both statutes
    were enacted to prevent unlawful discrimination and to provide remedies for the effects of past
18   discrimination); U.S. DEPARTMENT OF JUSTICE, findings letter against the University of New
    Mexico, (April 22, 2016) (noting that Title IX, Title VI, and Title IV are coextensive civil rights
19   laws);    https://www.justice.gov/opa/file/843901/download;    *Justice    Department    Announces
    Investigations of the Handling of Sexual Assault Allegations by the University of Montana, the
20   Missoula, Mont., Police Department and the Missoula County Attorney's Office,* DEPARTMENT OF
    JUSTICE (May 1, 2012), http://www.justice.gov/opa/pr/2012/ May/12-crt-561.html (announcing
21   Title IX compliance review and Title IV investigation of the University of Montana and noting,
    "Title IX of the Education Amendments of 1972 and Title IV of the Civil Rights Act of 1964 each
22   prohibit sex discrimination, including sexual assault and sexual harassment in education
    programs");    *Resolution    Agreement*,    http://www.justice.gov/crt/about/edu/documents/
23   montanaagree.pdf (announcing resolution agreement with the University of Montana and noting that
    Title IV and Title IX are subject to the same regulations to ensure enforcement of rights regarding
24   discrimination, harassment, and violence in education "on the basis of sex." 28 C.F.R. Part 54 and
    34 C.F.R. Part 106). *See also* the Civil Rights Restoration Act of 1987, which made clear that
25   substantive standards from Title VI apply with equal force to Title IX, 20 U.S.C. § 1687; 29 U.S.C.
    § 794, 42 U.S.C. § 2000d-4a, and 42 U.S.C. § 6101.

26

27

28

**EXHIBIT A**

19.     Sex-based discriminatory harm is covered by Title IX and must be addressed under must civil rights standards and definitions. The conduct itself, not the label used to describe the conduct, determines whether civil rights standards and definitions apply. *Letter from Russlynn Ali*, Assistant Secretary for Civil Rights, Department of Education, Office for Civil Rights (October 26, 2010) ("The label used to describe an incident (*e.g.*, bullying, hazing, teasing) does not determine how a school is obligated to respond. Rather, the nature of the conduct itself must be assessed for civil rights implications. So, for example, if the abusive behavior is on the basis of race, color, national origin, sex, or disability, and creates a hostile environment, a school is obligated to respond in accordance with the applicable federal civil rights statutes and regulations enforced by OCR.") The controlling civil rights/Title IX standard asks simply whether sex-based harm was "unwelcome" and "based on sex." "Unwelcome" means that which was not requested or invited, and which an individual considered to be "undesirable or offensive."

20.     Title IX covers all unwelcome conduct based on sex, including that which is committed by a student against another student. *Davis v. Monroe*, 526 U.S. 629 (1999).

21.     The Title IX regulations state that "no person shall, on the basis of sex be . . . subjected to discrimination." 34 C.F.R. part 106.31(a).

22.     The Title IX regulations state that a school "shall not, on the basis of sex," *inter alia*, "treat one person differently from another in determining whether such person satisfies any requirement of condition for the provision of such aid, benefit, or service; provide different aid, benefits or services in a different manner; deny any person such aid, benefit, or service."34 C.F.R. part 106.31(b)(1-7).

23.     The Title IX regulations state that a school shall not on the basis of sex "subject any person to separate or different rules of behavior, sanctions, *or other treatment*, or otherwise limit any person in the enjoyment of any right, privilege, advantage or opportunity." 34 C.F.R. part 106.31(b)(1-7).

24.     The Title IX regulations state that a school "shall adopt and publish grievance

COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBIT A**

procedures providing for prompt and equitable resolution of student and employee complaints alleging any action, which would be prohibited by Title IX. 34 C.F.R. part 106.8(b)."  Equitable redress is also mandatory under Title IV and Title VI.

25.     The Title IX regulations state that a school shall implement specific and continuing steps to notify students and employees that it does not discriminate on the basis of sex and that it is required by Title IX not to discriminate in such a manner.

26.     The Title IX regulations state that, "A school shall not use or distribute a publication, which suggests by text or illustration that such school treats applicants, students or employees differently on the basis of sex." 34 C.F.R. part 106.9(b)(2).

