Jennifer A. Reisch (CA Bar No. 223671)
**Equal Rights Advocates**
1170 Market Street, Suite 700
San Francisco, CA 94102
Ph: (415) 621-0672
Fax: (415) 621-6744
Email: jreisch@equalrights.org

Javier M. Guzman*
Robin F. Thurston*
Karianne Jones*
**Democracy Forward Foundation**
1333 H St. NW
Washington, DC 20005
Ph: (202) 448-9090
Fax: (202) 701-1775
Emails: jguzman@democracyforward.org, rthurston@democracyforward.org,
kjones@democracyforward.org

Leecia Welch (CA Bar No. 208741)
Alice Y. Abrokwa*
**National Center for Youth Law**
405 14th Street, 15th Floor
Oakland, CA 94612, and
1313 L Street, NW, Suite 130
Washington, DC 20005
Ph: (510) 835-8098
Fax: (510) 835-8099
Emails: lwelch@youthlaw.org, aabrokwa@youthlaw.org

Emily Martin*
Neena Chaudhry*
Sunu Chandy*
**National Women's Law Center**
11 Dupont Circle, NW, Suite 800
Washington, DC 20036
Ph: (202) 588-5180
Fax: (202) 588-5185
Emails: emartin@nwlc.org, nchaudhry@nwlc.org, schandy@nwlc.org

*admitted pro hac vice

Counsel for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SURVJUSTICE, INC., et al., ) | Case Number: 3:18-cv-00535-JSC |
| Plaintiffs, ) | PLAINTIFFS' OPPOSITION TO MOTION |
| v. ) | FOR LEAVE TO INTERVENE AS PLAINTIFFS |
| ELISABETH D. DEVOS, in her official capacity as Secretary of Education, et al, ) | HEARING NOTICED: October 17, 2018, at 9:00 a.m. |
| Defendants. ) | DEMAND FOR JURY TRIAL |

Plaintiffs, SurvJustice, Inc., Equal Rights Advocates, and Victim Rights Law Center, hereby oppose the Motion for Leave to Intervene as Plaintiffs and Proposed Complaint in Intervention, Dkt. No. 71 ("Intervention Motion"), submitted by Women's and Children's Advocacy Project, Equal Means Equal, National Coalition Against Violent Athletes, Allies Reaching for Equality, Women Matter, We Are Woman, and SAFE Campuses, LLC (collectively "Applicants").

Plaintiffs and Applicants share the same ultimate objective: to vacate as unlawful the U.S. Department of Education policy documents issued by Defendants in 2017 regarding the obligations of schools that receive federal funds under Title IX of the Education Amendments Act of 1972 ("Title IX") to prevent and redress sexual harassment, including sexual violence (the "2017 Title IX Policy"). Although our goals align in this manner, Applicants and Plaintiffs disagree on the best legal claims to pursue in challenging this Policy. Whether Plaintiffs win or lose, Applicants are free to bring their own lawsuit raising their preferred legal claims. Indeed, the lead Applicant (represented by the same counsel) has already filed such litigation in the District of Massachusetts. Ultimately, permitting Applicants to intervene at this time—nine months after the Complaint was filed and after two rounds of briefing and oral argument—would

1    prejudice Plaintiffs because it would introduce new parties and new claims, delaying a

2    disposition of Defendants' Motion to Dismiss.

3        **I.    Background.**

4            Plaintiffs filed this lawsuit on January 25, 2018.  They filed an Amended Complaint on

5    February 21, 2018.  Through this litigation, Plaintiffs allege that the 2017 Title IX Policy issued

6    by Defendants on September 22, 2017 is unlawful.[1]  Through this litigation, Plaintiffs seek to

7    vacate the 2017 Title IX Policy and have asserted three claims as the basis for such relief: (1) a

8    violation of the Administrative Procedure Act, (2) ultra vires action, and (3) a violation of the

9    Equal Protection Guarantee of the Fifth Amendment.

10           Defendants moved to dismiss the Amended Complaint on May 2, 2018, under both

11   Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Defs.' Mot. to Dismiss, Dkt. No.

