JOSEPH H. HUNT
Assistant Attorney General

ALEX G. TSE
Acting United States Attorney

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division

STEVEN A. MYERS (NY Bar # 4823043)
BENJAMIN T. TAKEMOTO (CA Bar # 308075)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Rm. 7334
Washington, DC 20530
Tel: (202) 305-8648
Fax: (202) 616-8460
E-mail: steven.a.myers@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| SURVJUSTICE, INC., EQUAL RIGHTS ADVOCATES, and VICTIM RIGHTS LAW CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>ELISABETH D. DEVOS, in her official capacity as Secretary of Education, KENNETH L. MARCUS, in his official capacity as Assistant Secretary for Civil Rights, and U.S. DEPARTMENT OF EDUCATION,<br><br>Defendants. | Case No. 18-cv-0535-JSC<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE**<br><br>Magistrate Judge: Jacqueline Scott Corley<br>Hearing: October 17, 2018, 9:00 a.m.<br>Phillip Burton Federal Building & United States Courthouse, Courtroom F, 15th Floor,<br>450 Golden Gate Ave., San Francisco, CA 94102 |

## <u>TABLE OF CONTENTS</u>

I.    **INTRODUCTION**..........................................................................................................1

II.   **BACKGROUND** .........................................................................................................2

    A.    The *Equal Means Equal* Litigation in the District of Massachusetts ..................2

    B.    The *SurvJustice* Litigation in this Court .............................................................2

III.  **ARGUMENT**...............................................................................................................3

    A.    Equal Means Equal and NCAVA Cannot Intervene Because Simultaneous
        Prosecution of the Same Claim in Two Courts Violates the Rule against
        Claim Splitting. ...................................................................................................3

    B.    The Motion to Intervene Was Not Timely Filed, Barring Intervention under
        Rules 24(a) and (b)..............................................................................................4

    C.    Intervention of Right under Rule 24(a) Is Unavailable Because the Movants
        Have No Protectable Interest in This Case, and Because Denying Intervention
        Would Not Preclude the Movants From Protecting Any Such Interests. ............7

    D.    The Court Should Deny Permissive Intervention under Rule 24(b).................11

IV.  **CONCLUSION** ........................................................................................................11

1

## <u>TABLE OF AUTHORITIES</u>

2

## <u>CASES</u>

3

*Adams v. Cal. Dep't of Health Servs.*,
  487 F.3d 684 (9th Cir. 2007) ...................................................................... 3, 4

4

*Airline Serv. Providers Ass'n v. L.A. World Airports*,
  873 F.3d 1074 (9th Cir. 2017) ...................................................................... 10

5

6

*Allen v. McCurry*,
  449 U.S. 90 (1980).......................................................................................... 3

7

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) ........................................................................ 7

8

9

*Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects*,
  309 F.3d 1113 (9th Cir. 2002) ........................................................................ 5

10

*California ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ........................................................................ 10

11

12

*Chamness v. Bowen*,
  722 F.3d 1100 (9th Cir. 2013) ........................................................................ 5

13

*Clements v. Airport Auth. of Washoe Cty.*,
  69 F.3d 321 (9th Cir. 1995) ............................................................................ 4

14

15

*Colony Ins. Co. v. Schwartz*,
  No. 13-243, 2013 WL 5308254 ...................................................................... 4

16

*Correll v. United States*,
  No. 07-460, 2007 WL 4209424 (W.D. Wash. Nov. 26, 2007)........................ 11

17

18

*Davis v. Sun Oil Co.*,
  148 F.3d 606 (6th Cir. 1998) .......................................................................... 3

19

*Diamond v. Corizon Health, Inc.*,
  No. 16-cv-03534-JSC, 2016 WL 7034036 (N.D. Cal Dec. 2, 2016)............... 10

20

21

*Dilks v. Aloha Airlines*,
  642 F.2d 1155 (9th Cir. 1981) ........................................................................ 8

22

*Fair Hous. of Marin v. Combs*,
  285 F.3d 899 (9th Cir. 2002) .......................................................................... 8

23

24

*Finjan, Inc. v. Blue Coat Sys., LLC*,
  230 F. Supp. 3d 1097 (N.D. Cal. 2017) .......................................................... 4

25

*Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*,
  296 F.3d 982 (10th Cir. 2002) .................................................................... 3, 4

26

27

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
  624 F.3d 1083 (9th Cir. 2010) ........................................................................ 8

