JOSEPH H. HUNT
Assistant Attorney General

ALEX G. TSE
Acting United States Attorney

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division

STEVEN A. MYERS (NY Bar # 4823043)
BENJAMIN T. TAKEMOTO (CA Bar # 308075)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 305-8648
Fax: (202) 616-8470
E-mail: steven.a.myers@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| SURVJUSTICE, INC.,<br>EQUAL RIGHTS ADVOCATES, and<br>VICTIM RIGHTS LAW CENTER,<br><br>            Plaintiffs,<br><br>    v.<br><br>ELISABETH D. DEVOS,<br>in her official capacity as Secretary of Education,<br>KENNETH L. MARCUS,<br>in his official capacity as Assistant Secretary for Civil Rights, and<br>U.S. DEPARTMENT OF EDUCATION,<br><br>            Defendants. | Case No. 18-cv-0535-JSC<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO SECOND MOTION TO INTERVENE**<br><br>Hon. Jacqueline Scott Corley<br>Hearing: February 14, 2019, 9:00 a.m.<br>Phillip Burton Federal Building & United States Courthouse, Courtroom F, 15th Floor,<br>450 Golden Gate Ave., San Francisco, CA 94102 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................3

II.  BACKGROUND .................................................................................................................4

    A.   The *Equal Means Equal* Litigation in the District of Massachusetts ................................4

    B.   The *SurvJustice* Litigation in this Court ...........................................................................4

III. ARGUMENT .......................................................................................................................5

    A.   Equal Means Equal and NCAVA Cannot Intervene Because Simultaneous Prosecution of the Same Claim in Two Courts Violates the Rule against Claim Splitting. ..............................................................................................................................5

    B.   The Motion Was Not Timely Filed, Barring Intervention under Rules 24(a) and (b). .......................................................................................................................................7

        1.   This Case Is at an Advanced Stage. ............................................................................8

        2.   Granting Intervention Now Would Prejudice the Existing Parties. ...........................9

        3.   The Movants Have No Excuse for Their Failure to Timely Seek Intervention. ................................................................................................................9

    C.   Intervention of Right under Rule 24(a) Is Unavailable Because the Movants Have No Protectable Interest in This Case, and Because Denying Intervention Would Not Preclude the Movants From Protecting Any Such Interests. .........................10

        1.   The Movants Lack Any Interest in This Action. .....................................................11

        2.   Disposition of This Action absent Participation of the Movants Will Not Impair Their Interests. ......................................................................................15

    D.   The Court Should Deny Permissive Intervention under Rule 24(b). ...............................15

IV.  CONCLUSION .................................................................................................................16

# TABLE OF AUTHORITES

**CASES**

*Adams v. Cal. Dep't of Health Servs.*,
  487 F.3d 684 (9th Cir. 2007) .................................................................................................. 3, 4, 5

*Airline Serv. Providers Ass'n v. L.A. World Airports*,
  873 F.3d 1074 (9th Cir. 2017) ...................................................................................................... 12

*Allen v. McCurry*,
  449 U.S. 90 (1980) ......................................................................................................................... 4

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) .................................................................................................... 8, 9

*Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*,
  309 F.3d 1113 (9th Cir. 2002) ........................................................................................................ 6

*California ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ........................................................................................................ 13

*Chamness v. Bowen*,
  722 F.3d 1100 (9th Cir. 2013) ........................................................................................................ 6

*Clements v. Airport Auth. of Washoe Cty.*,
  69 F.3d 321 (9th Cir. 1995) ....................................................................................................... 3, 4

*Colony Ins. Co. v. Schwartz*,
  No. 13-243, 2013 WL 5308254 (D. Nev. Sept. 19, 2013) ............................................................... 5

*Davis v. Sun Oil Co.*,
  148 F.3d 606 (6th Cir. 1998) .......................................................................................................... 3

*Dilks v. Aloha Airlines*,
  642 F.2d 1155 (9th Cir. 1981) ........................................................................................................ 9

*Finjan, Inc. v. Blue Coat Sys., LLC*,
  230 F. Supp. 3d 1097 (N.D. Cal. 2017) ...................................................................................... 4, 5

*Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*,
  296 F.3d 982 (10th Cir. 2002) ........................................................................................................ 4

*Hunt v. Washington State Apple Advertising Commission*,
  432 U.S. 333 (1977) ..................................................................................................................... 12

*League of United Latin Am. Citizens v. Wilson*,
  131 F.3d 1297 (9th Cir. 1997) .................................................................................................... 1, 7

*NASD Dispute Resolution, Inc. v. Judicial Council of State of Cal.*,
  488 F.3d 1065 (9th Cir. 2007) .................................................................................................. 13

*Powers v. Ohio*,
  499 U.S. 400 (1991) .................................................................................................................. 13

