Jennifer A. Reisch (CA Bar No. 223671)
**Equal Rights Advocates**
1170 Market Street, Suite 700
San Francisco, CA 94102
Ph: (415) 621-0672
Fax: (415) 621-6744
Email: jreisch@equalrights.org

Javier M. Guzman*
Robin F. Thurston*
Karianne Jones*
**Democracy Forward Foundation**
1333 H St. NW
Washington, DC 20005
Ph: (202) 448-9090
Fax: (202) 701-1775
Emails: jguzman@democracyforward.org, rthurston@democracyforward.org,
kjones@democracyforward.org

Leecia Welch (CA Bar No. 208741)
Alice Y. Abrokwa*
**National Center for Youth Law**
405 14th Street, 15th Floor
Oakland, CA 94612, and
1313 L Street, NW, Suite 130
Washington, DC 20005
Ph: (510) 835-8098
Fax: (510) 835-8099
Emails: lwelch@youthlaw.org, aabrokwa@youthlaw.org

Emily Martin*
Neena Chaudhry*
Sunu Chandy*
**National Women's Law Center**
11 Dupont Circle, NW, Suite 800
Washington, DC 20036
Ph: (202) 588-5180
Fax: (202) 588-5185
Emails: emartin@nwlc.org, nchaudhry@nwlc.org, schandy@nwlc.org

*admitted pro hac vice

Counsel for Plaintiffs

1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

SURVJUSTICE, INC., *et al.*,                )
                                             )
            Plaintiffs,                      )
                                             )
v.                                           )
                                             )
ELISABETH D. DEVOS, in her official          )
capacity as Secretary of Education, *et al.*,)
                                             )
            Defendants.                      )
                                             )
_____)

Case Number: 3:18-cv-00535-JSC

PLAINTIFFS' OPPOSITION TO MOTION
FOR LEAVE TO INTERVENE AS
PLAINTIFFS

HEARING NOTICED: FEBRUARY 14,
2019, at 9:00 a.m.

DEMAND FOR JURY TRIAL

11

12

13

14

15

16

        Plaintiffs, SurvJustice, Inc., Equal Rights Advocates, and Victim Rights Law Center,

hereby oppose the Motion for Leave to Intervene as Plaintiffs and Proposed Complaint in

Intervention, Dkt. No. 89 ("Intervention Motion"), submitted by Women's and Children's

Advocacy Project, Equal Means Equal, National Coalition Against Violent Athletes, Allies

Reaching for Equality, Women Matter, We Are Woman, and SAFE Campuses, LLC

(collectively "Applicants").

17

18

19

20

21

22

23

24

25

26

27

28

        Plaintiffs and Applicants share the same ultimate objective: to vacate as unlawful the

U.S. Department of Education policy documents issued by Defendants in 2017 regarding the

obligations of schools that receive federal funds under Title IX of the Education Amendments

Act of 1972 ("Title IX") to prevent and redress sexual harassment, including sexual violence (the

"2017 Title IX Policy").  Applicants, though, would pursue different legal claims to accomplish

that objective.  But that difference of opinion is not a ground for intervention.  Permitting

Applicants to intervene at this time—nearly a year after the Complaint was filed, after one

decision by the Court narrowing Plaintiffs' claims, and after briefing on a second motion to

dismiss by Defendants will be completed—would prejudice Plaintiffs because it would introduce

new parties and new claims (some of which the Court has already opined on) and thus delay

resolution of the case on the merits. Instead of intervention, Applicants' recourse if they wish to

Plaintiffs' Opposition to Motion to Intervene; Case No.: 3:18-cv-00535-JSC        Page: 2

litigate particular claims is to file their own lawsuit, something they are free to do regardless of this litigation.  Indeed, two Applicants (represented by the same counsel) are simultaneously pursuing such litigation in the District of Massachusetts.  Applicants' motion should be denied.

## I.   Background.

Plaintiffs filed this lawsuit on January 25, 2018.  Through this litigation, Plaintiffs allege that the 2017 Title IX Policy issued by Defendants on September 22, 2017 is unlawful and should be vacated.[1]  Plaintiffs originally asserted three claims as the basis for such relief: (1) a violation of the Administrative Procedure Act, (2) an ultra vires action, and (3) a violation of the Equal Protection Guarantee of the Fifth Amendment.

