Jennifer A. Reisch (CA Bar No. 223671)
**Equal Rights Advocates**
1170 Market Street, Suite 700
San Francisco, CA 94102
Ph: (415) 621-0672
Fax: (415) 621-6744
Email: jreisch@equalrights.org

Javier M. Guzman*
Robin F. Thurston*
Karianne Jones*
**Democracy Forward Foundation**
1333 H St. NW
Washington, DC 20005
Ph: (202) 448-9090
Fax: (202) 701-1775
Emails: jguzman@democracyforward.org,
rthurston@democracyforward.org,
kjones@democracyforward.org

Leecia Welch (CA Bar No. 208741)
Seth Galanter**
Alice Y. Abrokwa*
**National Center for Youth Law**
405 14th Street, 15th Floor
Oakland, CA 94612, and
1313 L Street, NW, Suite 130
Washington, DC 20005
Ph: (510) 835-8098
Fax: (510) 835-8099
Emails: lwelch@youthlaw.org,
sgalanter@youthlaw.org,
aabrokwa@youthlaw.org

Emily Martin*
Neena Chaudhry*
Sunu Chandy*
**National Women's Law Center**
11 Dupont Circle, NW, Suite 800
Washington, DC 20036
Ph: (202) 588-5180
Fax: (202) 588-5185
Emails: emartin@nwlc.org,
nchaudhry@nwlc.org, schandy@nwlc.org

*admitted pro hac vice
** pro hac vice application pending

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SURVJUSTICE, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> ELISABETH D. DEVOS, in her official capacity as Secretary of Education, et al, <br><br> Defendants. | Case Number: 3:18-cv-00535-JSC <br><br> PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR RECONSIDERATION <br><br> HEARING NOTICED: April 4, 2019, 2:00 p.m., San Francisco Courthouse, Courtroom F - 15th Floor, 450 Golden Gate Avenue, San Francisco, CA, 94102 <br><br> DEMAND FOR JURY TRIAL |

# TABLE OF CONTENTS

I.   STATEMENT OF ISSUES ................................................................................................ 1

II.  STANDARD OF REVIEW .............................................................................................. 2

III. STATEMENT OF RELEVANT FACTS ......................................................................... 3

IV.  ARGUMENT .................................................................................................................... 4

   A.  *Gill* holds that non-binding policies can have legal consequences under *Bennett*. ....... 5

   B.  *Gill* holds that practical effects alone can render an agency action final. ..................... 6

V.   CONCLUSION ............................................................................................................... 10

Pursuant to Federal Rule of Civil Procedure 54(b), Plaintiffs SurvJustice, Inc., Equal Rights Advocates, and Victim Rights Law Center hereby move for reconsideration of the Court's October 1, 2018 Order granting Defendants' Motion to Dismiss Plaintiffs' Administrative Procedure Act ("APA") claims (Dkt. No. 81).

## NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

PLEASE TAKE NOTICE that on April 4, 2019, at 2:00 p.m., before the Honorable Jacqueline Scott Corley, Courtroom F, 15th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiffs SurvJustice, Inc., Equal Rights Advocates, and Victim Rights Law Center will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 54(b) for an order (1) reconsidering and modifying its prior order (Dkt. No. 81) that dismissed with prejudice Plaintiffs' APA claims against Defendants U.S. Department of Education, Secretary Elisabeth DeVos, and Assistant Secretary Kenneth Marcus (collectively, "ED"); and (2) permitting Plaintiffs to file an amended complaint reinstating their APA claims.

