1  Jennifer A. Reisch (CA Bar No. 223671)        Leecia Welch (CA Bar No. 208741)
   **Equal Rights Advocates**                     Seth Galanter*
2  1170 Market Street, Suite 700                  Alice Y. Abrokwa*
   San Francisco, CA 94102                        **National Center for Youth Law**
3  Ph: (415) 621-0672                             405 14th Street, 15th Floor
   Fax: (415) 621-6744                            Oakland, CA 94612, and
4  Email: jreisch@equalrights.org                 1313 L Street, NW, Suite 130
                                                  Washington, DC 20005
5                                                 Ph: (510) 835-8098
   Javier M. Guzman*                              Fax: (510) 835-8099
6  Robin F. Thurston*                             Emails: lwelch@youthlaw.org,
   Karianne Jones*                                sgalanter@youthlaw.org,
7  **Democracy Forward Foundation**               aabrokwa@youthlaw.org
   1333 H St. NW
8  Washington, DC 20005
   Ph: (202) 448-9090                             Emily Martin*
9  Fax: (202) 701-1775                            Neena Chaudhry*
   Emails: jguzman@democracyforward.org,          Sunu Chandy*
10 rthurston@democracyforward.org,                **National Women's Law Center**
   kjones@democracyforward.org                    11 Dupont Circle, NW, Suite 800
11                                                Washington, DC 20036
                                                  Ph: (202) 588-5180
12                                                Fax: (202) 588-5185
                                                  Emails: emartin@nwlc.org,
13                                                nchaudhry@nwlc.org, schandy@nwlc.org
14 *admitted pro hac vice

                        *Counsel for Plaintiffs*

15

16

17

18              **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
19               **SAN FRANCISCO DIVISION**

20 SURVJUSTICE, INC., et al.,          )   Case Number:    3:18-cv-00535-JSC
                                        )
21        Plaintiffs,                   )   PLAINTIFFS' REPLY IN SUPPORT OF
                                        )   MOTION FOR RECONSIDERATION
22 v.                                   )
                                        )   HEARING NOTICED: April 4, 2019,
23                                      )   2:00 p.m., San Francisco Courthouse,
   ELISABETH D. DEVOS, in her official  )   Courtroom F - 15th Floor, 450 Golden Gate
24 capacity as Secretary of Education, et al, )  Avenue, San Francisco, CA, 94102
                                        )
25        Defendants.                   )
                                        )   DEMAND FOR JURY TRIAL
26                                      )
                                        )
27 ────────────────────────────────────)

28

1

2    This Court has an "inherent procedural power to reconsider" an interlocutory order for

3    any reason "seen by it to be sufficient," *City of Los Angeles, Harbor Div. v. Santa Monica*

4    *Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (internal quotation marks and citation omitted),

5    including on the basis of "shifting precedent," *United States v. Martin*, 226 F.3d 1042, 1049 (9th

6    Cir. 2000). Because the intervening decision in *Gill v. U.S. Dep't of Justice*, 913 F.3d 1179 (9th

7    Cir. 2019), establishes that the 2017 Title IX Policy (alternatively, "Policy") is final agency

8    action under *Bennett v. Spear*, 520 U.S. 154 (1997), Plaintiffs seek reconsideration of the Court's

9    Order dismissing their Administrative Procedure Act ("APA") claims. At this stage of the

10   proceedings, while the Court is still deciding whether Plaintiffs' other claims may go forward to

11   discovery, Defendants will experience no unfair prejudice if this Court revives the APA claims.[1]

12   **I.   ARGUMENT**

13       *Bennett* "provide[s] several avenues for meeting the second finality requirement."

14   *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 986 (9th Cir. 2006). In *Gill*, the

15   Ninth Circuit extended its prior case law in identifying two such avenues, both present here.

16       **A.   *Gill holds that an agreement to comply can produce legal consequences.***

17       In rejecting the argument in *Gill* that the challenged Functional Standard was not final

18   because it "'merely provide[d] procedural guidelines,'" the Ninth Circuit held that even non-

19   binding policies for a voluntary program can produce legal consequence where participation is

20   pursuant to an agreement to comply with the policies. 913 F.3d at 1184. While the risk of

21

22

23

---

[1] Defendants argue that this Court may not consider whether it would reach a different conclusion under *Gill* because *Gill* is not a "material change in the law." Defs.' Opp. to Pls.' Mot. for Recons. at 4 (Dkt. No. 115). While *Gill* does not alter the standard articulated in *Bennett*, its application of *Bennett* marks "a change of law" as to where the Ninth Circuit draws the line between final and non-final agency actions, and thus warrants reconsideration. Civil L.R. 7-9(b)(2); *see infra* note 2. In any event, the fact that the local rules identify some circumstances under which reconsideration is appropriate does not limit this Court's inherent authority to reconsider as described in *Baykeeper*, 254 F.3d at 885-86, including when reconsideration serves the interests of judicial economy, *see Martin*, 226 F.3d at 1049. *See also* Civil L.R. 1-2(b).