## V.     THE DEVOS RULES

27.     The DeVos Rules by their terms are limited to sex-based harms including "dating violence, domestic violence, sexual assault, and stalking." (DeVos Rules, p. 1, 2). The DeVos Rules apply generally to all educational programs that receive federal funds.

28.     The DeVos Rules require and permit separate, different, and unequal treatment of sex-based harms, in violation of Title IX's explicit prohibition against separate and different "treatment."

29.     The DeVos Rules unlawfully rescind or subvert substantive provisions of Title IX and duly promulgated regulations. 34 C.F.R. part 106, et seq.

30.     The DeVos Rules unlawfully require or permit the use of more onerous criminal law definitions of offenses, rather than the Title IX/civil rights definition of "unwelcome" and "based on sex," in the response to and determination of sex-based harms covered by Title IX. (DeVos Rules, p. 2).

31.     The DeVos Rules do not permit or require the use of more onerous criminal law definitions of offenses for civil rights harms based on other protected class categories, such as race and national origin.

32.     The DeVos Rules unlawfully permit application of a more onerous "clear and

COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF

EXHIBIT A

convincing evidence" standard of proof in the redress of sex-based harms covered by Title IX, rather than the equitable civil rights standard of "preponderance of the evidence." (DeVos Rules, p. 5).

33.     The DeVos Rules do not permit use of a clear and convincing evidence standard for civil rights harms based on other protected class categories, such as race and national origin.

34.     The DeVos Rules in their entirety apply only to civil rights harms based on sex and do not apply to civil rights harms based on other protected categories, such as race and national origin.

35.     The DeVos Rules unlawfully require that offenders of sex-based civil rights harms receive the same rights and treatment as victims of sex-based civil rights harms. (DeVos Rules, p.5). The DeVos Rules do not require that offenders of harms based on other protected class categories, such as race and national origin, receive the same rights and treatment as victims of harms based on race and national origin.

36.     The DeVos Rules unlawfully equate civil rights harms based on sex to non-civil rights student misconduct matters.[3] (DeVos Rules, p. 7 n. 19). This equalization of civil rights harms with non-civil rights harms is not required for harms based on other protected class categories, such as race or national origin.

37.     On page 2, the DeVos Rules state that schools must comply with the Campus SaVE Act (SaVE) (also known as the Clery Amendment to the 2013 Violence Against Women Reauthorization Act) when responding to and redressing sex-based civil rights harms on campus. SaVE utilizes substantive rules and regulations that subvert and do not comply with Title IX.

38.     SaVE amended Clery, not Title IX, thus may not be used in the enforcement of Title IX if such use causes the separate, different or unequal treatment of harms based on sex.

39.     SaVE permits separate and different treatment of sex-based civil rights harms, including: permitting use of a burden of proof more onerous than preponderance; requiring fair rather than equitable redress proceedings; and requiring the use of criminal law definitions of

---

3 In support of this provision, the DeVos Rules cite *Doe v. Brandeis Univ.*, 177 F.3d 561, 607 (D. Mass. 2016). However, that case did not involve any Title IX claims.

COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBIT A**

offenses, such as "sexual assault," rather than the Title IX definition of "unwelcome" and "based on sex," to determine whether a sex-based civil rights offense occurred.

40.    The DeVos Rules are not applicable to civil rights harms based on other protected class categories, such as race and national origin.

41.    The DeVos Rules were issued on September 22, 2018 along with a Dear Colleague Letter in which the DOE rescinded its subregulatory April 2011 Dear Colleague Letter, and April 2014 "Q and A" guidance document.  The April 2014 guidance document stated that SaVE has "no effect" on Title IX.

42.    The DeVos Rules unlawfully incorporate by reference SaVE, and regulations promulgated under SaVE, even though SaVE did not amend Title IX, and at least one federal court has ruled that SaVE can have "no effect" on Title IX because it amended Clery. *Doe v. U.S. Dep't of Health and Human Services*, 85 F.Supp.3d 1, 11 (D.D.C. 2015).

43.    Application of the preponderance standard has been required under Title IX and other civil rights laws for decades.