12   40.  Following oral argument on July 19, 2018, at the Court's direction, both parties submitted

13   supplemental briefing regarding whether the challenged policy is final agency action.  *See* Dkt.

14   Nos. 64, 68, 70.  As of August 30, 2018, the Defendants' Motion to Dismiss is ripe for decision.

15           Many of the Applicants filed a motion to file an *amicus curiae* brief in advance of the

16   hearing on the motion to dismiss.  *See* Dkt. No. 46.  Neither Plaintiffs nor Defendants opposed

17   this motion and the Court granted it on June 29, 2018.  *See* Order, Dkt. No. 57.

18           One of the Applicants, Equal Means Equal, filed a separate lawsuit against two of the

19   three defendants named in this case in the District of Massachusetts on October 19, 2017,

20   challenging the 2017 Title IX Policy under different theories of illegality than are being pursued

21   by Plaintiffs in the present matter.  *See Equal Means Equal v. Dep't of Educ.*, No. 17-cv-12043-

22   MLW (D. Mass.).  Another of the Applicants, the National Coalition Against Violent Athletes,

23   sought leave on May 17, 2018, to join that complaint as a plaintiff.  *See id.,* Proposed Am.

24   Compl., Dkt. No. 13-1.  While that case was filed earlier than the matter before this Court, it has

---

26   [1] *See* U.S. Dep't of Educ., Ltr. from Ass't Sec'y Candice Jackson (Sept. 22, 2017),
27   https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf ("2017 Dear
     Colleague Letter"); U.S. Dep't of Educ., Q&A on Campus Sexual Misconduct (Sept. 22, 2017),
28   https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf ("2017 Q&A").

not proceeded as quickly.  The parties currently appear to be disputing a motion by the Equal Means Equal plaintiffs to amend their complaint and the length of a brief opposing the motion to dismiss.  *See id.*, Dkt. Nos. 13, 20, 21.  While the government has filed a motion to dismiss in the District of Massachusetts action, it has not been fully briefed.  There has been no activity on the docket since June 8, 2018.

Applicants now seek to intervene[2] in this matter to advance the theories regarding the illegality of the 2017 Title IX Policy that the Equal Means Equal plaintiffs are pursuing in the Massachusetts case.  Both Applicants and Plaintiffs seek the same relief — vacatur of the policy.

**II.   Legal Standard.**

Federal Rule of Civil Procedure 24 governs motions for intervention.

"An applicant for intervention as of right under Rule 24(a)(2) must establish four elements: (1) that the prospective intervenor's motion is timely; (2) that the would-be intervenor has a significantly protectable interest relating to the subject of the action, (3) that the intervenor is so situated that the disposition of the action may as a practical matter impair or impede the intervenor's ability to protect that interest; and (4) that such interest is inadequately represented by the parties to the action."  *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (alterations adopted) (citation omitted).  The applicant bears the burden of establishing these elements.  *Id.*

"[A] court may grant permissive intervention [under Rule 24(b)] where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (citation omitted).  "As with motions for intervention as of right, a finding of untimeliness defeats a motion for permissive intervention."  *Id.* (citation omitted).

**III.   Argument.**

---

[2] Applicants did not seek Plaintiffs' consent on their motion to intervene, nor on their prior motion to participate as *amicus curiae*.

1    Applicants have not met the standard for intervention either as of right or permissively.

2  First, the Motion is not timely.[3]  Applicants have been aware of this action and the legal theories

3  advanced by Plaintiffs since this matter was filed nearly nine months ago.  Permitting

4  intervention now, when the case may soon proceed past threshold pleading issues to the merits,

5  would likely cause delay and thereby prejudice Plaintiffs' ability to obtain prompt relief. Second,

6  disposition of this matter will not impair their interests, in part because they are (or could easily

7  be) advancing those interests in an alternate forum. Finally, Applicants' interests are adequately

8  represented because they share the same ultimate interest—vacating the 2017 Title IX Policy—

9  with Plaintiffs.