28

*SurvJustice, Inc. v. DeVos*, No. 18-cv-0535-JSC, Defendants' Mem. in Opp. to Mot. to Intervene
ii

*League of United Latin Am. Citizens v. Wilson,*
    131 F.3d 1297 (9th Cir. 1997) ..................................................................... 1, 6

*Legal Aid Soc'y of Haw. v. Legal Servs. Corp.,*
    145 F.3d 1017 (9th Cir. 1998) .......................................................................... 10

*NASD Dispute Resolution, Inc. v. Judicial Council of State of Cal.,*
    488 F.3d 1065 (9th Cir. 2007) .......................................................................... 11

*Powers v. Ohio,*
    499 U.S. 400 (1991) .......................................................................................... 10

*Raines v. Seattle Sch. Dist. No. 1,*
    No. C09-203Z, 2009 WL 3444865 (W.D. Wash. Oct. 23, 2009) ....................... 11

*Ready Transp., Inc. v. AAR Mfg., Inc.,*
    627 F.3d 402 (9th Cir. 2010) ............................................................................ 11

*Saldano v. Roach,*
    363 F.3d 545 (5th Cir. 2004) .............................................................................. 8

*Sierra Club v. Morton,*
    405 U.S. 727 (1972) ............................................................................................ 8

*Smith v. Marsh,*
    194 F.3d 1045 (9th Cir. 1999) ........................................................................ 5, 6

*Spangler v. Pasadena City Bd. of Educ.,*
    552 F.2d 1326 (9th Cir. 1977) .......................................................................... 11

*Taylor v. Sturgell,*
    553 U.S. 880 (2008) ............................................................................................ 3

*Town of Chester v. Laroe Estates, Inc.,*
    137 S. Ct. 1645 (2017) ................................................................................ 8, 11

*United States v. Alisal Water Corp.,*
    370 F.3d 915 (9th Cir. 2004) ...................................................................... 4, 5, 6

*United States v. Oregon,*
    913 F.2d 576 (9th Cir. 1990) .......................................................................... 1, 4

*United States v. Washington,*
    86 F.3d 1499 (9th Cir. 1996) .............................................................................. 1

**RULES**

Fed. R. Civ. P. 15 .......................................................................................................... 6

Fed. R. Civ. P. 24 .................................................................................... 1, 2, 4, 7, 11

## I.      INTRODUCTION

This case, which was filed in January 2018, challenges guidance issued by the Department of Education ("ED") in September 2017 (the "2017 Guidance" or "Guidance"). Now, nearly a year after the challenged Guidance was issued, nearly eight months after this case was filed, and nearly two and a half months after they first asked to participate in this case as amici, a coalition of advocacy groups ("the movants") has sought to intervene as Plaintiffs. *See* ECF No. 71 ("Mot.").

The Court should deny the motion for numerous, independent reasons. At the outset, two of the movants—Equal Means Equal and the National Coalition Against Violent Athletes ("NCAVA")—are seeking identical relief against the same Defendants in the District of Massachusetts. *See Equal Means Equal v. ED*, No. 1:17-cv-12043-MLW (D. Mass.) (filed October 19, 2017). It is axiomatic that under the rule against claim splitting, a party cannot simultaneously prosecute the same legal claim in two different courts. For that reason alone, the Court should not permit Equal Means Equal and NCAVA to intervene here.

The motion should be denied on other grounds as well. Whether a party seeks intervention of right or permissive intervention, the motion must be timely filed. *See* Fed. R. Civ. P. 24(a), (b)(1); *see also League of United Latin Am. Citizens* ("*LULAC*") *v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) ("Timeliness is 'the threshold requirement' for intervention[, and] . . . if we find 'that the motion to intervene was not timely, [we] need not reach any of the remaining elements of Rule 24.'" (quoting *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990); *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996))). But even though the movants have been on notice of their supposed interest in this case since they moved to participate as amici in June 2018—and even though two of the movants have been challenging the exact same Guidance at issue here in the District of Massachusetts since October 2017— the movants inexplicably waited until the end of August 2018 to seek intervention. Granting the movants' untimely motion would delay the resolution of this action and thereby prejudice the parties.