*Raines v. Seattle Sch. Dist. No. 1*,
  No. C09-203Z, 2009 WL 3444865 (W.D. Wash. Oct. 23, 2009) ............................................. 13

*Saldano v. Roach*,
  363 F.3d 545 (5th Cir. 2004) ..................................................................................................... 9

*Sierra Club v. Morton*,
  405 U.S. 727 (1972) ................................................................................................................... 9

*Smith v. Marsh*,
  194 F.3d 1045 (9th Cir. 1999) ................................................................................................... 7

*Smith v. Pacific Props. & Dev. Corp.*,
  358 F.3d 1097 (9th Cir. 2004) ................................................................................................... 9

*Spangler v. Pasadena City Bd. of Educ.*,
  552 F.2d 1326 (9th Cir. 1977) ................................................................................................. 13

*Students for Fair Admissions v. President and Fellows of Harvard Coll. (Harvard Corp.)*,
  261 F. Supp. 3d 99 (D. Mass. 2017) ......................................................................................... 12

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) .................................................................................................................... 3

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) ................................................................................................................ 9

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ............................................................................................. 5, 6, 7

*United States v. Oregon*,
  913 F.2d 576 (9th Cir. 1990) ................................................................................................. 1, 5

*United States v. Washington*,
  86 F.3d 1499 (9th Cir. 1996) ..................................................................................................... 1

**FEDERAL RULES**

Fed. R. Civ. P. 16 ............................................................................................................................ 7
Fed. R. Civ. P. 24 ............................................................................................................. 5, 8, 9, 13

## I. INTRODUCTION

For the second time, a coalition of advocacy groups has moved to intervene as Plaintiffs in this case. *See* ECF No. 89 ("Mot."). When the movants filed their first motion in August 2018, *see* ECF No. 71, that motion was already inexplicably untimely: it came almost a year after the challenged guidance was issued in September 2017 and nearly eight months after this case was filed in January 2018. That motion was also deficient because certain of the movants were barred by the rule against claim splitting, the movants had no interest in the subject of this action, and the disposition of this action would not impair their ability to protect any such interest. *See generally* ECF No. 75 (Defs' Opp'n First Mot. Intervene).

The movants' second motion is at least as deficient as their first, if not more so. At the outset, the motion is even more untimely, coming some fourteen months after the challenged guidance was issued, eleven months after this litigation was filed, and two and a half months after the movants filed their first motion to intervene. Even if the Court were willing to overlook those failures, at an absolute minimum, the movants should have filed their proposed complaint in intervention by no later than November 1, 2018, the date that the Court set for Plaintiffs to file their second amended complaint. *See* ECF No. 81 at 21. By inexplicably waiting until almost three more weeks had passed, the movants have guaranteed that, if their motion were granted, any motion to dismiss the complaint in intervention could not be briefed and decided on the same schedule as the one to which the parties agreed with respect to the second amended complaint. The movants' sleeping on their rights is reason enough to deny their motion. *See, e.g.*, *League of United Latin Am. Citizens* ("*LULAC*") *v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) ("Timeliness is 'the threshold requirement' for intervention[, and] . . . if we find 'that the motion to intervene was not timely, [we] need not reach any of the remaining elements of Rule 24.'" (quoting *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990); *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996))).

The second motion to intervene fails in other respects as well. While movants have attempted to bolster their standing allegations, they are still fundamentally attempting to assert the rights of women "as a class," *see* Mot. at 1, 2, 3, 5, 6, 11, 12, 15, 17, 18, rather than to seek redress for an injury that they have personally suffered. Moreover, should the Court deny the motion to intervene, nothing in the Court's disposition of this action would impede the movants' ability to protect their own interests in separate litigation. Indeed, two of the movants—Equal Means Equal and the National Coalition Against Violent

Athletes ("NCAVA") — are currently pursuing such litigation, which means that their attempt to intervene here runs afoul of the rule against claim splitting. *See Equal Means Equal v. ED*, No. 1:17-cv-12043-MLW (D. Mass. filed Oct. 19, 2017).

For any one of these reasons, or all of them, the Court should deny the motion to intervene.

## II. BACKGROUND

### A. The *Equal Means Equal* Litigation in the District of Massachusetts

On September 22, 2017, ED issued the Guidance at issue in this case (the "2017 Guidance" or "Guidance"), which consists of a Dear Colleague Letter and a Questions and Answers document. Less than one month later, on October 19, 2017, Equal Means Equal and three pseudonymous individuals filed a lawsuit in the District of Massachusetts seeking to invalidate the Questions and Answers portion of the Guidance. *See* Declaration of Steven A. Myers ("Myers Decl.") Ex. A (*Equal Means Equal* docket). On September 24, 2018, the Court granted the plaintiffs leave to file an amended complaint. *See* Myers Decl. Ex. B (*Equal Means Equal*, Order, ECF No. 23). The amended complaint includes as plaintiffs both Equal Means Equal and NCAVA and seeks "an order vacating and setting aside the DeVos Rules in their entirety." Myers Decl. Ex. C. (*Equal Means Equal*, Amended Complaint, ECF No. 13-1).[1]