Defendants moved to dismiss the First Amended Complaint on May 2, 2018, under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Defs.' Mot. to Dismiss, Dkt. No. 40.  After oral argument and supplemental briefing regarding whether the challenged policy was final agency action, the Court issued a decision in which it determined that Plaintiffs had adequately alleged Article III standing, dismissed with prejudice Plaintiffs' APA claim for lack of final agency action, and dismissed with leave to amend Plaintiffs' remaining claims.  *See* Order, Dkt. No. 81 (regarding Defendants' Motion to Dismiss).

Plaintiffs filed a Second Amended Complaint on October 31, 2018.  *See* Dkt. No. 86. Defendants' anticipated Motion to Dismiss is due December 14, 2018.  *See* Dkt. No. 88. Briefing on that motion is scheduled to conclude by February 1, 2018, and a hearing is scheduled for February 14, 2018.  *Id.*

Applicants' involvement in this matter began in June 2018 when many of them filed a motion to file an *amicus curiae* brief.  *See* Dkt. No. 46.  Neither Plaintiffs nor Defendants opposed this motion and the Court granted it on June 29, 2018.  *See* Order, Dkt. No. 57.

---

[1] *See* U.S. Dep't of Educ., Ltr. from Ass't Sec'y Candice Jackson (Sept. 22, 2017), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf ("2017 Dear Colleague Letter"); U.S. Dep't of Educ., Q&A on Campus Sexual Misconduct (Sept. 22, 2017), https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf ("2017 Q&A") (collectively, "2017 Title IX Policy").

1    Applicants previously filed a motion to intervene on August 31, 2018, which Plaintiffs and

2    Defendants both opposed.  *See* Dkt. Nos. 71, 74, 75.  Applicants withdrew that motion after the

3    Court's decision on Defendants' first motion to dismiss.  *See* Dkt. No. 85.

4         One of the Applicants, Equal Means Equal, filed a separate lawsuit against two of the

5    three defendants named in this case in the District of Massachusetts on October 19, 2017,

6    challenging the 2017 Title IX Policy under different theories of illegality than are being pursued

7    by Plaintiffs in the present matter.  *See Equal Means Equal v. Dep't of Educ.*, No. 17-cv-12043-

8    MLW (D. Mass).  Another of the Applicants, the National Coalition Against Violent Athletes,

9    has joined that litigation as a plaintiff.  *See id.,* Order, Dkt. No. 23.  The parties in that matter

10   currently are briefing the government's motion to dismiss.  *See id., e.g.* Dkt. Nos. 27, 37.

11        Applicants now seek to intervene[2] in this matter to advance the same theories regarding

12   the illegality of the 2017 Title IX Policy that the Equal Means Equal plaintiffs are pursuing in the

13   Massachusetts case.  Both Applicants and Plaintiffs seek the same relief — vacatur of the policy.

14   **II.    Legal Standard**

15        Federal Rule of Civil Procedure 24 governs motions for intervention: "An applicant for

16   intervention as of right under Rule 24(a)(2) must establish four elements: (1) that the prospective

17   intervenor's motion is timely; (2) that the would-be intervenor has a significantly protectable

18   interest relating to the subject of the action; (3) that the intervenor is so situated that the

19   disposition of the action may as a practical matter impair or impede the intervenor's ability to

20   protect that interest; and (4) that such interest is inadequately represented by the parties to the

21   action."  *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (alterations adopted)

22   (citation omitted).  The applicant bears the burden of establishing these elements.  *Id*.

23        "[A] court may grant permissive intervention [under Rule 24(b)] where the applicant for

24   intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the

25   applicant's claim or defense, and the main action, have a question of law or a question of fact in

26

27   _____

28   [2] Applicants did not seek Plaintiffs' consent on their motion to intervene, nor on any of their
     prior motions.

common." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (citation omitted). "As with motions for intervention as of right, a finding of untimeliness defeats a motion for permissive intervention." *Id.* (citation omitted).