Plaintiffs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings filed in this action, any matter that may be judicially noticed, and any other matter raised in oral argument in support of this motion. Defendants' response to this motion must be filed with the Court and served on counsel for Plaintiffs by March 12, 2019. *See* Dkt. No. 106.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF ISSUES

After this Court's Order dismissing Plaintiffs' APA claims with prejudice on the ground that the challenged agency policy is not "final agency action" (Dkt. No. 81), the Ninth Circuit issued *Gill v. United States Department of Justice*, 913 F.3d 1179, 1184 (9th Cir. 2019), which clarifies what actions constitute "final agency action" under *Bennett v. Spear*, 520 U.S. 154 (1997). In light of this intervening decision, this Court granted Plaintiffs leave to file a motion for reconsideration. *See* Dkt. Nos. 103, 104.

## II. STANDARD OF REVIEW

"A district court's power to rescind, reconsider, or modify an interlocutory order is derived from the common law, not from the Federal Rules of Civil Procedure." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001). This "inherent procedural power to reconsider," *id*. at 885 (internal quotation marks and citation omitted), is acknowledged in Federal Rule of Civil Procedure 54(b), which provides that "any order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims."

The federal rules do not set forth a standard for when courts should reconsider non-final orders; a court may do so for any reason "seen by it to be sufficient." *Santa Monica Baykeeper*, 254 F.3d at 885 (internal quotation marks and citation omitted). Reconsidering an interlocutory decision does not require the type of showing needed under Federal Rules 59 or 60 for alteration of a final judgment. *See Persistence Software, Inc. v. Object People, Inc.*, 200 F.R.D. 626, 627 (N.D. Cal. 2001) ("The standard for granting a motion to vacate under Rule 54(b) is less rigid than that under Rule 60(b) governing vacation of final judgments."). "[I]nterlocutory judgments are not brought within the restrictions of [Rule 60], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." Fed. R. Civ. P. 60(b) Advisory Committee Notes, 1946 Amendment.

As shown below, the Ninth Circuit's intervening, controlling decision in *Gill* provides ample grounds for this Court to reconsider the application of the test for finality under the APA to the facts of this case, particularly given the "close call" of the Court's prior finality determination. Dkt. No. 81 at 17. "The authority of district courts to reconsider their own orders before they become final . . . allows them to correct not only simple mistakes, but also decisions based on shifting precedent, rather than waiting for the time-consuming, costly process of appeal." *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000).

### III. STATEMENT OF RELEVANT FACTS

In September 2017, ED issued a Dear Colleague Letter and set of Questions and Answers ("2017 Title IX Policy" or "Policy") establishing a new policy with respect to how schools must treat claims of sexual harassment under Title IX of the Education Amendments Act of 1972 ("Title IX"). Plaintiffs sued to vacate the Policy, asserting a cause of action under the APA, in addition to equal protection and *ultra vires* claims. *See* Dkt. No. 23. Defendants moved to dismiss the APA claims, arguing that the Policy is not final agency action. *See* Dkt. No. 40.[1]

In determining whether the Policy is final agency action, the Court applied the two-step test under *Bennett*: first, that the action "mark the consummation of the agency's decisionmaking process," and, second, that "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Dkt. No. 18 at 16 (citing 520 U.S. at 177-78 (internal quotation marks and citations omitted)). The Court found the first prong satisfied. Dkt. No. 81 at 17.

With regard to the second prong, Plaintiffs had argued, among other reasons, that the Policy is final agency action because "if schools do not comply with the Department's guidance, they risk an enforcement action by [ED's Office for Civil Rights] and loss of federal funding." *Id*. Plaintiffs also argued "that some schools have responded accordingly, citing the 2017 Guidance as the impetus for revising their Title IX policies." *Id.* at 17-18. Defendants argued that the Policy "constitutes a bare statement of the agency's opinion and does not produce legal consequences." *Id*. at 18 (internal quotation marks and citations omitted).