**Plaintiffs' Reply in Support of Motion for Reconsideration, 3:18-cv-00535-JSC     Page: 1**

enforcement in *Oregon Natural Desert* derived from directives in the challenged agency action itself (the agency's instructions), the risk in *Gill* derived from a user agreement, separate from the Functional Standard, that permitted membership revocation for non-compliance with that and other policies. *Id.* at 1185. Extending the reasoning of *Oregon Natural Desert*, *Gill* makes clear that the peril of breaching such an agreement produces legal consequences under *Bennett*.[2]

As in *Gill*, schools sign agreements committing to comply with the Department's Title IX policies in exchange for federal funding, similarly producing legal consequences for a breach of those assurances. *See* Pls.' Mot. for Recons. at 5-6 (Dkt. No. 107). By requiring compliance with Department policies and guidelines, the assurances extend the legal obligations of schools that sign assurances *beyond* their duty to comply with Title IX and its regulations. *Id.* In arguing to the contrary, Defendants completely disregard the fact that the OMB assurance form requires funding recipients to assure their compliance with all Title IX "policies." *Id.* at 6. The 2017 Title IX Policy is such a policy. *See* Defs.' Mot. to Dismiss at 19 (Dkt. No. 40). Thus, at the least, institutions signing that assurance form commit to complying with the Policy. Defendants instead attempt to create a semantic distinction between "guidelines" and "guidance," but they do not cite any authority supporting such a distinction, much less any evidence that schools would make that distinction. Defs.' Opp. to Pls.' Mot. for Recons. at 5-6 (Dkt. No. 115).[3] Where, as

_____

[2] In *Gill*, the government argued that, "although the cases haven't clearly delineated this line," prior cases limited legal consequences to those involving a property or liberty interest or safe harbor from enforcement. Oral Argument at 25:05-25:22, 913 F.3d 1179 (9th Cir. 2018) (No. 17-16107), https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000014464. Thus, while the government acknowledged that a breach of a contractual agreement involves a "legal mechanism," it argued that being excluded from the program for breaching the user agreement was merely a "practical" consequence. *Id.* at 24:20-24:44, 25:33-25:36. Even under the government's own description of the pre-existing precedent, *Gill*'s extension of legal consequences to contractual rights and obligations was a change in the Ninth Circuit finality law.

[3] Defendants themselves have used these synonyms interchangeably in the recent past. *See* Press Release, U.S. Dep't of Educ., *Guidance Issued on Responsibilities of Schools to Address Sexual Violence, Other Forms of Sex Discrimination* (Apr. 29, 2014), https://www.ed.gov/news/press-releases/guidance-issued-responsibilities-schools-address-sexual-violence-other-forms-sex-discrimination (describing the 2014 Q&A document as "guidelines . . . [that] provide greater

**Plaintiffs' Reply in Support of Motion for Reconsideration, 3:18-cv-00535-JSC   Page: 2**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

here, breach of legally-enforceable assurances could prompt a loss of funding, *Gill* compels the holding that the Policy is final agency action.[4]

**B.  Gill *holds that practical effects can independently establish finality.***

Defendants contend *Gill* "simply restated the familiar standard that courts 'focus on the practical *and* legal effects of the agency action.'" Defs.' Opp. to Pls.' Mot. for Recons. at 7 (internal citations omitted). Not so. The Ninth Circuit plainly held that "[t]he Functional Standard is *also* final agency action because of its practical effects," agreeing with the plaintiffs that compliance with the Functional Standard was a "practical requirement" of participation in the program that "render[ed] the Functional Standard final." 913 F.3d at 1185 (emphasis added). *Gill* did not say, as Defendants suggest, that the Functional Standard was final only because it had both legal and practical effects. *Gill's* holding was not dependent upon its separate finding that there were legal consequences. Rather, the Court's basis for its holding was that there was an "immediate understanding" that participants "would conform to the Functional Standard" in practice. *Id.*

*Gill*'s reliance on *Havasupai Tribe v. Provencio*, 906 F.3d 1155 (9th Cir. 2018), reinforces the conclusion that *Gill* held immediate practical effects are an independent basis for establishing finality. In *Havasupai*, the U.S. Forest Service issued a Mineral Report determining that a company had valid rights to mine on certain lands, but the Report did not actually confer

---

clarity about the requirements of Title IX"). Notably, in describing the Functional Standard in *Gill*, the government also used "guidelines" and "guidance" interchangeably. *Compare Gill*, No. 3:14-cv-03120, 2015 WL 757278 at *5 (N.D. Cal. Feb. 20, 2015), *with* 913 F.3d at 1184.

[4] Plaintiffs previously pointed to these assurances in the briefing on the first motion to dismiss (Dkt. No. 45 at 16-17) and in a part of their supplemental brief (Dkt. No. 68 at 10) that this Court did not consider (Dkt. No. 81 at 19 n.17). In Defendants' supplemental brief (Dkt. No. 70 at 9-10) and Opposition to this Motion (Dkt. No. 115 at 5-6 & n.1), they did not dispute the accuracy of these assurances as quoted. This Court may take judicial notice of the assurances, which are matters of public record available on Defendants' website not subject to reasonable dispute. *See United States v. Corinthian Colls.*, 655 F.3d 984, 998-99 (9th Cir. 2011). If this Motion is granted, Plaintiffs will include allegations about these assurances in their amended complaint.