44.    The Title IX regulatory mandate of "equitable" redress forbids application of a burden of proof more onerous than preponderance in the redress of sex-based civil rights harms.[4]

45.    Applying a more onerous burden of proof only in matters of sex-based harm would mean that if a student were physically beaten on the basis of national origin, the matter would be

---

[4] That Title IX's mandate of equitable treatment requires application of the preponderance standard was acknowledged during congressional hearings related to the enactment of the Campus SaVE Act, which was a 2013 amendment of the Clery Act. One Congressman was strikingly candid about why removing the word "equitable" from the Campus SaVE Act would allow schools to apply a more onerous burden of proof on victims of sex-based harms: "The majority bill said that college campuses must provide for 'prompt and equitable investigation and resolution' of charges of violence or stalking. This would have codified a proposed rule of the Department of Education that would have required imposition of a civil standard or preponderance of the evidence for what is essentially a criminal charge, one that, if proved, rightly should harm reputation. But if established on a barely "more probable than not" standard, reputations can be ruined unfairly and very quickly. The substitute eliminates this provision."  (Testimony of Senator Grassley, Iowa, 158 Cong Rec. S 2761, Congressional Record, Sen., 112th Congress, 2nd Session Senate, April 26, 2012; Violence Against Women Reauthorization Act of 2011, Reference: Vol. 158, No. 61).

**EXHIBIT A**

resolved under a "preponderance of the evidence" standard, and if the evidence showed the offense more likely than not occurred, the offender would suffer consequences. However, if the ***exact*** same offender committed ***exactly*** the same conduct against a female student on the basis of her sex, and ***exactly*** the same quality of evidence was presented, school officials could assess the matter under the more onerous standard of clear and convincing evidence, and the offender would suffer no consequences. Furthermore, the redress of certain claims would be subject to absurd dual assessments.  For example, if a black woman were assaulted on the basis of her race ***and*** her sex at a school that opted to apply the "clear and convincing evidence" standard in sex-based matters, that single civil rights offense would be subjected to two different burdens of proof.

46.    The DeVos Rules subject victims of sex-based harms to separate, different, and unequal treatment on the basis of sex with regard to aids, benefits, and/or services.

47.    The DeVos Rules subject victims of sex-based harms to separate, different, and unequal rules of behavior, sanctions, or other treatment.

48.    The DeVos Rules limit victims of sex-based harms in the enjoyment of their rights, privileges, advantages, and opportunities.

49.    The DeVos Rules state that schools "should" use criminal law definitions,[5] rather than the civil rights definition of "unwelcome,"[6] to determine whether sex-based civil rights harms occurred. Indeed, the word "unwelcome" appears nowhere in the DeVos Rules, but the criminal law term "sexual assault" appears *nine* times. The DeVos Rules do not state that schools should use criminal law definitions to assess other civil rights offenses, such as harms based on race or national

---

[5] The DeVos Rules cite to 34 C.F.R. § 106.8(b) as support for the use of criminal law terms to describe harms addressed on campus under Title IX grievance procedures, yet those regulations were promulgated under a 2013 amendment to the Clery Act; they were not promulgated under Title IX, and at least one federal court has already ruled that those regulations can have "no effect" on Title IX because Congress cannot lawfully amend Title IX by amending the Clery Act. *Doe v. U.S. Dept. of Health and Human Services*, 85 F. Supp. 3d 1, 11 (D.D.C. 2015).

[6] "Unwelcome" is defined as conduct the student "did not request or invite it and considered the conduct to be undesirable or offensive. The age of the student, the nature of the conduct, and other relevant factors affect whether a student was capable of welcoming the sexual conduct. A student's submission to the conduct or failure to complain does not always mean that the conduct was welcome." http://www2.ed.gov/about/offices/list/ocr/docs/ocrshpam.html.

**EXHIBIT A**

origin. The DeVos Rules thus subject victims of sex-based harms to separate, different, and unequal treatment because criminal law definitions are more onerous and more difficult to prove than the civil rights definition of "unwelcome."

50.     The DeVos Rules state that the burden of proof applied in sex-based civil rights cases should be the same as that which is applied in non-civil rights student misconduct matters (DeVos Rules, p.5, n.19) rather than civil rights matters.

51.     The DeVos Rules do not state that the burden of proof applied in other civil rights cases should be the same as that which is applied in non-civil rights student misconduct matters.

52.     The DeVos Rules allow schools to use or distribute a publication, which suggests by text or illustration that such school treats applicants, students, or employees differently on the basis of sex.