10    **A.  Applicants do not meet the standard for intervention as of right.**

11      **1.  Intervention is untimely.**

12    The Motion should be denied because Applicants have been aware of Plaintiffs' legal

13  theories since Plaintiffs filed this matter nearly nine months ago.  Permitting intervention now in

14  order to add additional legal theories, when threshold issues in the existing litigation are fully

15  briefed and pending resolution, would unnecessarily delay the case and thereby prejudice the

16  existing parties as the 2017 Title IX Policy remains in place, continuing to harm students and

17  Plaintiffs.

18    "Timeliness is determined by the totality of the circumstances facing would-be

19  intervenors, with a focus on three primary factors: (1) the stage of the proceeding at which an

20  applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length

21  of the delay." *L.A. Unified Sch. Dist*., 830 F.3d at 854 (citation omitted).  "In analyzing these

22  factors, however, courts should bear in mind that the crucial date for assessing the timeliness of a

23  motion to intervene is when proposed intervenors should have been aware that their interests

24  would not be adequately protected by the existing parties." *Id*. (citation omitted).

25    Applicants have waited too long to claim a right to intervene now.  Applicants' counsel

26

27  ───────────────────

[3] Plaintiffs do not dispute the second element of intervention as of right — that Applicants have a
28  significant protectable interest relating to the subject of this action.

(who was at all relevant times also counsel in the Massachusetts case for the lead Applicant in this case) has been aware of Plaintiffs' legal theories since Plaintiffs filed their complaint.  On January 28, 2018, days after the case was initiated, she tweeted disagreement with the arguments made in the complaint that are consistent with the legal arguments Applicants now seek to inject into this litigation.[4]  Applicant Equal Means Equal retweeted this assertion by Applicants' counsel on the same day.[5]  Applicants provide no justification for their nine-month delay, and that length of time alone requires denial of their motion to intervene.  *League of United Latin Am. Citizens*, 131 F.3d at 1304 ("any substantial lapse of time weighs heavily against intervention." (citation omitted)).

Further, Applicants as a group have been aware of Plaintiffs' legal theories at least since they filed their motion to participate as *amicus curiae* three months ago.  *See* Dkt. No. 46.  Applicants' attempt to justify the decision to seek to participate as an *amicus* rather than as an intervenor—that they hoped Plaintiffs would amend their complaint to pursue the legal arguments advanced in the *amicus* brief—is unpersuasive.  *See* Intervention Motion at 3.  Plaintiffs have taken no action that would suggest they would do so.  Applicants' alternate argument, that they anticipated Plaintiffs would assert Applicants' legal theories in the 10-page supplemental briefing on the Motion to Dismiss, is similarly unpersuasive.  As discussed at the July 19 hearing, that briefing was directed to the discrete legal question of whether final agency action had occurred.  Hearing Transcript at 84-85.  This briefing could not therefore have been used to introduce new theories of liability or causes of action, nor was there any suggestion at oral argument that Plaintiffs would address the legal theories advanced by Applicants in their *amicus* filing in Plaintiffs' supplemental filing.  *See id*.

Rather than wait and see whether Plaintiffs would adopt their reasoning, Applicants had a "duty to act as soon as [they] 'know[ ] or ha[ve] reason to know that [their] interests might be

---

[4] Wendy Murphy (@WMurphyLaw), Twitter, https://twitter.com/WMurphyLaw/status/957714797981765632 (Jan. 28, 2017).
[5] Equal Means Equal (@EqualMeansEqual), Twitter, https://twitter.com/EqualMeansEqual/status/957715729142419456 (Jan. 28, 2017).

adversely affected by the outcome of the litigation.'" *GemCap Lending I, LLC v. Taylor*, 677 F. App'x 351, 352 (9th Cir. 2017) (citing *United States v. Oregon*, 913 F.2d 576, 589) ("A party seeking to intervene must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation."). As explained below, *see infra* Sections III.A.2, 3, this matter will not negatively impact Applicants' interests; however, knowing that the lawsuit *potentially* affected their interests, Applicants were not "permitted to wait on the sidelines hoping that another party or the court would step up to the plate for [them]." *GemCap Lending I, LLC*, 677 F. App'x at 352 (citing *Oregon*, 913 F.2d at 589); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1916, 539-40 (3d ed. 2007) ("When the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention.").