Even if the intervention motion had been timely filed—which it was not—it should nevertheless be denied. The movants have no personal interest in this case: they seek to litigate not on their own behalf, but on behalf of women "as a class." *See, e.g.*, Mot. at 1, 3, 4, 8, 9, 13, 15. Because the movants identify no doctrine that would permit such vicarious litigation, the movants lack standing, have no "interest

relating to the property or transaction that is the subject of the action," Fed. R. Civ. P. 24(a)(2) (intervention of right), and have no "claim or defense that shares with the main action a common question of law or fact," *id.* 24(b)(1)(B) (permissive intervention). Finally, because a judgment in this case will not bind them, the movants cannot show that disposition of this action absent their participation will prejudice them in any way. For all these reasons, the Court should deny the motion to intervene.

## II.     BACKGROUND

### A.     The *Equal Means Equal* Litigation in the District of Massachusetts

On September 22, 2017, ED issued the Guidance at issue in this case. Less than one month later, on October 19, 2017, Equal Means Equal and three pseudonymous individuals filed a lawsuit in the District of Massachusetts seeking to invalidate that Guidance. *See* Declaration of Steven A. Myers ("Myers Decl.") Ex. A (*Equal Means Equal* docket). Among other relief, the *Equal Means Equal* complaint requested an order "vacating and setting aside the [2017 Guidance] in [its] entirety." *See id.* Ex. B (*Equal Means Equal*, Complaint, ECF No. 1) Prayer for Relief ¶ 1. On May 17, 2018, Plaintiffs filed a motion for leave to amend, pursuant to which they also proposed to add NCAVA as a Plaintiff. *See id.* Ex. C (*Equal Means Equal*, Mot. to Amend, ECF No. 13-1). Defendants did not oppose that motion, which is currently pending. *See id.* Ex. A. (*Equal Means Equal* docket).

### B.     The *SurvJustice* Litigation in this Court

Plaintiffs SurvJustice, Inc., Equal Rights Advocates, and the Victim Rights Law Center commenced this action by filing a complaint on January 25, 2018, *see* ECF No. 1, which they amended on February 21, 2018, *see* ECF No. 23. Defendants moved to dismiss, *see* ECF No. 40, and six days after Plaintiffs in this action filed their opposition brief, *see* ECF No. 45, two of the *Equal Means Equal* plaintiffs (Equal Means Equal and NCAVA) filed a motion for leave to file an amicus brief, *see* ECF Nos. 46, 47. That motion was also joined by five other groups: the Women's and Children's Advocacy Project, Faculty Against Rape, Allies Reaching for Equality, Women Matter, and We Are Woman. The Court granted leave to file the amicus brief on June 29, 2018. *See* ECF No. 57.

After Defendants filed their reply memorandum, *see* ECF No. 48, the parties appeared for oral argument on July 19, 2018. *See* ECF No. 64. At the Court's direction, Plaintiffs and Defendants submitted

1    supplemental memoranda on August 2, 2018, and August 30, 2018, respectively. *See* ECF Nos. 68, 70.

2         One day after Defendants filed their supplemental brief—and more than four weeks after Plaintiffs

3    filed their supplemental brief—the same parties that had previously filed an amicus brief filed a motion

4    to intervene as Plaintiffs. *See* Mot. The motion to intervene attaches a proposed complaint that, like the

5    *Equal Means Equal* complaint in the District of Massachusetts, requests "an order vacating and setting

6    aside the [2017 Guidance] in [its] entirety." Mot. Ex. A Prayer for Relief ¶ A. The movants also filed a

7    supplemental brief that purported to address the issues as to which the Court indicated it would accept

8    supplemental briefing. *See* ECF No. 72.

9    **III.   ARGUMENT**

10        **A.   Equal Means Equal and NCAVA Cannot Intervene Because Simultaneous
11             Prosecution of the Same Claim in Two Courts Violates the Rule against Claim
             Splitting.**

12        At the outset, two of the movants—Equal Means Equal and NCAVA—cannot participate in this

13   litigation because doing so would violate the rule against claim splitting. This rule, which has been referred

14   to as the "'other action pending' facet of the *res judicata* doctrine," *Adams v. Cal. Dep't of Health Servs.*,

15   487 F.3d 684, 689 (9th Cir. 2007) (quoting *Davis v. Sun Oil Co.*, 148 F.3d 606, 613 (6th Cir. 1998)),

16   *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008), prohibits an individual from

17   bringing a duplicate action in another forum. "A main purpose behind the rule preventing claim splitting

18   is 'to protect the defendant from being harassed by repetitive actions based on the same claim.'" *Clements

19   v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 328 (9th Cir. 1995) (quoting Restatement (Second)