### B. The *SurvJustice* Litigation in this Court

Plaintiffs SurvJustice, Inc., Equal Rights Advocates, and the Victim Rights Law Center commenced this action by filing a complaint on January 25, 2018, *see* ECF No. 1, which they amended on February 21, 2018, *see* ECF No. 23. Defendants moved to dismiss, *see* ECF No. 40, and six days after Plaintiffs filed their opposition brief, *see* ECF No. 45, two of the *Equal Means Equal* plaintiffs (Equal Means Equal and NCAVA) filed a motion for leave to file an amicus brief, *see* ECF Nos. 46, 47. That motion was also joined by five other groups: the Women's and Children's Advocacy Project, Faculty Against Rape, Allies Reaching for Equality, Women Matter, and We Are Woman. The Court granted leave to file the amicus brief on June 29, 2018. *See* ECF No. 57.

After Defendants filed their reply memorandum in support of their motion to dismiss, *see* ECF No. 48, the parties appeared for oral argument on July 19, 2018. *See* ECF No. 64. At the Court's direction,

---

[1] In the *Equal Means Equal* case, the "DeVos Rules" are defined to refer to the Questions and Answers document. *See* Myers Decl. Ex. C (*Equal Means Equal* amended complaint) ¶ 1.

*SurvJustice, Inc. v. DeVos*, **No. 18-cv-0535-JSC, Defs' Mem. in Opp. to Second Mot. to Intervene**
4

Plaintiffs and Defendants submitted supplemental memoranda on August 2, 2018, and August 30, 2018, respectively. *See* ECF Nos. 68, 70.

One day after Defendants filed their supplemental brief (August 31, 2018)—and more than four weeks after Plaintiffs filed their supplemental brief—the same parties that had previously filed an amicus brief filed their first motion to intervene as Plaintiffs. *See* ECF No. 71. The movants also filed a supplemental brief that purported to address the issues as to which the Court indicated it would accept supplemental briefing. *See* ECF No. 72. Both Plaintiffs and Defendants opposed the motion to intervene. *See* ECF Nos. 74 (Plaintiffs), 75 (Defendants).

While the first motion to intervene was pending, on October 1, 2018, the Court entered an order granting Defendants' motion to dismiss the amended complaint, with leave to replead certain claims by no later than November 1, 2018. *See* ECF No. 81. Three days after the Court granted Defendants' motion to dismiss Plaintiffs' amended complaint, the movants withdrew their motion to intervene. *See* ECF No. 82.

On October 31, 2018, Plaintiffs filed a second amended complaint. *See* ECF No. 86. Shortly thereafter, Plaintiffs and Defendants agreed upon (and the Court approved) a schedule pursuant to which Defendants would file their motion to dismiss the second amended complaint on December 14, 2018. *See* ECF Nos. 87 (proposed stipulation, November 6, 2018), 88 (order, November 8, 2018). On November 20, 2018, the movants filed their second motion to intervene. *See* Mot.

**III. ARGUMENT**

    **A. Equal Means Equal and NCAVA Cannot Intervene Because Simultaneous Prosecution of the Same Claim in Two Courts Violates the Rule against Claim Splitting.**

At the outset, two of the movants—Equal Means Equal and NCAVA—cannot participate in this litigation because doing so would violate the rule against claim splitting. This rule, which has been referred to as the "'other action pending' facet of the *res judicata* doctrine," *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007) (quoting *Davis v. Sun Oil Co.*, 148 F.3d 606, 613 (6th Cir. 1998)), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008), prohibits an individual from bringing a duplicate action in another forum. "A main purpose behind the rule preventing claim splitting is 'to protect the defendant from being harassed by repetitive actions based on the same claim.'" *Clements*

*v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 328 (9th Cir. 1995) (quoting Restatement (Second) Judgments § 26 cmt. a (Am. Law Inst. 1982)).

In the *Equal Means Equal* case, Equal Means Equal and NCAVA seek the exact same relief that they would seek here—an order invalidating the Questions and Answers portion of the 2017 Guidance. *See* Myers Decl. Ex. C (*Equal Means Equal* amended complaint). These parties are thus seeking two simultaneous opportunities to challenge the same document: once in the District of Massachusetts, and again in this Court.[2] If there were a final judgment against Equal Means Equal and NCAVA in the District of Massachusetts, that judgment would bar them from proceeding with this action as a textbook application of res judicata. *See, e.g.*, *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."). A claim splitting challenge, however, "need not—indeed, often cannot—wait until the first suit reaches final judgment." *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th Cir. 2002). Rather, "in the claim-splitting context, the appropriate inquiry is whether, *assuming that the first suit were already final*, the second suit could be precluded pursuant to claim preclusion." *Adams*, 487 F.3d at 689 (emphasis added) (quoting *Hartsel Springs Ranch*, 296 F.3d at 987 n.1); *accord, e.g.*, *Finjan, Inc. v. Blue Coat Sys., LLC*, 230 F. Supp. 3d 1097, 1102 (N.D. Cal. 2017) ("Claim-splitting is different from res judicata in that it does not require a final judgment on the merits in the first suit.").