### III.   Argument

Applicants have not met the standard for intervention, either as of right or permissively. First, the Motion is not timely.[3]  Applicants have been aware of this action and the legal theories advanced by Plaintiffs since this matter was filed nearly a year ago.  Permitting intervention now, when the case may soon proceed past threshold pleading issues to the merits, would likely cause delay and thereby prejudice Plaintiffs' ability to obtain prompt relief.  Second, disposition of this matter will not impair Applicants' interests, in part because they are (or could easily be) already advancing those interests in an alternate forum.  Finally, Applicants' interests are adequately represented because Plaintiffs share the same ultimate interest—vacating the 2017 Title IX Policy.

### A.   Applicants do not meet the standard for intervention as of right.

#### 1.   Intervention is untimely.

The motion should be denied because Applicants have been aware of Plaintiffs' legal theories since Plaintiffs filed this matter last January.  Permitting intervention now to add additional legal theories and claims, after one round of briefing on a motion to dismiss narrowed the issues before the Court and another round of briefing will begin shortly, would unnecessarily delay the case and prejudice the existing parties.

"Timeliness is determined by the totality of the circumstances facing would-be intervenors, with a focus on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *L.A. Unified Sch. Dist.*, 830 F.3d at 854 (citation omitted).  "In analyzing these factors, however, courts should bear in mind that the crucial date for assessing the timeliness of a

---

[3] Plaintiffs do not dispute the second element of intervention as of right — that Applicants have a significant protectable interest relating to the subject of this action.

motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Id*. (citation omitted).

Applicants have waited too long to claim a right to intervene now. Applicants' counsel (who was at all relevant times also counsel in the Massachusetts case for the lead Applicant in this case) has been aware of Plaintiffs' legal theories since Plaintiffs filed their complaint. On January 28, 2018, days after the case was initiated, she tweeted disagreement with the arguments made in the complaint, which disagreement is reflected in the legal arguments Applicants now seek to inject into this litigation.[4] Applicant Equal Means Equal retweeted this assertion by Applicants' counsel on the same day.[5] In addition, Applicants provide no justification for their delay in filing the motion to intervene. The lengthy delay—whether measured from the date of their first motion to intervene (more than eight months after Plaintiffs filed suit) or the current motion (nearly one year after Plaintiffs filed suit)—requires denial of their motion. *League of United Latin Am. Citizens*, 131 F.3d at 1304 ("any substantial lapse of time weighs heavily against intervention." (citation omitted)).

 Further, Applicants as a group have been aware of Plaintiffs' legal theories at least since they filed their motion to participate as *amicus curiae* in June. *See* Dkt. No. 46. Applicants' attempt to justify the decision to seek to participate as an *amicus* rather than as an intervenor— that they hoped Plaintiffs would amend their complaint to pursue the legal arguments advanced in the *amicus* brief—is unpersuasive. *See* Intervention Motion at 3-4. Plaintiffs have taken no action that would suggest they would do so, nor did the Court's order on the motion to dismiss contemplate such a broadening of the litigation, as the order permitted amendment as to only two of Plaintiffs' claims. *See* Order, Dkt. No. 81 at 21.

Rather than wait and see whether Plaintiffs would adopt their reasoning, Applicants had a "duty to act as soon as [they] '[knew] or ha[d] reason to know that [their] interests might be

---

[4] Wendy Murphy (@WMurphyLaw), Twitter, https://twitter.com/WMurphyLaw/status/957714797981765632 (Jan. 28, 2017).
[5] Equal Means Equal (@EqualMeansEqual), Twitter, https://twitter.com/EqualMeansEqual/status/957715729142419456 (Jan. 28, 2017).

Plaintiffs' Opposition to Motion to Intervene; Case No.: 3:18-cv-00535-JSC        Page: 6

adversely affected by the outcome of the litigation.'" *GemCap Lending I, LLC v. Taylor*, 677 F. App'x 351, 352 (9th Cir. 2017) (citing *United States v. Oregon*, 913 F.2d 576, 589 (9th Cir. 1990)) ("A party seeking to intervene must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation."). As explained below, *see infra* Sections III.A.2, 3, this matter will not negatively affect Applicants' interests; however, knowing that the lawsuit *potentially* affected their interests, Applicants were not "permitted to wait on the sidelines hoping that another party or the court would step up to the plate for [them]." *GemCap Lending I, LLC*, 677 F. App'x at 352 (citing *Oregon*, 913 F.2d at 589); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1916, 539-40 (3d ed. 2007) ("When the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention.").