This Court noted that the question of whether the Policy satisfied the second *Bennett* prong was a "close call," but held that it does not. *Id*. at 17. First, the Court held that the text of the Policy "does not suggest that schools are immediately required to comply" and "merely

---

[1] Defendants also sought dismissal of the APA claims based on their arguments that Plaintiffs lack standing and that Plaintiffs have another adequate remedy in court. *See* Dkt. No. 40. The Court held that Plaintiffs do have standing to assert their APA claims, and did not address the latter argument. *See* Dkt. No. 81 at 14, 20.

provides 'information'" for schools regarding how ED will assess compliance with Title IX. *Id.* at 18. Second, the Court held that, while Plaintiffs have plausibly alleged that some schools have changed their policies in response to the 2017 Title IX Policy, "voluntarily changing a policy in response to an agency's nonbinding enforcement guidance is not the same as being required to do so by the guidance itself." *Id.* Last, the Court held that the language of the Policy does not create new obligations for schools, which could choose not to follow the Policy without facing legal consequences as long as they complied with Title IX and its implementing regulations. *Id.* Accordingly, the Court held that the Policy "does not produce legal consequences," *id.*, and dismissed Plaintiffs' APA claim with prejudice based on the conclusion that the Policy fails to satisfy the second *Bennett* prong, *id.* at 21. The Court dismissed Plaintiffs' remaining claims without prejudice, and Plaintiffs filed an amended complaint on those claims. *See* Dkt. No. 86.[2]

## IV. ARGUMENT

*Gill* warrants reconsideration of this Court's Order dismissing Plaintiffs' APA claims for lack of finality. *Gill* involved a federal anti-terrorism program that sought to collect and share Suspicious Activity Reports ("SARs") among participating law enforcement agencies, including state and local agencies, through an information repository. *Gill*, 913 F.3d at 1182. The Department of Justice, through its Program Manager, issued a "Functional Standard" that defined what constituted "suspicious activity" sufficient for a participant to include a report in the information repository. *See id.* at 1182-84. Plaintiffs, five U.S. citizens who were the subjects of SARs, challenged the Functional Standard under the APA. *Id.* at 1183-84.

The government did not challenge the first *Bennett* prong, but argued that the Functional Standard did not satisfy the second *Bennett* prong because it "'merely provides procedural guidelines for [agencies'] voluntary participation' and does not impose binding obligations." *Id.*

---

[2] Consistent with *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc), Plaintiffs did not repeat their APA claim in their amended complaint.

at 1184 (alteration in original). The Ninth Circuit disagreed, holding that the Functional Standard "constitutes final agency action because it has legal and practical effects." *Id.* at 1185. An application of *Gill* to the facts of this case confirms that the 2017 Title IX Policy is indeed final agency action under the APA.

    **A.** ***Gill* holds that non-binding policies can have legal consequences under Bennett.**

In light of the new binding authority from the Ninth Circuit in *Gill*, which held that non-binding policies can result in legal consequences under *Bennett*, Plaintiffs request that this Court reconsider its determination that the 2017 Title IX Policy does not produce legal consequences.

In holding that the Functional Standard produces legal consequences, *Gill* extends the holding of *Oregon Natural Desert*. In that case, as described by the *Gill* court, the Ninth Circuit held that an agency's *instructions* to permit holders outlining restrictions on their right to graze livestock "had legal consequences because the Forest Service could take enforcement actions against a non-complying permittee." 913 F.3d at 1185 (citing *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 988, 990 (9th Cir. 2006)). Loss of a legally-required grazing permit was a legal consequence establishing finality in *Oregon Natural Desert*. *See id. Gill* broadens this precedent by holding that even loss of membership in a voluntary program based on a breach of a user agreement, rather than a statute or regulation, is a *legal* consequence under *Bennett* where that agreement requires that the participant comply with agency policies. *See id.* Despite describing the Functional Standard as a policy that neither creates new obligations nor penalizes law enforcement agencies for non-compliance absent their voluntary participation, *Gill* holds that this policy results in a legal consequence because, as set forth in the user agreement, a failure to comply could trigger membership revocation. *See id*.