**Plaintiffs' Reply in Support of Motion for Reconsideration, 3:18-cv-00535-JSC    Page: 3**

such rights. 906 F.3d at 1160, 1162. "[W]hether or not the Mineral Report was legally required" for operation of the mine, the Report was "a practical requirement" to its operation since "'all understood that mine operations would not resume until [the Mineral Report] was completed.'" *Id.* at 1162-63 (internal citation omitted). *Gill* read *Havasupai* as holding that such a practical requirement meant the Report was "therefore final agency action." 913 F.3d at 1185. *Gill* held accordingly that the Functional Standard was final agency action because the user agreement created a similar "immediate understanding" that participants would comply in practice. *Id.*

Defendants argue that this reading of *Gill* contravenes D.C. Circuit law. *See* Defs.' Opp. to Pls.' Mot. for Recons. at 7. But it is entirely consistent with the law of *this* Circuit and with *Bennett*, where other federal agencies were "technically free to disregard" a biological opinion issued by the Fish and Wildlife Service, but the opinion had such "powerful coercive effect" despite being "advisory" that agencies complied in practice. 520 U.S. at 169-70.[5] *Gill* builds upon *Havasupai*, which built upon *Bennett*. The Ninth Circuit found sufficient practical effects in *Havasupai*, where the federal agency made only a request that a mining company not resume operations. 906 F.3d at 1160. *Gill* found sufficient practical effects where participation in a voluntary program was conditioned on the agreement of law enforcement agencies to comply with the federal agency's policies. 913 F.3d at 1185. Such practical effects are present here.

It is undisputed that "Plaintiffs plausibly allege that some schools have" changed their "policies in response to the 2017 Guidance." Order at 18 (Dkt. No. 81); *see* Defs.' Reply in

---

[5] Defendants also cite *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 243 (1980), a pre-*Bennett* case where the Supreme Court found that a complaint issued by an agency against an oil company had no effect "other than the disruptions that accompany any major litigation." *Standard Oil* does not stand for the proposition that practical effects alone cannot establish finality; it holds only that the effects in that case did not. *See U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1815 (2016) (describing *Frozen Food Express v. United States*, 351 U.S. 40 (1956), as standing for the proposition that, even if the agency action "had no authority except to give notice of how the [agency] interpreted the relevant statute," the action was reviewable where private parties changed their behavior in response to a risk of significant penalties if found in violation of the statute) (internal quotation marks and citations omitted).

Supp. Mot. to Dismiss at 9 (Dkt. No. 48). For instance, Plaintiffs allege that the South Dakota Board of Regents proposed "emergency revisions" to its policies based on its understanding that the changes "were required to comply with" the Department's Policy. Am. Compl. ¶ 116 (Dkt. No. 23). This demonstrates precisely the kind of practical, immediate understanding that established finality in *Gill* and *Havasupai*. The Department's enforcement actions against schools, such as the University of North Carolina, also reveal that even its own officials "take[] into account the views that it expressed in the 2017 Guidance when making enforcement decisions." Defs.' Opp. to Pls.' Mot. for Recons. at 7; *see* Am. Compl. ¶ 118; Pls.' Mot. for Recons. at 8 n.3. Schools were thus correct in their "immediate understanding" that Defendants would enforce Title IX and its regulations consistent with the Policy. Defendants also correctly understand that many recipients will comply with its expectations in practice. *See* Am. Compl. ¶ 116. Pursuant to *Gill*, these immediate, practical effects independently establish finality.

## II.    CONCLUSION

Because the Policy is final agency action, Plaintiffs ask that this Court grant their Motion for Reconsideration of its prior Order (Dkt. No. 81) dismissing their APA claims on that basis.[6]

Respectfully submitted,                                    Date: March 25, 2019

/s/ Robin F. Thurston
Jennifer A. Reisch (CA Bar No. 223671)          Javier M. Guzman*
**Equal Rights Advocates**                      Robin F. Thurston*
                                                Karianne Jones*
Leecia Welch (CA Bar No. 208741)                **Democracy Forward Foundation**
Seth Galanter*
Alice Y. Abrokwa*                               Emily Martin*
**National Center for Youth Law**               Neena Chaudhry*
                                                Sunu Chandy*
*admitted pro hac vice                          **National Women's Law Center**

*Counsel for Plaintiffs*

---

[6] Defendants argue that this Court must additionally address their argument that "the 2017 Guidance is not a legislative rule." Defs.' Opp. to Pls.' Mot. for Recons. 8 n.3. This argument is inapposite because Plaintiffs' APA claims do not include a notice and comment claim, as Defendants previously recognized. *See* Defs.' Reply in Supp. Mot. to Dismiss at 6.