**VI.     FACTS RELATED TO THE CLASS OF INDIVIDUALS AFFECTED**

53.     One in three to one in four women are victimized by sexual assault during college.[7] Using data from 2009, this means that more than 230,000 women are victimized by sex-based civil rights harm during college because approximately 916,000 women graduated from post-secondary schools in 2009.[8] This number does not include the significant number of women who suffer other types of sex-base harm, such as dating abuse and stalking. By comparison, about 26,000 sexual assaults occur in the military each year,[9] which number includes not only rape and attempted rape but also relatively minor sexual touching not rising to the level of attempted rape.[10] Approximately

---

[7] https://www.ncjrs.gov/pdffiles1/nij/grants/221153.pdf, p.xii-xiii and 2-1 (2007); U.S. Department of Justice Office of Community Oriented Policing Services, Acquaintance Rape of College Students, March 28, 2002, http://www.cops.usdoj.gov/pdf/e03021472.pdf; https://www.ncjrs.gov/pdffiles1/nij/grants/221153.pdf; Freyd, J. Rosenthal, M. & Smith, C., Preliminary Results from the University of Oregon Sexual Violence and Institutional Behavior Campus Survey, 2014, http://dynamic.uoregon.edu/jjf/campus/UO-campus- results-30Sept14.pdf.
[8] http://www.census.gov/prod/2012pubs/p20-566.pdf.
[9] An estimated 26,000 sexual assaults occurred in all branches of the military in 2012, http://www.sapr.mil/public/docs/reports/FY12_DoD_SAPRO_Annual_Report_on_Sexual_Assault -VOLUME_ONE.pdf
[10] *Id.*

**EXHIBIT A**

1  30% of sexual assault victims in the general population file reports.[11] A similar number of military

2  victims file reports.[12] The number is much lower in college, where only 5-12% of victims file

3  reports.[13]

4       54.     Female students in the United States have endured pervasive unequal treatment,

5  harassment and violence, on the basis of sex, throughout all levels of education.[14] Women, including

6  female postsecondary students, suffer disproportionately high rates of domestic and dating

7  violence,[15] sexual assault[16] and stalking.[17]  In fact, according to some studies, a student is more

8  likely to be victimized by sexual assault if she attends college than if she does not.[18]

9

10  11  http://www.rainn.org/get-information/statistics/reporting-rates.
    12  http://www.usccr.gov/pubs/09242013_Statutory_Enforcement_Report_Sexual_Assault_

11  in_the_Military.pdf, p.8.
    13  http://www.nij.gov/publications/pages/publication-detail.aspx?ncjnumber=182369  (2001)

12  (5%); https://www.ncjrs.gov/pdffiles1/nij/grants/221153.pdf, 5-22 (2007) (12.9%).
    14  Sadker, & Zittleman, *Still Failing at Fairness, How Gender Bias Cheats Girls and Boys in*

13  *School    and    What    We    Can    Do    About    It*,    Scribner    Press    2009;

14  www.hks.harvard.edu/centers/carr/research-publications/carr-center-working-papers-series/caplan-
    and-ford-%22the-voices-of-diversity-%22.

15  [15]  Women are less likely than men to be victims of violent crimes overall, but women are 5 to 8
    times more likely than men to be victimized by an intimate partner. *Violence by Intimates:*

16  *Analysis of Data on Crimes by Current or Former Spouses, Boyfriends, and Girlfriends*, U.S.
    Department of Justice, March, 1998; violence by an intimate partner accounts for about 21% of

17  violent crime experienced by women and about 2% of the violence experienced by men.  *Id.* 92%
    of all domestic violence incidents are committed by men against women. *Violence Against Women,*

18  *Bureau of Justice Statistics*, U.S. Department of Justice, January, 1994; 84% of raped women

19  know their assailants and 57% of rapes occur on a date. Koss, M.P. (1988). *Hidden Rape:*
    *Incidence, Prevalence and descriptive Characteristics of Sexual Aggression and Victimization in a*

20  *National Sample of College Students*. In Burgess, A.W. (ed.) Sexual Assault. Vol. II. New York:
    Garland Pub.

21  [16]  Nine out of ten rape victims are female, U.S. Department of Justice, *2003 National Crime*

22  *Victimization Survey. 2003*; Women aged 16-24 are four times more likely to be raped than any other
    population group.  Koss, M.P., *id.*

23  [17]  8% of women and 2% of men in the United States have been stalked at some time in their life.