Having delayed nine months, Applicants now seek to inject several new legal theories into the litigation—including a procedural APA claim that the 2017 Title IX Policy required notice and comment rulemaking (a claim not pursued by Plaintiffs),[6] claims based on different interpretations of Title IX, the Campus SaVE Act, the Tenth Amendment, and the Spending Clause. *See generally* Intervention Motion.  This would prejudice Plaintiffs.  As it has done in the District of Massachusetts action, the government is likely to move to dismiss these claims pursuant to Rule 12, requiring an additional round of briefing on threshold issues.  Unless the Court were to bifurcate the litigation—permitting Plaintiffs' claims to proceed through Administrative Record review and potentially discovery while Applicants' claims are briefed on the threshold fact-intensive issue of standing and legal issues about stating a claim on which relief can be granted—the timeframe for reaching resolution of this litigation would likely be significantly delayed if intervention were granted.  This would delay Plaintiffs' hoped for vacatur of the 2017 Title IX Policy, and thereby delay relief from its ongoing harm to students and

---

[6] The government previously moved to dismiss what it perceived as a claim by Plaintiffs that the 2017 Title IX Policy should have been subject to notice and comment rulemaking. *See* Mot. to Dismiss at 19-20.  After Plaintiffs clarified that they were not pursuing this theory, the issue has dropped from this action.

Plaintiffs.  *See Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) (where applicants for intervention sought to "inject new issues and matters" beyond the scope of existing claims and defenses, "thus expanding the scope of litigation and causing delay" in the district court's conclusion that intervention would prejudice existing parties was "a sound one").

### 2.   Disposition of this litigation will not impair applicants' abilities to protect their interests.

Disposition of the litigation will not impair Applicants' interest in vacating the 2017 Title IX Policy.  Whether resolution of an action will "impair or impede [a proposed intervenor's] ability to safeguard their protectable interest is considered as a practical matter." *L.A. Unified Sch. Dist.*, 830 F.3d at 862.  However, intervention is typically improper where intervenors have an "alternative forum where they can mount a robust defense." *Cali. ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006); *see also Nooksack Indian Tribe v. Zinke*, 321 F.R.D. 377, 381 (W.D. Wash. 2017).

Should Plaintiffs succeed in this litigation, the Policy will be vacated, to the benefit of both Plaintiffs and Applicants.  While Applicants assert that "even if the Court rules in Plaintiffs' favor, the ruling will not require the fully equal treatment of women," Intervention Motion at 15, the *actual relief* sought by both the Applicants and Plaintiffs is vacatur of the 2017 Title IX Policy.  *See id.* at 21.  Although Applicants advance alternate theories of illegality, the scope of the litigation, even under Applicants' view, is limited to whether the 2017 Title IX Policy remains in place.  *United States v. City of L.A.*, 288 F.3d 391, 402–03 (9th Cir. 2002) (where applicant shares "same objective" with existing party but differs in strategy, intervention as a matter of right is not justified). Furthermore, even if Plaintiffs prevail in this Court on a ground disfavored by Applicants, that would not preclude Applicants from raising all their claims of illegality in an alternative forum and, if successful, seeking their own injunctive and declaratory relief tailored to their preferences.

Likewise, if Plaintiffs do not succeed, Applicants will still have the opportunity to assert their alternate theories regarding the Policy's illegality in the existing litigation two of them currently are pursuing in the District of Massachusetts.  This is not a class action.  No decision

Plaintiffs' Opposition to Motion to Intervene; Case No.: 3:18-cv-00535-JSC        Page: 8

by this Court would be binding on Applicants in that, or any other, forum.  Where an applicant for intervention may protect its interests in an alternate forum, courts typically determine that intervention is not required.  *Lockyer*, 450 F.3d at 442; *United States v. Alisal Water Corp.,* 370 F.3d 915 (9th Cir. 2004) (separate district court process for approving claims against debtor sufficient to protect proposed intervenor/creditor interest); *City of L.A.,* 288 F.3d 391 (possibility of individual suits against police officers sufficient to protect interests of community groups seeking to protect members from unconstitutional police practices); *Shea v. Angulo,* 19 F.3d 343, 347 (7th Cir. 1994) (concluding that no impairment was shown where proposed intervenor could bring suit to recover his interest); *Greene v. United States*, 996 F.2d 973, 977–78 (9th Cir. 1993); *Commodity Futures Trading Comm'n ("CFTC") v. Heritage Capital Advisory Servs.,* 736 F.2d 384, 387 (no impairment where claim could be brought "in a forum other than the main CFTC enforcement action."); *Zicherman v. Korean Airlines Inc.,* 146 F.R.D. 61, 63 (S.D.N.Y. 1992) (intervention as of right denied where applicant could have asserted claims in applicants' own existing litigation).  The Court should reach the same conclusion here.