20   Judgments § 26 cmt. a (Am. Law Inst. 1982)).

21        In the *Equal Means Equal* case, Equal Means Equal and NCAVA seek the exact same relief that

22   they would seek here—an order invalidating the 2017 Guidance. *See* Myers Decl. Exs. B, C. These parties

23   are thus pursuing two simultaneous opportunities to challenge the same Guidance: once in the District of

24   Massachusetts, and again in this Court. If there were a final judgment against Equal Means Equal and

25   NCAVA in the District of Massachusetts, that judgment would bar them from proceeding with this action

26   as a textbook application of res judicata. *See, e.g.*, *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under res

27   judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating

28   issues that were or could have been raised in that action."). A claim splitting challenge, however, "need

*SurvJustice, Inc. v. DeVos*, No. 18-cv-0535-JSC, Defendants' Mem. in Opp. to Mot. to Intervene

not—indeed, often cannot—wait until the first suit reaches final judgment." *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th Cir. 2002). Rather, "in the claim-splitting context, the appropriate inquiry is whether, *assuming that the first suit were already final*, the second suit could be precluded pursuant to claim preclusion." *Adams*, 487 F.3d at 689 (alteration in original) (emphasis added) (quoting *Hartsel Springs Ranch*, 296 F.3d at 987 n.1); *accord, e.g.*, *Finjan, Inc. v. Blue Coat Sys., LLC*, 230 F. Supp. 3d 1097, 1102 (N.D. Cal. 2017) ("Claim-splitting is different from res judicata in that it does not require a final judgment on the merits in the first suit.").

"[I]n assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams*, 487 F.3d at 689. Here, Equal Means Equal is already a plaintiff in the District of Massachusetts, and the plaintiffs there have moved to file—with no objection from Defendants—an amended complaint naming NCAVA as an additional plaintiff. Every claim for relief presented in the proposed complaint in intervention is asserted in the *Equal Means Equal* complaints, and the prayers for relief are identical. *Compare* Mot. Ex. A *with* Myers Decl. Exs. B, C. Because Equal Means Equal and NCAVA are "not entitled to a second bite at this apple," *Finjan*, 230 F. Supp. 3d at 1103, the rule against claim splitting precludes intervention by these parties.

### B.   The Motion to Intervene Was Not Timely Filed, Barring Intervention under Rules 24(a) and (b).

The motion for intervention fails with respect to all of the movants for another threshold reason as well: it was not timely filed. No matter what type of intervention a party seeks, the threshold requirement is that the motion be timely. *See* Fed. R. Civ. P. 24(a), (b)(1).

Construing the timeliness requirement, the Ninth Circuit has reached several holdings that are dispositive here. First, "[a] party must intervene when [it] 'knows or has reason to know that [its] interests might be adversely affected by the outcome of litigation.'" *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004) (quoting *Oregon*, 913 F.2d at 589). Second, the filing of a pleading on the public docket puts a party on constructive notice that its rights may be affected by that litigation. *See id.*; *accord, e.g.*, *Colony Ins. Co. v. Schwartz*, No. 13-243, 2013 WL 5308254, at *5 (describing *Alisal*: "the Ninth Circuit found that the party seeking intervention was on notice that his interests might be adversely

affected as of the date the amended complaint was filed"). Here, the movants (1) had actual notice of their disagreement with the 2017 Guidance since at least October 2017, when they challenged it in the District of Massachusetts, (2) were on constructive notice of this lawsuit when it was publicly filed in January 2018, and (3) had actual notice of this lawsuit since at least June 2018, when they sought (and then received) leave to file an amicus brief. Under those circumstances, their choice to wait until the close of briefing on Defendants' motion to dismiss in late August 2018 to seek intervention is inexcusable.

In evaluating the timeliness of a motion to intervene, courts consider "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of delay." *Alisal Water Corp.*, 370 F.3d at 921 (quoting *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002)). These factors all confirm that the motion to intervene was untimely.

### 1. This Case Is at an Advanced Stage.

At the outset, this case has significantly advanced since it was filed: Plaintiffs have amended their complaint, the parties have completed two rounds of briefing on Defendants' motion to dismiss, and the Court has presided over a lengthy and substantive oral argument on that motion. If the movants wanted to be heard in connection with this case, the time for them to seek to intervene was well before that motions hearing, not after it. *See, e.g.*, *Chamness v. Bowen*, 722 F.3d 1100, 1121–22 (9th Cir. 2013) (intervention is untimely where parties had briefed dispositive motion). Indeed, the movants sought and were granted leave to participate telephonically in the hearing on July 19, 2018, further confirming that they were fully aware of the arguments being presented in this case. *See* ECF Nos. 59, 60.