"[I]n assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams*, 487 F.3d

---

[2] The movants' reply memorandum in support of their initial motion to intervene observed that the *Equal Means Equal* case also involved certain individual plaintiffs who are not seeking to intervene here. *See* ECF No. 76 at 5. The movants cite no authority for the proposition that the rule against claim splitting may be defeated by the presence of additional parties in one of the lawsuits. The movants also observe that the *Equal Means Equal* case "may never offer Equal Means Equal or any of the [movants] a full and fair opportunity to litigate all their claims," insofar as "Defendants' motion to dismiss has not yet been decided*.*" *Id.* at 6. The entire point of the rule against claim splitting, however, is that if the District Court for the District of Massachusetts agrees with Defendants on the threshold defenses presented in their motion to dismiss, that ruling would bind the movants. The movants are not entitled to seek relief in multiple courts in the hope that one of the courts will rule in the movants' favor as to Defendants' threshold defenses.

at 689. Here, Equal Means Equal and NCAVA are already plaintiffs in the *Equal Means Equal* litigation. Every claim for relief presented in the proposed complaint in intervention is asserted in the *Equal Means Equal* complaints, and the prayers for relief are identical. *Compare* Mot. Ex. A (proposed complaint in intervention in this case) *with* Myers Decl. Ex. C (*Equal Means Equal* amended complaint). Because Equal Means Equal and NCAVA are "not entitled to a second bite at this apple," *Finjan*, 230 F. Supp. 3d at 1103, the rule against claim splitting precludes intervention by these parties.[3]

### B. The Motion Was Not Timely Filed, Barring Intervention under Rules 24(a) and (b).

The motion for intervention fails with respect to all of the movants for another threshold reason: it was not timely filed. No matter what type of intervention a party seeks, the threshold requirement is that the motion be timely. *See* Fed. R. Civ. P. 24(a), (b)(1).

Construing the timeliness requirement, the Ninth Circuit has reached several holdings that are dispositive here. First, "[a] party must intervene when [it] 'knows or has reason to know that [its] interests might be adversely affected by the outcome of litigation.'" *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004) (quoting *Oregon*, 913 F.2d at 589). Second, the filing of a pleading on the public docket puts a party on constructive notice that its rights may be affected by that litigation. *See id.*; *accord, e.g.*, *Colony Ins. Co. v. Schwartz*, No. 13-243, 2013 WL 5308254, at *5 (D. Nev. Sept. 19, 2013) (describing *Alisal*: "the Ninth Circuit found that the party seeking intervention was on notice that his interests might be adversely affected as of the date the amended complaint was filed"). Here, the movants (1) had actual notice of their disagreement with the Questions and Answers document since at least October 2017, when they challenged it in the District of Massachusetts, (2) were on constructive notice of this lawsuit when it was publicly filed in January 2018, (3) had actual notice of this lawsuit since at least June 2018, when they sought (and subsequently received) leave to file an amicus brief; and (4) were rather

---

[3] Defendants have moved to dismiss the amended complaint in the *Equal Means Equal* litigation. *See* Myers Decl. Ex. B (*Equal Means Equal*, Mem. in Supp. of Defs' Mot. to Dismiss Am. Compl., ECF No. 27). That motion notes the impropriety of Equal Means Equal and NCAVA seeking simultaneous relief in two different courts and urges the District Court for the District of Massachusetts to place significant weight upon this Court's ruling dismissing the *SurvJustice* Plaintiffs' amended complaint. Defendants' motion concedes, however, that Equal Means Equal and NCAVA are not "formally bound" by this Court's ruling, *id.* at 19 n.6, and it does not raise a claim splitting challenge. Thus, to be clear, Defendants' position is that Equal Means Equal and the NCAVA should be compelled to litigate their claims in the forum that they initially selected—the District of Massachusetts.

obviously on notice of their interest in the subject matter of this action when they filed their first motion to intervene in August 2018. Under those circumstances, their choice to wait until November 20, 2018—by which time Plaintiffs had already filed a second amended complaint, and the Court had already approved a stipulated briefing schedule concerning Defendants' anticipated motion to dismiss—is inexcusable.