Having delayed significantly, Applicants now seek to assert four claims under the APA—notwithstanding the Court's ruling, which currently governs this case, that the 2017 Title IX Policy is not a final agency action—and to inject several entirely new legal theories into the litigation, including claims based on different interpretations of Title IX, the Campus SaVE Act, the Tenth Amendment, and the Spending Clause. *See generally* Intervention Motion. This would prejudice Plaintiffs. As it has done in the District of Massachusetts action, the government is likely to move to dismiss these claims pursuant to Rule 12, requiring a *third* round of briefing on threshold issues.[6] Unless the Court were to bifurcate the litigation—permitting Plaintiffs' claims to proceed to the merits while the expected motion to dismiss Applicants' claims is briefed—the timeframe for reaching resolution of this litigation would likely be significantly delayed if intervention were granted. This would in turn delay Plaintiffs' hoped for vacatur of the 2017 Title IX Policy and accompanying relief from its ongoing harm to students and Plaintiffs. *See Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) (where applicants for intervention sought to "inject new issues and matters" beyond the scope of existing claims and

---

[6] A third round of briefing would likely be required because briefing on Defendants' planned motion to dismiss the Second Amended Complaint is scheduled to be completed before Applicants' motion is resolved.

defenses, "thus expanding the scope of litigation and causing delay," the district court's conclusion that intervention would prejudice the existing parties was "a sound one").

### 2. Disposition of this litigation will not impair Applicants' abilities to protect their interests.

Disposition of the litigation will not impair Applicants' interest in vacating the 2017 Title IX Policy. Whether resolution of an action will "impair or impede [a proposed intervenor's] ability to safeguard their protectable interest is considered as a practical matter." *L.A. Unified Sch. Dist.*, 830 F.3d at 862. However, intervention is typically improper where intervenors have an "alternative forum where they can mount a robust defense." *Cali. ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006); *see also Nooksack Indian Tribe v. Zinke*, 321 F.R.D. 377, 381 (W.D. Wash. 2017).

Should Plaintiffs succeed in this litigation, the 2017 Title IX Policy will be vacated, to the benefit of both Plaintiffs and Applicants. While Applicants repeatedly argue that Plaintiffs do not seek "fully equal treatment," *e.g.* Intervention Motion at 3, the *actual relief* sought by both the Applicants and Plaintiffs is vacatur of the 2017 Title IX Policy. *See id.* at 21. Although Applicants advance alternate theories, the scope of the litigation, even under Applicants' view, is limited to a challenge to the 2017 Title IX Policy. *United States v. City of L.A.*, 288 F.3d 391, 402–03 (9th Cir. 2002) (where applicant shares "same objective" with existing party but differs in strategy, intervention as a matter of right is not justified). Even if Plaintiffs prevail in this Court on a ground disfavored by Applicants, Applicants may raise all of their claims of illegality in an alternative forum and, if successful, seek their own injunctive and declaratory relief tailored to their preferences.

Likewise, if Plaintiffs do not succeed, Applicants will still have the opportunity to assert their alternate theories regarding the Policy's illegality in the existing litigation two of them currently are pursuing in the District of Massachusetts. The District of Massachusetts litigation is well underway, meaning that Applicants will likely have their alternate theories adjudicated in that forum sooner than they would before this Court. Further, this matter is not a class action. No decision by this Court would be binding on Applicants in that, or any other, forum. Where

1    an applicant for intervention may protect its interests in an alternate forum, courts typically

2    determine that intervention is not required.  *Lockyer*, 450 F.3d at 442; *United States v. Alisal*

3    *Water Corp.,* 370 F.3d 915 (9th Cir. 2004) (separate district court process for approving claims

4    against debtor was sufficient to protect proposed intervenor/creditor interest); *City of L.A.,* 288

5    F.3d 391 (possibility of individual suits against police officers was sufficient to protect interests

6    of community groups seeking to protect members from unconstitutional police practices); *Shea*

7    *v. Angulo,* 19 F.3d 343, 347 (7th Cir. 1994) (concluding that no impairment was shown where

8    proposed intervenor could bring suit to recover his interest); *Greene v. United States*, 996 F.2d

9    973, 977–78 (9th Cir. 1993); *Commodity Futures Trading Comm'n ("CFTC") v. Heritage*

10   *Capital Advisory Servs.,* 736 F.2d 384, 387 (no impairment where claim could be brought "in a

11   forum other than the main CFTC enforcement action."); *Zicherman v. Korean Airlines Inc.,* 146

12   F.R.D. 61, 63 (S.D.N.Y. 1992) (intervention as of right denied where applicant could have

13   asserted claims in applicants' own existing litigation).  The Court should reach the same

14   conclusion here.