As with the user agreement in *Gill*, schools sign agreements (in the form of assurances) agreeing not only to comply with the Title IX statute and regulations, but also with policies like the challenged guidance. *See* U.S. Dep't of Educ., Office for Civil Rights, *Assurance of*

*Compliance*, https://www2.ed.gov/about/offices/list/ocr/letters/boy-scouts-assurance-form.pdf (stating that "the Department may seek a court order requiring compliance" with "regulations, guidelines, and standards," not just the statute); U.S. Dep't of Educ., *Revised Assurances Template*, https://www2.ed.gov/admins/lead/account/stateplan17/reviseded18100576.pdf, at 6-7 ¶¶ 6, 18 (agreement to comply with Title IX and with "all applicable requirements of all other Federal laws, executive orders, regulations, and policies governing this program."). "Regardless of an agency's characterization" of a policy or the particular label the federal agency chooses to use in describing its action, *Gill* makes clear that any consequence for "violating various *policies*" is a legal consequence under *Bennett*. 913 F.3d at 1184-85 (emphasis added). *Gill* holds that even a non-binding agency policy that applies to participants of a voluntary program has legal consequences because of the participants' agreement to comply with such policy. This shift in controlling precedent likewise compels a determination that the 2017 Title IX Policy produces legal consequences and thus meets the test for finality under *Bennett*.

### B. *Gill* holds that practical effects alone can render an agency action final.

The Ninth Circuit's holding in *Gill* that the *practical* effects of a federal agency action can, by themselves, also satisfy the second *Bennett* prong warrants reconsideration of this Court's determination that the Policy is not final agency action because it does not produce immediate *legal* consequences. In holding that the Functional Standard is "also final agency action because of its practical effects," 913 F.3d at 1185, *Gill* extends the holding in *Havasupai Tribe v. Provencio*, 906 F.3d 1155 (9th Cir. 2018). As the *Gill* court describes *Havasupai*, a "Mineral Report" by the U.S. Forest Service that determined whether mining companies had valid existing rights to operate on certain land was "a practical requirement to the continued operation of a mine—and therefore final agency action—because the parties understood that mine operations would not resume until the Mineral Report's determination of valid existing rights was completed." 913 F.3d at 1185 (internal quotation marks and citation omitted). The

agency's determination in *Havasupai* was final, according to *Gill*, because the mining company as a practical matter would not resume operations until the Mineral Report issued. *See id.* Building upon that outcome, *Gill* holds that even if an agency action's "practical effects are contingent on a future event," i.e., the mining company's decision not to resume operations until the issuance of the Mineral Report, "[a]n agency action can be final." *Id.*

*Gill* broadens *Havasupai*'s holding by applying it to a federal agency action where the only consequence for future noncompliance with a non-binding standard was possible exclusion from a voluntary program. *See id.* Because the law enforcement agencies that chose to participate in the information-sharing program in *Gill* agreed that the Department of Justice could revoke their membership if they did not comply with the Functional Standard going forward, once a law enforcement agency joined the program, "there was the immediate understanding that . . . analysts would conform to the Functional Standard" when reviewing the SARs and submitting them to the repository. *Id.* The Ninth Circuit held that the participants' understanding that the Department would review their future SARs in accordance with the Functional Standard had such practical effect on the participants, as in *Havasupai*, that the Functional Standard constitutes final agency action. *Id.*

So too here. In this case, this Court determined that the 2017 Title IX Policy does not satisfy *Bennett*'s second prong on the ground that it does not produce legal consequences. *See* Dkt. No. 81 at 18. But the intervening *Gill* decision makes clear that the Policy's practical effects alone establish finality. In *Gill*, the Functional Standard provided law enforcement agencies with information about how the federal agency would determine whether their SARs complied with the requirements for submission to the information repository. *See Gill*, 913 F.3d at 1183. Not only does the 2017 Title IX Policy provide schools with information about how ED's Office for Civil Rights "will assess a school's compliance with Title IX," Dkt. No. 81 at 18 (citing 2017 Title IX Policy), but the Policy also provides schools with various "determination[s] of valid

existing rights" under Title IX, as described in *Gill*, 913 F.3d at 1185 (internal citation omitted). For example, among others, the Policy communicates ED's current determination that schools have a right under Title IX to use the clear and convincing standard for evaluating a claim of sexual harassment and that schools have a right under Title IX to allow appeals solely by the responding party. *See* Dkt. No. 81 at 6 (citing 2017 Title IX Policy).