24  78% of stalking victims identified in a survey were women, and 22 percent were men.  Thus, four
    out of five stalking victims are women.  By comparison, 94 percent of the stalkers identified by

25  female victims and 60 percent of the stalkers identified by male victims were male. Overall, 87
    percent of the stalkers identified by the victims were male. National Institute of Justice 1998.

26  *Stalking in America: Findings from the National Violence Against Women Survey*).

27  18  One in four students in the United States is victimized by rape or attempted rape during college,
    *see* n.1, while one in six American women is the victim of an attempted or completed rape in her

28  COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBIT A**

55.     Because the DeVos Rules cover only severe forms of sex-based civil rights harms, a student who endures less serious sex discrimination in the form of verbal harassment will have her civil rights redressed properly under Title IX, without application of the clear and convincing evidence standard or other aspects of the DeVos Rules. This means the more serious and more violent forms of sex-based civil rights harms are less likely to be redressed compared to less serious verbal offenses.

56.     Alongside less protective standards, the DeVos Rules are silent on the need for schools to comply with civil rights laws at all. Indeed, the entire DeVos Rules mention the phrase "civil rights" only when citing the title of the "Office for Civil Rights."

57.     The DeVos Rules threaten and violate women's civil rights. Relief is necessary to protect all individuals affected or threatened by sex-based harm in education.

**VII.     <u>CLAIMS FOR RELIEF</u>**

**FIRST CLAIM FOR RELIEF**
**Administrative Procedures Act (APA)**
**(Action in Excess of Authority, 5 U.S.C. § 706(2)(C))**

58.     Plaintiffs incorporate by reference the preceding paragraphs.

59.     The APA requires this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law; contrary to constitutional right, power privilege, or immunity, or in excess of statutory jurisdiction, authority or limitations, or short of statutory right." 5 U.S.C. § 706.

60.     The DOE is an agency under the APA. 5 U.S.C. § 551(1).

61.     The DOE issued the DeVos Rules, requiring schools to violate Title IX and comply with the SaVE Act.

62.     The DeVos Rules are final agency action subject to review. 5 U.S.C.(1), (13), 704.

63.     The DOE's delegated powers are limited by 20 U.S.C. § 1682, which states that the

lifetime. National Institute of Justice & Centers for Disease Control & Prevention. *Prevalence, Incidence and Consequences of Violence Against Women Survey.* 1998.

COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBIT A**

DOE "is authorized and directed to effectuate the provisions of [Title IX]…by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of objectives of the statute…" Rules, regulations, and orders of general applicability that are inconsistent with the objectives of Title IX are beyond the jurisdiction of the DOE's authority.

64.     The APA provides a general cause of action for parties adversely affected or aggrieved by agency action for which there is no other adequate remedy in court. 5 U.S.C. § 702-704.

65.     Defendants may not act in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

66.     Title IX forbids, and Congress has not delegated to the DOE the authority to issue, rules that subject victims of sex-based civil rights harms to separate, different, and unequal treatment.

67.     Congress has not delegated to the DOE the authority to incorporate by reference the regulations promulgated under the Campus SaVE Act.

68.     Congress has not delegated to the DOE the authority to require use of criminal law definitions to assess whether a civil rights offense under Title IX has occurred.

69.     Congress has not delegated to the DOE the authority to subject only sex-based civil rights harms to an inequitable burden of proof, or a burden of proof more onerous than that which is applied in the redress of civil rights harms based on other protected class categories such as race or national origin.

70.     Congress has not delegated to the DOE the authority to require schools to provide to offenders of sex-based civil rights harms the same legal protections as are afforded victims of sex-based civil rights harms.

71.     Congress, and thus the DOE, lack general authority to regulate violence against women. *U.S. v. Morrison*, 529 U.S. 598 (2000).

72.     The DeVos Rules exceed Defendants' authority under the Spending Clause. *N'tl*

**EXHIBIT A**

1     *Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012).

2

**SECOND CLAIM FOR RELIEF**
**Administrative Procedures Act**

3

**(Failure to Adhere to Procedures Required by Law when Promulgating Regulations)**

4

5        73.     Plaintiffs incorporate by reference the preceding paragraphs.

6        74.     Under the APA, a reviewing court shall "hold unlawful and set aside agency action,

7   findings, and conclusions found to be without observance of procedure required by law." 5 U.S.C.