### 3.  Applicants' interests are adequately represented in this action.

As set forth above, both Plaintiffs and Applicants seek to have the 2017 Title IX Policy vacated.  This shared ultimate objective weighs against granting intervention as of right, because it makes it apparent that Applicants' interests are adequately represented in this action.  Under well-settled precedent in this circuit, "[w]hen an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) (citation omitted).  Mere differences in strategy or a rooting interest in having a particular legal theory vindicated do not change this presumption. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996).

Applicants do not explain what ultimate objective they seek that is not shared by Plaintiffs, but instead focus on the difference in each groups' respective legal theories as to why the 2017 Title IX Policy is unlawful.  While Applicants may prefer to advance different or

additional legal theories, the actual relief they seek—indeed the scope of the case—is vacatur of the 2017 Title IX Policy.  Applicants and Plaintiffs share this ultimate objective.  Applicants have made no showing that Plaintiffs will not zealously pursue this objective.  The Motion therefore should be denied.

### B.  Applicants also should not be granted permissive intervention.

"[A] court may grant permissive intervention [under Rule 24(b)] where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *League of United Latin Am. Citizens*, 131 F.3d at 1308 (citation omitted).  "As with motions for intervention as of right, a finding of untimeliness defeats a motion for permissive intervention." *Id*. (citation omitted). Indeed, the untimeliness of Applicants' Motion weighs even more heavily against granting their motion for permissive intervention.  The Ninth Circuit has said, "[i]n the context of permissive intervention, however, we analyze the timeliness element more strictly than we do with intervention as of right." *Id*.  As explained above, Applicants' Motion is untimely, and therefore should be denied.[7]

### IV. CONCLUSION.

Plaintiffs respectfully request that the Motion for Leave to Intervene be denied.[8]

---

[7] Plaintiffs take no position on whether Applicants meet the other elements of permissive intervention.

[8] It does not appear that Applicants have sought leave to file their Supplemental *Amicus Curiae* Brief. *See* Dkt. No. 72.  To the extent they intended their Motion for Leave to Intervene to encompass such a request, Plaintiffs take no position.

Respectfully submitted,                              Date: September 14, 2018


/s/ Robin F. Thurston
Alice Y. Abrokwa*
Leecia Welch (CA Bar No. 208741)
**National Center for Youth Law**
405 14th Street, 15th Floor
Oakland, CA 94612, and
1313 L Street, NW, Suite 130
Washington, DC 20005
Ph: (510) 835-8098
Fax: (510) 835-8099
Emails: lwelch@youthlaw.org, aabrokwa@youthlaw.org

Jennifer A. Reisch (CA Bar No. 223671)
**Equal Rights Advocates**
1170 Market Street, Suite 700
San Francisco, CA 94102
Ph: (415) 621-0672
Fax: (415) 621-6744
Email: jreisch@equalrights.org

Javier M. Guzman*
Robin F. Thurston*
Karianne Jones*
**Democracy Forward Foundation**
1333 H St. NW
Washington, DC 20005
Ph: (202) 448-9090
Fax: (202) 701-1775
Emails: jguzman@democracyforward.org, rthurston@democracyforward.org,
kjones@democracyforward.org

Emily Martin*
Neena Chaudhry*
Sunu Chandy*
**National Women's Law Center**
11 Dupont Circle, NW, Suite 800
Washington, DC 20036
Ph: (202) 588-5180
Fax: (202) 588-5185
Emails: emartin@nwlc.org, nchaudhry@nwlc.org, etang@nwlc.org, schandy@nwlc.org

*admitted pro hac vice
Counsel for Plaintiffs