### 2. Granting Intervention Now Would Prejudice the Existing Parties.

Granting the motion to intervene now would prejudice the existing parties. A putative intervenor prejudices the other parties if its presence could delay or prolong the case, if it seeks to intervene after substantive and procedural issues have been settled, or if it could expand the scope of the litigation. *See, e.g.*, *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999). Here, Defendants' motion to dismiss the amended complaint is ripe for resolution; once the Court resolves it, this case will either end or proceed to production of the administrative record and briefing on summary judgment. Should intervention be granted, however, Defendants would likely file a motion to dismiss the complaint in intervention, and the

1   resolution of that motion could take several months. That delay in the orderly resolution of these

2   proceedings further weighs against granting intervention now. *See LULAC*, 131 F.3d at 1304 ("additional

3   delay" caused by putative intervenor moving long after complaint was filed supported prejudice

4   determination).

5           **3.**      **The Movants Have No Excuse for Their Failure to Timely Seek Intervention.**

6         Finally, and most importantly, the movants have no valid excuse for their delay in seeking

7   intervention. *See LULAC*, 131 F.3d at 1304 ("Even more damaging to [putative intervenor's] motion than

8   the twenty-seven month delay itself, however, is its failure adequately to explain . . . the *reason* for its

9   delay."); *Alisal*, 370 F.3d at 923 (affirming denial of intervention where movant "had offered 'no adequate

10  explanation for its delay in seeking intervention'" (alterations omitted)); *Smith*, 194 F.3d at 1053

11  (affirming denial of motion to intervene when putative intervenors failed to advance "any satisfactory

12  explanation or their dilatory motion"). The few reasons the movants do offer are entirely unpersuasive.

13        First, the movants contend that this case "has become even more urgent and has taken on greater

14  significance because it was reported earlier this week in the New York Times that Defendants are prepared

15  to change the Title IX regulations that will be codified in the Code of Federal Regulations." Mot. at 1. The

16  Guidance documents at issue in this litigation, however, state on their face that ED intends to issue such

17  regulations. *See, e.g.*, 2017 DCL at 2. Moreover, as the movants acknowledge, any challenge to

18  forthcoming regulations would be the subject of separate litigation, at such time as those regulations

19  become final. *See* Mot. at 2 (acknowledging that "an entirely new lawsuit may need to be filed if and when

20  such regulations become final"). A single news article reporting that ED intends to issue regulations hardly

21  explains why movants are seeking intervention now.

22        Second, the movants indicate that they "initially refrained from seeking to intervene in the hope

23  the Plaintiffs would amend their complaint . . . after they had a chance to review [their] amicus brief."

24  Mot. at 3. That argument cannot be taken seriously. At the time that the movants filed their amicus brief,

25  Plaintiffs had already used their opportunity to amend their complaint as of right, *see* ECF No. 23, Fed.

26  R. Civ. P. 15(a)(1)(B), thereby making it abundantly clear which issues they did and did not intend to

27  press in this lawsuit. Moreover, when the movants filed their amicus brief, Plaintiffs has already filed their

28  opposition to Defendants' motion to dismiss, *see* ECF No. 45; the movants cannot seriously have expected

that Plaintiffs would abandon that opposition and instead file a second amended complaint raising entirely new legal theories that are in significant tension with the arguments that they had previously advanced.

Finally, the movants suggest "it was only after Plaintiffs filed their supplemental brief on August 2, 2018, in response to the Court's request for briefing specifically on the issue of which rights are at stake in this litigation that it became clear that Plaintiffs are not interested in advancing equal rights for women as a class." Mot. at 8. At the outset, the supplemental brief permitted by the Court was not an opportunity to advance entirely new theories that were not presented in Plaintiffs' complaint; the Court asked for briefing on the specific question of whether the 2017 Guidance was final agency action on the theory that it could be dispositive of a deliberate indifference claim in litigation between private parties.[1] Moreover, even if the movants' dissatisfaction with Plaintiffs' supplemental brief were a sufficient excuse for waiting to intervene (and it is not), the movants still cannot explain why they waited nearly a full month—from August 2 to August 31—after that brief was filed to seek intervention.

Put simply, if the movants were dissatisfied by the claims that Plaintiffs alleged in their amended complaint, they could have sought to intervene shortly after it was filed. Had the movants done so, there could have been one coordinated round of briefing on motions to dismiss both complaints. The movants instead elected to file an amicus brief, and having made that choice, they should now be held to it.