In evaluating the timeliness of a motion to intervene, courts consider "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of delay." *Alisal Water Corp.*, 370 F.3d at 921 (quoting *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002)). These factors all confirm that the motion to intervene was untimely.

### 1. This Case Is at an Advanced Stage.

At the outset, this case has significantly advanced since it was filed. Even at the time that the movants filed their first motion to intervene, that motion was untimely, as eight months had elapsed since the case was filed and the parties had already completed two rounds of briefing on Defendants' motion to dismiss. *See, e.g.*, *Chamness v. Bowen*, 722 F.3d 1100, 1121–22 (9th Cir. 2013).

Had the movants not withdrawn their first motion to intervene, they might have at least avoided making the timeliness problem worse. Yet three days after this Court granted Defendants' motion to dismiss the first amended complaint, the movants withdrew their motion to intervene, purporting to do so "with the right to re-file the Motion to Intervene if and when the plaintiffs file an amended complaint." ECF No. 82 at 2. At the outset, that withdrawal was inexplicable: if the movants wanted to be heard in connection with this case, and believed that the SurvJustice Plaintiffs were presenting the wrong legal arguments, there is no reason why the dismissal of the first amended complaint should have led the movants to abandon their motion to intervene. By allowing two and a half months to pass between their first and second intervention motions, the movants made the timeliness problem even worse.

In any case, the movants did not file their renewed intervention motion "when the plaintiffs filed an amended complaint"—which the Plaintiffs did on October 31, 2018, *see* ECF No. 86. The movants instead waited three *more* weeks, after Plaintiffs and Defendants had agreed upon a stipulated briefing schedule for Defendants' motion to dismiss the second amended complaint, thereby guaranteeing that

*SurvJustice, Inc. v. DeVos*, No. 18-cv-0535-JSC, Defs' Mem. in Opp. to Second Mot. to Intervene
8

motions as to the second proposed complaint in intervention could not be resolved at the same time as motions as to the second amended complaint. By any standard, the second motion to intervene was egregiously and inexplicably untimely.

### 2. Granting Intervention Now Would Prejudice the Existing Parties.

Granting the motion to intervene now would prejudice the existing parties. A putative intervenor prejudices the other parties if its presence could delay or prolong the case, if it seeks to intervene after substantive and procedural issues have been settled, or if it could expand the scope of the litigation. *See, e.g.*, *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999). Here, the Court has entered an order significantly narrowing the issues in this litigation: the only claim left for litigation is Plaintiffs' contention that the 2017 Guidance violates the Fifth Amendment. Yet the movants seek to dramatically expand the litigation, asserting claims under the Administrative Procedure Act ("APA") (even though the Court has dismissed these clams with prejudice) and other claims that Plaintiffs have elected not to advance. The belated injection of these claims into this case would necessarily delay its orderly resolution. *See LULAC*, 131 F.3d at 1304 ("additional delay" caused by putative intervenor moving long after complaint was filed supported prejudice determination).[4]

### 3. The Movants Have No Excuse for Their Failure to Timely Seek Intervention.

Finally, and most importantly, the movants have no valid excuse for their delay in seeking intervention. *See id.* ("Even more damaging to [putative intervenor's] motion than the twenty-seven month delay itself, however, is its failure adequately to explain . . . the *reason* for its delay."); *Alisal*, 370 F.3d at 923 (affirming denial of intervention where movant "had offered 'no adequate explanation for its delay in

---

[4] The presence of the movants in this litigation would likely delay its orderly progress for another reason as well: the District of Massachusetts litigation reveals that the movants have had significant difficulty satisfying court deadlines. In the *Equal Means Equal* case, Equal Means Equal and NCAVA have missed three consecutive deadlines for filing oppositions to Defendants' motions to dismiss and have accordingly filed three out-of-time motions for retroactive extensions. *See* Myers Decl. Ex. A (*Equal Means Equal* docket sheet), ECF Nos. 11, 15, 29. As a result, the District Court for the District of Massachusetts has ordered counsel for Equal Means Equal and NCAVA to "file an affidavit seeking to show good cause why the court should not impose sanctions pursuant to Federal Rule of Civil Procedure 16(f)(1)(C), including but not limited to requiring her to pay an amount equal to the reasonable expenses, including attorneys' fees, incurred by defendant[s] in opposing the recent untimely motion for an extension." *See* Myers Decl. Ex. E (Dec. 3, 2018 Order). If the movants are permitted to participate in this litigation, it is reasonable to infer that they may have similar difficulties meeting this Court's deadlines.

*SurvJustice, Inc. v. DeVos*, No. 18-cv-0535-JSC, Defs' Mem. in Opp. to Second Mot. to Intervene

9

seeking intervention'" (alterations omitted)); *Smith*, 194 F.3d at 1053 (affirming denial of motion to intervene when putative intervenors failed to advance "any satisfactory explanation or their dilatory motion"). The few reasons the movants do offer are entirely unpersuasive.