### 3.   Applicants' interests are adequately represented in this action.

16        As set forth above, both Plaintiffs and Applicants seek to have the 2017 Title IX Policy

17   vacated.  This shared ultimate objective weighs against granting intervention as of right, because

18   it makes it apparent that Applicants' interests are adequately represented in this action.  Under

19   well-settled precedent in this circuit, "[w]hen an applicant for intervention and an existing party

20   have the same ultimate objective, a presumption of adequacy of representation arises." *Prete v.*

21   *Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) (citation omitted).  Mere differences in strategy or a

22   rooting interest in having a particular legal theory vindicated do not change this presumption. *See*

23   *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996), *as amended on denial of*

24   *reh'g* (May 30, 1996).

25        Applicants do not explain what ultimate objective they seek that is not shared by

26   Plaintiffs, but instead focus on the difference in each group's respective legal theories as to why

27   the 2017 Title IX Policy is unlawful.  While Applicants may prefer to advance different or

28

Plaintiffs' Opposition to Motion to Intervene; Case No.: 3:18-cv-00535-JSC        Page: 9

1    additional legal theories, the actual relief they seek—indeed the scope of the case—is vacatur of

2    the 2017 Title IX Policy.  Applicants have made no showing that Plaintiffs will not zealously

3    pursue this objective.  The Motion therefore should be denied because Applicants will not be

4    injured by pursuing their own case, but Plaintiffs will be prejudiced by delay in their current

5    litigation if the motion is granted.

**B.  Applicants also should not be granted permissive intervention.**

"[A] court may grant permissive intervention [under Rule 24(b)] where the applicant for

intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the

applicant's claim or defense, and the main action, have a question of law or a question of fact in

common." *League of United Latin Am. Citizens*, 131 F.3d at 1308 (citation omitted).  "As with

motions for intervention as of right, a finding of untimeliness defeats a motion for permissive

intervention."  *Id*. (citation omitted).  Indeed, the untimeliness of Applicants' motion weighs

even more heavily against granting their motion for permissive intervention.  The Ninth Circuit

has said, "[i]n the context of permissive intervention, however, we analyze the timeliness

element more strictly than we do with intervention as of right."  *Id*.  As explained above,

Applicants' Motion is untimely, and therefore should be denied.[7]

**IV. Conclusion**

Plaintiffs respectfully request that the Motion for Leave to Intervene be denied.

---

[7] Plaintiffs take no position on whether Applicants meet the other elements of permissive intervention.

Respectfully submitted,                                    Date: December 4, 2018


/s/ Robin F. Thurston
Alice Y. Abrokwa*
Leecia Welch (CA Bar No. 208741)
**National Center for Youth Law**
405 14th Street, 15th Floor
Oakland, CA 94612, and
1313 L Street, NW, Suite 130
Washington, DC 20005
Ph: (510) 835-8098
Fax: (510) 835-8099
Emails: lwelch@youthlaw.org, aabrokwa@youthlaw.org

Jennifer A. Reisch (CA Bar No. 223671)
**Equal Rights Advocates**
1170 Market Street, Suite 700
San Francisco, CA 94102
Ph: (415) 621-0672
Fax: (415) 621-6744
Email: jreisch@equalrights.org

Javier M. Guzman*
Robin F. Thurston*
Karianne Jones*
**Democracy Forward Foundation**
1333 H St. NW
Washington, DC 20005
Ph: (202) 448-9090
Fax: (202) 701-1775
Emails: jguzman@democracyforward.org, rthurston@democracyforward.org,
kjones@democracyforward.org

Emily Martin*
Neena Chaudhry*
Sunu Chandy*
**National Women's Law Center**
11 Dupont Circle, NW, Suite 800
Washington, DC 20036
Ph: (202) 588-5180
Fax: (202) 588-5185
Emails: emartin@nwlc.org, nchaudhry@nwlc.org, schandy@nwlc.org

*admitted pro hac vice
Counsel for Plaintiffs