Just as the state and local law enforcement agencies in *Gill* understood as a practical matter that their SARs would be evaluated by the federal government consistent with the Functional Standard (and thus conformed their behavior accordingly), schools that are subject to Title IX understand as a practical matter that ED will evaluate their compliance with Title IX consistent with the 2017 Title IX Policy and its determination of their existing rights. Indeed, ED has already amended a resolution letter with at least one university in order to make its enforcement actions consistent with the 2017 Title IX Policy.[3] Based on that practical understanding, multiple schools have changed their own Title IX policies to comply with ED's Policy, as both Defendants and this Court have acknowledged. *See* Dkt. No. 48 at 9; Dkt. No. 81 at 18 ("Plaintiffs plausibly allege that some schools have" changed their "policies in response to the 2017 Guidance"). Even if this Court concludes that the Policy does not produce legal consequences under *Bennett*—although the Policy *does* satisfy this test under current, controlling Ninth Circuit law, *see supra* Section IV(A)—the Policy's practical effects independently

---

[3] *See* Jeremy Bauer-Wolf, *The 'Confusing' Case of UNC's Title IX Violations*, INSIDE HIGHER ED (June 27, 2018), https://www.insidehighered.com/news/2018/06/27/unc-found-have-violated-title-ix-multiyear-investigation ("Department spokeswoman Liz Hill said that OCR is in the process of correcting its correspondence with the university to let it know its policy is consistent with the department's temporary rules" regarding one-sided appeals). *Compare* U.S. Dep't of Educ., OCR Complaint No. 11-13-2051 Letter of Findings, at 10 (June 25, 2018), https://www.unc.edu/wp-content/uploads/2018/06/FINAL-R-LOF-UNC-Chapel-Hill-11132051-PDF-1.pdf (determining that the university's policy providing an appeal only to one party "is not equitable"), *with* U.S. Dep't of Educ., OCR Complaint No. 11-13-2051 Amended Letter of Findings, at 1 n.1 (June 28, 2018), https://www.unc.edu/wp-content/uploads/2018/07/FINAL-AMENDED-R-LOF-UNC-Chapel-Hill-11132051-PDF_Redacted.pdf (amending prior Letter of Findings to "clarif[y]" that educational institutions "may choose to allow an appeal . . . solely by the respondent or responding party . . . ").

Plaintiffs' Notice of Motion and Motion for Reconsideration; Case No.: 3:18-cv-00535-JSC
Page: 8

establish finality pursuant to *Gill.*

These practical effects are not lessened by the fact that the Policy asserts that any enforcement action by ED will be taken pursuant to Title IX and its implementing regulations. *See* Dkt. No. 81 at 18 (citing 2017 Title IX Policy). As an initial matter, ED has already modified at least one enforcement action so that it aligns with the Policy, without reference to any Title IX statutory or regulatory provisions. *See supra* n.3. Moreover, in *Gill*, any enforcement action would be taken pursuant to the user agreement, not the Functional Standard itself. *See Gill*, 913 F.3d at 1185. In any event, the *Gill* court had no need to address whether the federal agency in that case had in fact revoked any participants' membership in the program for failure to comply with the Functional Standard; what mattered was that the participants operated *in practice* with the understanding that their subsequently-submitted reports would be judged according to the agency's Functional Standard. *See id.* ("An agency action can be final even if its legal or practical effects are contingent on a future event."). Similarly, regardless of any future enforcement actions ED may or may not take against schools under Title IX or its regulations, the Policy currently has the acknowledged practical effect of causing schools to change their Title IX policies in order to comply with it. Under *Gill*, such a practical effect alone satisfies the *Bennett* test for finality. *See id.*