8   § 706(2)(D).

9        75.     The APA requires an agency to give "(g)eneral notice of proposed rule making" and

10   provide "interested persons an opportunity to participate in the rule making through submission of

11   written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. §

12   553(b), (c).

13        76.     Defendants must involve the public in the development of proposed regulations and

14   to "submit such regulations to a negotiated rulemaking process."

15        77.     Defendants promulgated the DeVos Rules without adhering to the procedural

16   requirements of 5 U.S.C. § 553 (b), (c) and 20 U.S.C. § 1098a.

17        78.     The DeVos Rules should therefore be vacated and set aside.

18

19

**THIRD CLAIM FOR RELIEF**
**Administrative Procedures Act**

20

**(Actions Not in Accordance with Law)**

21

22        79.     Plaintiffs incorporate by reference the preceding paragraphs.

23        80.     Under the APA, a reviewing court shall "hold unlawful and set aside agency action,

24   findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not

25   in accordance with law." 5 U.S.C. § 706(2)(A).

26        81.     An agency action is "arbitrary and capricious if the agency has relied on factors

27

28

**EXHIBIT A**

which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or product of agency expertise." *Motor Veh. Mfrs. Ass'n v. State Farm Ins.*, 463 U.S. 29, 43 (1983).

82.    The DeVos Rules give no explanation or justification for subjecting only sex-based civil rights harms to separate, different, and worse treatment.

83.    The DeVos Rules failed to consider important aspects of the Title IX regulations that explicitly forbid separate, different, and unequal different treatment based on sex. These critically important aspects of Title IX are nowhere mentioned in the DeVos Rules.

84.    The DeVos Rules failed to consider that under Title IX, sex-based harms must be defined using the civil rights definition of "unwelcome," rather than criminal law definitions, such as "sexual assault." That this important aspect of Title IX was not considered is obvious because the word "unwelcome" appears nowhere in the DeVos Rules.

85.    The DeVos Rules failed to consider that Title IX is coextensive with and must be treated the same as Title IV and Title VI of the Civil Rights Act of 1964.

86.    The DeVos Rules are unlawful, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

87.    The DeVos Rules require schools to comply with SaVE. SaVE utilizes substantive rules and regulations that subvert and do not comply with Title IX. SaVE utilizes criminal law definitions, such as "sexual assault," rather than the civil rights definition of "unwelcome" and "based on sex," to determine whether a sex-based civil rights offense occurred. SaVE permits schools to use a burden of proof more onerous than preponderance of the evidence and separates out only sex-based civil rights harms for different and unequal treatment and does not apply to other protected class categories such as race and national origin.

88.    The DeVos Rules were issued without apparent approval by the President of the United States as required by Title IX, 20 U.S.C. § 1682.

COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBIT A**

89.     The DeVos Rules are not supported by Title IX's text, implementing regulations, or legislative history.

90.     The DeVos Rules should therefore be vacated and set aside.

**FOURTH CLAIM FOR RELIEF**
**Administrative Procedures Act**
**(Actions Contrary to Constitutional Right, Power, Privilege, or Immunity)**

91.     Plaintiffs incorporate by reference the preceding paragraphs.

92.     The DeVos Rules are contrary to constitutional right, power, privilege, or immunity because women are entitled to treatment that is equal, not different, and not separate.

93.     The DeVos Rules should therefore be vacated and set aside.

**FIFTH CLAIM FOR RELIEF**
**Administrative Procedures Act**
**(Actions Unwarranted by the Facts)**

94.     Plaintiffs incorporate by reference the preceding paragraphs.

95.     Under the APA, actions are prohibited when unwarranted by the facts and lacking a satisfactory explanation for the actions including a rational connection between the facts found and the choice made.

96.     The DeVos Rules are not supported by facts, satisfactory explanation, or rational connection between the choices made and actions taken, nor could they as no facts could justify subjecting sex-based harms to separate and different treatment in order to comply with a law that prohibits separate and different treatment of sex-based harms.

97.     The DeVos Rules should therefore be vacated and set aside.

/ / /

/ / /

/ / /

**EXHIBIT A**

**SIXTH CLAIM FOR RELIEF**
**Title IX**

98.     Plaintiffs incorporate by reference the preceding paragraphs.

99.     Title IX prohibits discrimination on the basis of sex, "under any program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a).

100.    The DOE is a program or activity receiving federal financial assistance.

101.    Title IX has been given the broadest possible effect to ensure maximum protection against sex discrimination, including sex-based harm, in education.

102.    The DeVos Rules are discriminatory based on sex.

103.    The DeVos Rules unlawfully subject sex-based harms to separate, different and unequal treatment.

104.    The DeVos Rules harm the rights of women and all persons protected by Title IX.

105.    The DeVos Rules are facially discriminatory and will cause discriminatory effects by facilitating or encouraging discrimination by funding recipients.

106.    A facially discriminatory policy creates a hostile environment in educational opportunities, benefits, programs, and activities for all individuals protected by Title IX.

107.    Defendants have the ability to remedy the DeVos Rules.

**SEVENTH CLAIM FOR RELIEF**
**Tenth Amendment**

108.    Plaintiffs incorporate by reference the preceding paragraphs.

109.    The Tenth Amendment to the United States Constitution expressly reserves to the states all powers except those limited powers granted to the federal government.

110.    The Tenth Amendment ensures the division of powers between the states and federal government that is necessary for the dual sovereignty of the federal system.

111.    The Tenth Amendment reserves to the states the authority to regulate violence against women.

**EXHIBIT A**

112.   Congress and the DOE lack authority to regulate violence against women, *U.S. v. Morrison*, 529 U.S. 598 (2000), except under the limited authority of the Spending Clause.

113.   The DeVos Rules violate the Tenth Amendment, exceed Congress's Article I powers, and run afoul of the Constitution's principles of federalism by creating an extensive scheme that interferes with and undermines the sovereign authority of the states to regulate violence against women.

114.   The DeVos Rules unconstitutionally require the states to act as agents of the federal government's regulatory scheme, and require the states to facilitate the implementation of a discriminatory federal policy.

**NINTH CLAIM FOR RELIEF**
**Spending Clause**

115.   Plaintiffs incorporate by reference the preceding paragraphs.

116.   Article 1, § 8 of the United States Constitution limits the power of Congress to attach conditions to the receipt of federal funds, including that the conditions must pertain to a federal interest, may not intrude excessively into the power of the states or unlawfully coerce funding recipients, and may not require funding recipients to engage in activities that are discriminatory or unconstitutional.

117.   The purpose of Title IX is to ensure that women and sex-based harms are not subjected to separate or different treatment.

118.   There is no justification for the separate and different treatment of women and harms based on sex.

119.   The DeVos Rules intrude excessively into the authority of the states, and unlawfully coerce funding recipients by forcing them to violate the law by treating sex-based harms separately, differently, and unequally, as a condition of receiving federal funds.

///

///

COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBIT A**

**TENTH CLAIM FOR RELIEF**
**Declaratory Judgment**

120.    Plaintiffs incorporate by reference the preceding paragraphs.

121.    There is an actual controversy of sufficient immediacy and concreteness relating to legal rights and duties of the states and the proper legal relationship between the states and the Defendants to warrant relief under 28 U.S.C. § 2201.

122.    The harm to Plaintiffs as a direct result of the DeVos Rules is sufficiently real and/or imminent to warrant the issuance of a declaratory judgment clarifying the legal relationship of the parties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A.    Enter an order vacating and setting aside the DeVos Rules in their entirety;

B.    Enter an order enjoining Defendants from requiring or permitting entities covered by Title IX to abide by the DeVos Rules;

C.    Enter an order vacating and setting aside so much of the DeVos Rules as violate state or federal law;

D.    Enter an order declaring that Defendants have violated the APA;

E.    Enter an order declaring all or parts of the DeVos Rules unlawful;

F.    Enter an order declaring all or parts of the DeVos Rules discriminatory;

G.    Enter a restraining order and permanent injunction;

H.    Enter a nationwide injunction;

I.    Award Plaintiffs their reasonable costs and attorneys' fees;

J.    Grant such further and additional relief as this Court may deem just and proper.

**EXHIBIT A**

DATED:  August _____, 2018          NEW ENGLAND LAW

                                    By:  _____
                                          Wendy Murphy
                                          Attorneys for The Women's and Children's
                                          Advocacy Project, Equal Means Equal, National
                                          Coalition Against Violent Athletes,  Allies
                                          Reaching for Equality, Women Matter, We Are
                                          Woman and SAFE Campuses, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBIT A**