**C.    Intervention of Right under Rule 24(a) Is Unavailable Because the Movants Have No Protectable Interest in This Case, and Because Denying Intervention Would Not Preclude the Movants From Protecting Any Such Interests.**

Even putting aside the claim-splitting and timeliness problems, the movants are still not entitled to intervention. To obtain intervention of right under Rule 24(a), the movants must show that they have a "significantly protectable interest relating to the property or transaction that is the subject of the action" and that "disposition of the action may impair or impede the party's ability to protect that interest." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); *see also* Fed. R. Civ. P. 24(a)(2). The movants do not satisfy those requirements.

---

[1] *See, e.g.*, Mot. Dismiss Hr'g Tr. (MTD Hr'g Tr.) at 42:8–9 ("[M]aybe what I'll do is I'll allow supplemental briefing on that issue because it wasn't raised, but it's intriguing at least . . . ."); *id.* at 84:22–85:11 ("I do want to have some supplemental briefing on the issue you raised because it was something I hadn't thought about . . . your argument that you raised was that because of the deliberate indifferen[ce] standard, the effect is to create a right, essentially a safe harbor in a sense.").

1

### i.   The Movants Lack Any Interest in This Action.

2        First, the movants have no interest whatsoever in this action. To intervene of right, an applicant

3    must possess an interest that is "direct, non-contingent, substantial and legally protectable." *Dilks v. Aloha*

4    *Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981). "[T]he interest must be one which the *substantive* law

5    recognizes as belonging to or being owned by the applicant;" in other words, the proposed intervenor must

6    be "the real party in interest regarding [its] claim." *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004).[2]

7        As Defendants have previously explained, *see* ECF No. 40 at 4–16, a "mere interest" in a particular

8    social issue is an inadequate basis for litigation in federal court. *See Sierra Club v. Morton*, 405 U.S. 727

9    (1972). Rather, an "organization suing on its own behalf can establish an injury when it suffered 'both a

10   diversion of its resources and a frustration of its mission,'" *La Asociacion de Trabajadores de Lake Forest*

11   *v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (quoting *Fair Hous. of Marin v. Combs*, 285

12   F.3d 899, 905 (9th Cir. 2002)), but "[i]t cannot manufacture the injury by incurring litigation costs or

13   simply choosing to spend money fixing a problem that otherwise would not affect the organization at all."

14   *Id.*

15       Defendants continue to dispute that Plaintiffs themselves satisfy the *Trabajadores* standard, but

16   Plaintiffs at least attempted to plead facts that would satisfy it (i.e., the Amended Complaint contains

17   allegations attempting to explain how the Plaintiffs are injured by the 2017 Guidance and what

18   expenditures they have made in response). The movants, however, make no such effort at all. Instead, they

19   indicate that they are interested, at an extraordinary level of generality, in issues that affect women. The

20   Women's and Children's Advocacy Project states that it "engages in direct litigation, and submits amicus

21   briefs in state and federal court on behalf of the rights and interests of abused women and children." Mot.

22   at 5; *see also id.* Ex. A ¶ 8. Equal Means Equal states that its "mission is to advocate for the fully equal

23   treatment of women under all laws." Mot. at 6; *see also id.* Ex. A ¶ 9. The National Coalition Against

24   Violent Athletes "advocates for victims of violence, including sexual assault and domestic violence, as

25

---

26   [2] For all the same reasons that the movants lack a legally protectable interest in this case, they also lack
     Article III standing. "For all relief sought, there must be a litigant with standing, whether that litigant joins

27   the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Town of Chester v. Laroe Estates, Inc.*,
     137 S. Ct. 1645, 1651 (2017). As Defendants have explained, Plaintiffs lack standing, *see* ECF No. 40 at

28   4–16, and where neither the existing Plaintiffs nor the proposed intervenors has standing, intervention is
     foreclosed. *Laroe Estates, Inc.*, 137 S. Ct. at 1651.

     *SurvJustice, Inc. v. DeVos*, No. 18-cv-0535-JSC, Defendants' Mem. in Opp. to Mot. to Intervene

1   well as prevention training for athletes." Mot. at 6; *see also id.* Ex. A ¶ 10. Allies Reaching for Equality

2   vaguely states that it "was formed in 2017 to address the significant issue of university practices that allow

3   hostile environments to go unchecked." Mot. at 6; *see also id.* Ex A. ¶ 11. As for Women Matter and We

4   Are Woman, it appears that both groups are focused on advocating for the ratification of the Equal Rights

5   Amendment, which is not at issue in this lawsuit. *See* Mot. at 7; *id.* Ex. A ¶¶ 12–13. Finally, SAFE

6   Campuses LLC indicates that it "provides education and training . . . on a wide range of campus security

7   issues including sexual assault, dating violence, and stalking," Mot. at 7; *id.* Ex. A ¶ 14. Not one of these

8   organizations makes any effort to explain how its organizational mission has been impeded by the 2017

9   Guidance, or to identify a single expenditure that it has been forced to make to avoid organizational

10  injury.[3]

11      The movants do not contend that the 2017 Guidance actually affects them but instead repeatedly

12

13      [3] Several of these organizations have failed to show that they may intervene for other reasons as
14  well. Starting with the Women and Children's Advocacy Project, it is not apparent that this project is an
    entity with the capacity to sue; the proposed complaint in intervention describes it as a "project of the
15  Center for Law and Social Responsibility at New England Law Boston," Mot. Ex. A ¶ 8, suggesting that
    the proper movant may be the law school of which it is a component. As for Equal Means Equal, there
16  appear to be two related entities that use that name, and it is not apparent which entity is attempting to
    intervene here. Equal Means Equal, LLC is a California limited liability company that, it appears, is
17  principally responsible for producing and distributing a documentary film titled *Equal Means Equal*. *See*
    California Business Search, https://businesssearch.sos.ca.gov/ (last visited Sept. 12, 2018) (search by type
18  "LP/LLC Name" and search for "Equal Means Equal"); *see also* Equal Means Equal,
    http://www.equalmeansequal.com (last visited Sept. 12, 2018). Separately, the Heroica Foundation
19  operates a project called Equal Means Equal, *see* Equal Means Equal, Privacy Policy,
    http://www.equalmeansequal.org/privacy-policy (last visited Sept. 12, 2018) (describing
20  EqualMeansEqual.org as "owned and operated by the Heroica Foundation"). If the movants mean to sue
    on behalf of this project, the proper party is likely the Heroica Foundation. (It also bears noting that the
21  purpose of the Heroica Foundation's Equal Means Equal project is to "ensure that ALL people are
    protected by the Constitution by ratifying the Equal Rights Amendment in just one more state." *See* Equal
22  Means Equal, Fuel the Fight for Equal Rights, https://demand.equalmeansequal.org/page/contribute/
    default (last visited Sept. 12, 2018).) As for Allies Reaching for Equality and Women Matter, the movants
23  say nothing about their corporate or association status, rendering it difficult to assess their capacity to sue.
    SAFE Campuses, LLC—full name Safety Advisors for Educational Campuses, LLC—appears to be a for-
24  profit corporation, which further calls into question how its organizational mission is impeded by the
    Guidance challenged here. *See* Safety Advisors for Educational Campuses, LLC, http://safecampuses.biz
25  (last visited Sept. 12, 2018); *see also* Georgia Corporations Division, Business Search,
    https://ecorp.sos.ga.gov/BusinessSearch (last visited Sept. 12, 2018) (search Business Name for "Safety
26  Advisors for Educational Campuses, LLC"). Finally, while the Motion was also filed on behalf of Faculty
27  Against Rape, neither the motion to intervene nor the proposed complaint in intervention says anything
    whatsoever about this entity.
28

*SurvJustice, Inc. v. DeVos*, No. 18-cv-0535-JSC, Defendants' Mem. in Opp. to Mot. to Intervene

suggest that they "seek to advance claims and arguments on behalf of women as a class." Mot. at 1; *accord, e.g.*, *id.* at 3 ("[I]ntervention as of right is warranted because the interests of women as a class are not adequately represented by the Plaintiffs . . . ."); *id.* at 4 ("DeVos Rules will cause harm to women as a class."); *id.* at 5 ("disposition of this action will impact the rights and interests of women as a class"); *id.* at 9 ("women as a class are within the zone of interests . . . ."); *id.* at 13 ("DeVos Rules obviously affect the rights of women as a class to equal treatment."); *id.* at 15 ("The interests of women as a class are not adequately represented by the Plaintiffs . . . ."). Conspicuously, the movants identify no principle of law that would permit them to advance the rights of women writ large. The movants do not invoke associational standing, *see Airline Serv. Providers Ass'n v. L.A. World Airports*, 873 F.3d 1074, 1078 (9th Cir. 2017), nor do they even allege that they are membership organizations. And despite the movants' repeated references to women "as a class," it also does not appear that they intend to invoke Rule 23. The movants might intend to litigate on behalf of women under principles of third party standing, but the proposed complaint in intervention contains no allegations that would suffice to invoke that doctrine: the movants have not alleged that they have a "close relation to the third party" or that there is "some hindrance to the third party's ability to protect his or her own interests." *See Powers v. Ohio*, 499 U.S. 400, 411 (1991). Without pleading facts that support third party standing, the movants cannot show that they have it here. *See Legal Aid Soc'y of Haw. v. Legal Servs. Corp.*, 145 F.3d 1017, 1031 (9th Cir. 1998) (White, J.); *Diamond v. Corizon Health, Inc.*, No.16-cv-03534-JSC, 2016 WL 7034036, at *5 (N.D. Cal Dec. 2, 2016).

### ii.   Disposition of This Action absent Participation of the Movants Will Not Impair Their Interests.

Even if the movants had an interest in the fate of the 2017 Guidance, disposing of this action without their participation would not affect their ability to protect those interests. Nothing about this case prevents the movants from pursuing their own challenge to the 2017 Guidance, and indeed, two of the movants are currently litigating such a challenge in the District of Massachusetts. The pendency of that separate action dramatically undermines the movants' case for intervention here. *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) (impairment prong is not met where a potential intervenor has "other means" or an "alternative forum" to protect its interests). The movants are not parties

*SurvJustice, Inc. v. DeVos*, No. 18-cv-0535-JSC, Defendants' Mem. in Opp. to Mot. to Intervene

to this action, and so "would not be exposed to any preclusive effect of the litigation." *Raines v. Seattle Sch. Dist. No. 1*, No. C09-203Z, 2009 WL 3444865, at *1 (W.D. Wash. Oct. 23, 2009); *see also NASD Dispute Resolution, Inc. v. Judicial Council of State of Cal.*, 488 F.3d 1065, 1069 (9th Cir. 2007). Because the disposition of this case will not impair the movants' ability to protect any interests that they possess, intervention as of right is inappropriate.

### D.    The Court Should Deny Permissive Intervention under Rule 24(b).

Finally, this Court should deny permissive intervention. At the outset, as described above, neither Plaintiffs nor the movants have standing, which is grounds enough to deny intervention. *See Town of Chester*, 137 S. Ct. at 1651. And even if the Court could look past that jurisdictional failure, the motion to intervene should be denied because the movants do not have "a claim or defense that shares with the main action a common question of law or fact," *see* Fed. R. Civ. P. 24(b)(1)(B); indeed, the movants (as opposed to the "class of women" on behalf of whom they would like to litigate) have no claims in this case at all. Finally, even if the Court looked past these problems, it would still properly exercise its discretion to deny permissive intervention. *See, e.g.*, *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (relevant factors include "the nature and extent of the intervenors' interest" and "their standing to raise relevant legal issues").[4]

## IV.    CONCLUSION

Defendants respectfully request that the Court deny the motion to intervene.

Dated: September 14, 2018                      Respectfully Submitted,

                                              JOSEPH H. HUNT
                                              Assistant Attorney General

                                              ALEX G. TSE
                                              Acting United States Attorney

---

[4] For the same reasons that the Court should deny the motion to intervene, it should decline to consider—or consider striking—the movants' supplemental brief. *See, e.g.*, *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (noting district courts' inherent authority to strike improper filings). The Court has not yet acted on the intervention motion; accordingly, the movants are not parties to this action and may not file what is effectively a second amicus brief absent leave of Court. *Cf., e.g. Correll v. United States*, No. 07-460, 2007 WL 4209424, at *2 n.2 (W.D. Wash. Nov. 26, 2007) (striking amicus brief: "Mr. Worthington's amicus brief is not properly before the Court because he failed to first seek leave of court or to obtain the consent of all the parties").

*SurvJustice, Inc. v. DeVos*, No. 18-cv-0535-JSC, Defendants' Mem. in Opp. to Mot. to Intervene

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division

<u>/s/ *Steven A. Myers*</u>
STEVEN A. MYERS
(NY Bar # 4823043)
BENJAMIN T. TAKEMOTO
(CA Bar # 308075)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Rm. 7334
Washington, DC 20530
Tel: (202) 305-8648
Fax: (202) 616-8460
E-mail: steven.a.myers@usdoj.gov

*Attorneys for Defendants*