First, the movants contend that this case "has become even more urgent and has taken on greater significance because Defendants recently released proposed changes to the Title IX regulations." Mot. at 1 (referencing a notice of proposed rulemaking published submitted to the Federal Register on November 15, 2018, and officially published on November 29, 2018.) The Guidance documents at issue in this litigation, however, indicated on their face that ED intended to issue such regulations. *See, e.g.*, 2017 DCL at 2. The movants cannot seriously contend that they were surprised by the publication of proposed rules when ED has long been transparent about its intention to publish such rules. In any case, any challenge to eventual final rules would be the subject of separate litigation, at such time as those rules become final; the legality of the proposed rules is not at issue in this litigation.

Second, the movants indicate that they "initially refrained from seeking intervention in this matter in the hope Plaintiffs would amend their complaint" to advance the legal theories that they have championed. Mot. at 3; *see also, e.g.*, *id.* at 6 (referring to "Plaintiffs' persistent and inexplicable failure to advance women's right to equal treatment under Title IX"). Yet by the time that Plaintiffs filed their second amended complaint, they had already (1) filed two prior complaints; (2) appeared for oral argument on Defendants' first motion to dismiss; (3) submitted a supplemental memorandum in in opposition to Defendants' first motion to dismiss; and (4) submitted a brief in opposition to the movants' first motion to intervene. Each of these actions made clear that Plaintiffs were not interested in advancing the movants' preferred legal theories. Movants' suggestion that they expected Plaintiffs' second amended complaint to include a litany of legal theories that Plaintiffs had made clear that they did not wish to advance is nonsense.

### C. Intervention of Right under Rule 24(a) Is Unavailable Because the Movants Have No Protectable Interest in This Case, and Because Denying Intervention Would Not Preclude the Movants From Protecting Any Such Interests.

Even putting aside the claim-splitting and timeliness problems, the movants are still not entitled to intervention. To obtain intervention of right under Rule 24(a), the movants must show that they have a "significantly protectable interest relating to the property or transaction that is the subject of the action"

and that "disposition of the action may impair or impede the party's ability to protect that interest." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); *see also* Fed. R. Civ. P. 24(a)(2). The movants do not satisfy those requirements.

### 1.   The Movants Lack Any Interest in This Action.

First, the movants have no interest whatsoever in this action. To intervene of right, an applicant must possess an interest that is "direct, non-contingent, substantial and legally protectable." *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981). "[T]he interest [must] be one which the *substantive* law recognizes as belonging to or being owned by the applicant;" in other words, the proposed intervenor must be "the real party in interest regarding [its] claim." *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004).[5]

As this Court held in its Order of October 1, 2018, "'[A]n organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission [by defendant's actions]; and (2) diversion of its resources to combat [that frustration].'" ECF No. 81 at 10 (quoting *Smith v. Pacific Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004)). In contrast, a "mere interest" in a particular social issue is an inadequate basis for litigation in federal court. *See Sierra Club v. Morton*, 405 U.S. 727 (1972).

The proposed complaint in intervention makes clear that the movants have only a mere interest in the 2017 Guidance, indicating that they are interested, at an extraordinary level of generality, in issues that affect women. Equal Means Equal indicates that its "primary purpose is to advocate for sex/gender equality," Proposed Complaint in Intervention ("PCI") ¶ 9, ECF No. 89, Ex. A; it says nothing about how its organizational mission has been impeded by the 2017 Guidance or what expenditures it has been forced

---

[5] For all the same reasons that the movants lack a legally protectable interest in this case, they also lack Article III standing. "For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). Defendants respectfully maintain that Plaintiffs lack standing as to all their claims, and where neither the existing Plaintiffs nor the proposed intervenors has standing, intervention is foreclosed. *Id.*

to make in response.[6] As for NCAVA, Allies Reaching For Equality, and Safe Campuses LLC,[7] these organizations each indicate that they have "served many women and victims of sex based harms who were subjected to discrimination," PCI ¶¶ 10, 11, 14, but they say not a word about how their organizational missions have been impeded by the 2017 Guidance or what expenditures they have made in response. As for Women Matter and We Are Woman, it appears that both groups are focused on advocating for the ratification of the Equal Rights Amendment, which is not at issue in this lawsuit. *Id.* ¶¶ 12, 13.

The only movant that even attempts to demonstrate a personal injury is the Women's and Children's Advocacy Project at New England Law, Boston. *See* PCI ¶ 8. According to the proposed complaint in intervention, the Women's and Children's Advocacy Project has represented two women who "filed complaints with the Department of Education's Office for Civil Rights before the DeVos Rules were issued," and who are "now subject to the harmful effects of the DeVos Rules." *Id.* For at least three reasons, even with those allegations, the movants have not demonstrated that the Women's and Children's Advocacy Project may intervene here:

- At the outset, based on the movants' description of these women, Defendants suspect that the movants are describing two of the three women who are proceeding pseudonymously in the *Equal Means Equal* litigation (and who support the organizational plaintiffs' claim for standing in that

---

[6] There appear to be two related entities that use the name Equal Means Equal, and it is not apparent which entity is attempting to intervene here. Equal Means Equal, LLC is a California limited liability company that is principally responsible for producing and distributing a documentary film titled *Equal Means Equal*. *See* California Business Search, https://businesssearch.sos.ca.gov (last visited Dec. 3, 2018) (search by type "LP/LLC Name" and search for "Equal Means Equal"); *see also* Equal Means Equal, http://www.equalmeansequal.com (last visited Dec. 3, 2018). Separately, the Heroica Foundation operates a project called Equal Means Equal, *see* Equal Means Equal, Privacy Policy, http://www.equalmeansequal.org/privacy-policy (last visited Dec. 3, 2018) (describing EqualMeansEqual.org as "owned and operated by the Heroica Foundation"). If the movants mean to sue on behalf of this project, the proper party is likely the Heroica Foundation. (It also bears noting that the purpose of the Heroica Foundation's Equal Means Equal project is to "ensure that ALL people are protected by the Constitution by ratifying the Equal Rights Amendment in just one more state." *See* Equal Means Equal, Fuel the Fight for Equal Rights, https://demand.equalmeansequal.org/page/contribute/default (last visited Dec. 3, 2018).)

[7] This organization appears to be a for-profit corporation, which further calls into question how its organizational mission is impeded by the Guidance challenged here. *See* Safety Advisors for Educational Campuses, LLC, http://safecampuses.biz (last visited Dec. 3, 2018); *see also* Georgia Corporations Division, Business Search, https://ecorp.sos.ga.gov/BusinessSearch (last visited Dec. 3, 2018) (search Business Name for "Safety Advisors for Educational Campuses, LLC").

case as well). If that is the case, it would be inappropriate for these women's complaints to be supporting separate claims to standing in two different courts. At a minimum, the Court should require the movants to disclose whether the two women referenced in paragraph 8 of the proposed complaint in intervention in this Court are the same women who are proceeding pseudonymously in the District of Massachusetts case.

- In any case, the mere fact that the Women's and Children's Advocacy Project is representing women who claim to be injured by the 2017 Questions and Answers document does not mean that the Women's and Children's Advocacy Project is *itself* suffering an injury. In concluding that Plaintiffs had standing as to their APA claims, the Court accepted allegations of an "*observed* decrease in student-filed complaints following issuance of the 2017 Guidance." ECF No. 81 at 11. The Court further noted that Plaintiffs "allege that their clients have directly attributed their hesitancy in filing complaints to the 2017 Guidance." *Id.* In other words, the Court accepted Plaintiffs' allegations that they had suffered *organizational* injury because the 2017 Guidance had dissuaded women from using their services, requiring Plaintiffs to make expenditures in response. The Women's and Children's Advocacy Project makes no similar allegations of present organizational injury or of offsetting organizational expenditures, and merely suggests that two individuals may be injured in the future. *See* PCI ¶ 8 (noting that "[b]oth complaints . . . are still pending"). That is insufficient to show present injury to the Women's and Children's Advocacy Project.

- Finally, it is not apparent that the Women's and Children's Advocacy Project, which is a "project of the Center for Law and Social Responsibility at New England Law|Boston," PCI ¶ 8, is an entity that may sue in its own name. The Project does not appear to have any corporate form, nor is it the type of unincorporated association that has sometimes been found capable of suing in its own name. Instead, like other Centers at New England Law, it is an academic project, an opportunity for students to "take your classroom learning and apply it to real-world situations." New England Law Boston, Centers, https://www.nesl.edu/practical-experiences/centers (last visited Dec. 3, 2018). Other unincorporated academic groups cannot go to court in their own name—neither "Civil Procedure 101" nor "Law and Literature" can go to court on its own—and it is far from

clear why the result should be any different for the Women's and Children's Advocacy Project. The proper party (if any) is almost certainly the law school, not one of its academic projects.[8]

Ultimately, the movants' brief reveals that their true interest in this case is not in remedying an injury that they have suffered, but instead in representing the rights of women "as a class." *See* Mot. at 1 (movants "seek to advance claims and arguments on behalf of women as a class"); *id.* at 2 ("[I]intervention of right is warranted because the interests of women as a class are not adequately represented by the Plaintiffs."); *id.* at 3 (Plaintiffs' claims "cannot adequately protect the rights of women as a class"); *id.* at 5 ("DeVos Rules will cause harm to women as a class"); *id.* at 6 ("Equality Advocates again seek to intervene in this mater [sic] for the purpose of advancing claims and theories that best protect the rights and interests of women as a class."); *id.* at 11 ("denial of equal treatment at issue here is a cognizable legal injury to women as a class, whose interests are represented by Equality Advocates"); *id.* at 12 (women as a class are within the zone of interests"); *id.* at 15 ("DeVos Rules obviously affect the rights of women as a class to equal treatment"); *id.* at 18 ("interests of women as a class are not adequately represented by the Plaintiffs"); PCI at 13 (describing "class of individuals affected"). Conspicuously, the movants identify no principle of law that would permit them to advance the rights of women writ large. The movants do not invoke associational standing, *see Airline Serv. Providers Ass'n v. L.A. World Airports*, 873 F.3d 1074, 1078 (9th Cir. 2017), nor do they even allege that they are membership organizations.[9] And despite the movants' repeated references to women "as a class," it also does not appear that they intend to invoke

---

[8] Finally, while the Motion was also filed on behalf of Faculty Against Rape, neither the motion to intervene nor the proposed complaint in intervention says anything about this entity.

[9] The movants passingly refer to *Students for Fair Admissions v. President & Fellows of Harvard College*, No. 1:14-cv-14176-ADB (D. Mass.), in which they say "only an advocacy group serves as the plaintiff." Mot. at 11 n.5. In concluding that Students for Fair Admissions had standing to challenge Harvard's admissions policies, however, Judge Burroughs engaged in a lengthy, considered analysis of whether it satisfied associational standing pursuant to *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977). *See Students for Fair Admissions v. President and Fellows of Harvard Coll. (Harvard Corp.)*, 261 F. Supp. 3d 99 (D. Mass. 2017). Judge Burroughs ultimately found standing by concluding that Students for Fair Admissions had members, that the interests it sought to protect were germane to the organizational purpose, and that neither the claim asserted nor the relief requested required the participation of individual members in the lawsuit. *See generally id.* Insofar as the movants do not invoke associational standing (or plead facts that could give rise to it, including that they are membership organizations in the first place), *Students for Fair Admissions* offers them no support.

*SurvJustice, Inc. v. DeVos*, **No. 18-cv-0535-JSC, Defs' Mem. in Opp. to Second Mot. to Intervene**

Rule 23. The movants might intend to litigate on behalf of women under principles of third party standing, but the proposed complaint in intervention contains no allegations that would suffice to invoke that doctrine: the movants have not alleged that they have a "close relation to the third party" or that there is "some hindrance to the third party's ability to protect his or her own interests." *See Powers v. Ohio*, 499 U.S. 400, 411 (1991).

### 2. Disposition of This Action absent Participation of the Movants Will Not Impair Their Interests.

Even if the movants had an interest in the fate of the 2017 Guidance, which they do not, disposing of this action without their participation would not affect their ability to protect those interests. Nothing about this case prevents the movants from pursuing their own challenge to the 2017 Guidance, and indeed, two of the movants are currently litigating such a challenge in the District of Massachusetts. The pendency of that separate action dramatically undermines the movants' case for intervention here. *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) (impairment prong is not met where a potential intervenor has "other means" or an "alternative forum" to protect its interests). The movants are not parties to this action, and so "would not be exposed to any preclusive effect of the litigation." *Raines v. Seattle Sch. Dist. No. 1*, No. C09-203Z, 2009 WL 3444865, at *1 (W.D. Wash. Oct. 23, 2009); *see also NASD Dispute Resolution, Inc. v. Judicial Council of State of Cal.*, 488 F.3d 1065, 1069 (9th Cir. 2007). Because the disposition of this case will not impair the movants' ability to protect any interests that they possess, intervention as of right is inappropriate.

### D. The Court Should Deny Permissive Intervention under Rule 24(b).

Finally, this Court should deny permissive intervention. In addition to the standing problems described above, the motion to intervene should be denied because the movants do not have "a claim or defense that shares with the main action a common question of law or fact," *see* Fed. R. Civ. P. 24(b)(1)(B); indeed, the movants (as opposed to the "class of women" on behalf of whom they would like to litigate) have no claims in this case at all. Finally, even if the Court looked past these problems, it would still properly exercise its discretion to deny permissive intervention. *See, e.g.*, *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (relevant factors include "the nature and extent of the intervenors' interest" and "their standing to raise relevant legal issues").

## IV. CONCLUSION

Defendants respectfully request that the Court deny the motion to intervene.

Dated: December 4, 2018

Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General

ALEX G. TSE
Acting United States Attorney

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division

/s/ *Benjamin T. Takemoto*
STEVEN A. MYERS
(NY Bar # 4823043)
BENJAMIN T. TAKEMOTO
(CA Bar # 308075)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 305-8648
Fax: (202) 616-8460
E-mail: steven.a.myers@usdoj.gov

*Attorneys for Defendants*