Upon applying *Gill* to the facts of this case, the 2017 Title IX Policy is final agency action under the Ninth Circuit's current case law due to both its legal effects and its practical effects.[4] Accordingly, Plaintiffs seek reconsideration of the Court's October 1, 2018 Order

---

[4] The Ninth Circuit's opinion in *Gill* does not address the question of availability of other adequate remedies, which otherwise might preclude an APA action. The district court rejected the government's argument that the plaintiffs' potential suit against the individual law enforcement entities that submitted SARs about them was an adequate alternative remedy, finding that such entities "likely would have a defense against any claim that their preparation and transmission of SARs is wrongful, when undertaken pursuant to [the federal agency's] standards." *Gill v. U.S. Dep't of Justice*, No. 14-cv-03120-RS, 2015 WL 757278, at *5 (N.D. Cal. Feb. 20, 2015). The government did not challenge the district court's conclusion on appeal.

dismissing Plaintiffs' APA claim for lack of finality.[5]

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion for Reconsideration and (1) reverse, or otherwise modify or alter as needed, the Court's Order granting Defendants' Motion to Dismiss Plaintiffs' APA claim, Dkt. No. 81; and (2) permit Plaintiffs to file an amended complaint reinstating their APA claim.

Respectfully submitted,                                             Date: February 26, 2019

/s/ Robin F. Thurston
Jennifer A. Reisch (CA Bar No. 223671)
**Equal Rights Advocates**
1170 Market Street, Suite 700
San Francisco, CA 94102
Ph: (415) 621-0672
Fax: (415) 621-6744
Email: jreisch@equalrights.org

Javier M. Guzman*
Robin F. Thurston*
Karianne Jones*
**Democracy Forward Foundation**
1333 H St. NW
Washington, DC 20005
Ph: (202) 448-9090
Fax: (202) 701-1775
Emails: jguzman@democracyforward.org,
rthurston@democracyforward.org,
kjones@democracyforward.org

*admitted pro hac vice
** pro hac vice application pending

*Counsel for Plaintiffs*

Leecia Welch (CA Bar No. 208741)
Seth Galanter**
Alice Y. Abrokwa*
**National Center for Youth Law**
405 14th Street, 15th Floor
Oakland, CA 94612, and
1313 L Street, NW, Suite 130
Washington, DC 20005
Ph: (510) 835-8098
Fax: (510) 835-8099
Emails: lwelch@youthlaw.org,
sgalanter@youthlaw.org,
aabrokwa@youthlaw.org

Emily Martin*
Neena Chaudhry*
Sunu Chandy*
**National Women's Law Center**
11 Dupont Circle, NW, Suite 800
Washington, DC 20036
Ph: (202) 588-5180
Fax: (202) 588-5185
Emails: emartin@nwlc.org,
nchaudhry@nwlc.org, schandy@nwlc.org

---

[5] Notably, there are no case-specific reasons for the Court not to modify its order dismissing the APA claims, given that this action is still at the pleadings stage and the parties have not even started discovery. Judicial efficiency will be furthered by revisiting now, de novo, the question of whether Plaintiffs have sufficiently alleged final agency action based on this new precedent.

**[PROPOSED] ORDER**

Upon consideration of Plaintiffs' Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 54(b), and any opposition, reply, and oral argument presented, the Court holds that the 2017 Title IX Policy constitutes final agency action under the APA. Therefore, the Court hereby GRANTS Plaintiffs' Motion for Reconsideration. The Court will modify its prior Order (Dkt. No. 81) accordingly, and permit Plaintiffs to file an amended complaint reinstating their APA claim.

IT IS SO ORDERED.

Dated: _____

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE