1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SURVJUSTICE INC, et al.,

Plaintiffs,

v.

ELISABETH DEVOS, et al.,

Defendants.

Case No. 18-cv-00535-JSC

**ORDER RE: DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Re: Dkt. No. 95

Plaintiffs SurvJustice, Inc., Equal Rights Advocates, and Victim Rights Law Center (collectively, "Plaintiffs") bring this action for injunctive relief against Defendants U.S. Department of Education (the "Department"), Secretary Elisabeth D. DeVos, and Acting Assistant Secretary for Civil Rights Kenneth L. Marcus (collectively, "Defendants").[1]  Plaintiffs seek to vacate the Department's policy regarding enforcement of Title IX of the Education Amendments of 1972, as detailed in Department guidance issued on September 22, 2017.  (Dkt. No. 86 at ¶ 1.)[2] Now pending before the Court is Defendants' motion to dismiss the second amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  After careful consideration of the parties' briefing, and having had the benefit of oral argument on March 7, 2019, the Court DENIES Defendants' motion to dismiss under Rule 12(b)(1) and GRANTS with prejudice Defendants' motion under Rule 12(b)(6).  The allegations are insufficient to demonstrate prudential standing to bring an equal protection claim, and the allegations do not plausibly suggest

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 18 & 36.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

1   that Defendants acted outside their authority for the *ultra vires* action claim.

2   **BACKGROUND**

3   **I.      Factual Background**

4   The Court incorporates by reference the factual background included in its October 1, 2018

5   order granting Defendants' motion to dismiss the first amended complaint.  (*See* Dkt. No. 81 at 2-

6   6.)

7   **II.      The Second Amended Complaint**

8   Plaintiffs are three non-profit advocacy organizations; each brings this action on its own

9   behalf.

10   **A.      SurvJustice, Inc.**

11   Plaintiff SurvJustice, Inc.'s "mission is to increase the prospect of justice for survivors of

12   sexual violence."  (*Id.* at ¶ 10.)  SurvJustice "pursues this goal through legal assistance [to

13   complainants], policy advocacy, and institutional training."  (*Id.*)  "The majority of requests for

14   legal assistance that SurvJustice receives are from students at institutions of higher education."

15   (*Id.* at ¶ 11.)  "SurvJustice also trains educational institutions to prevent and address sexual

16   violence," and "engages in policy advocacy by providing technical assistance and advice to

17   legislators and policymakers on various state and federal legislation and policy efforts regarding

18   sexual violence, and working with changemakers within their communities on local policy efforts,

19   especially on college and university campuses."  (*Id.* at ¶¶ 12-13.)

20   **B.      Equal Rights Advocates**

21   Plaintiff Equal Rights Advocates' mission is to "protect[ ] and expand[ ] economic

22   educational access and opportunities for women and girls."  (*Id.* at ¶ 23.)  In furthering its mission,

23   Equal Rights Advocates "engag[es] in public education efforts, as well as policy reform and

24   legislative advocacy; provid[es] free legal information and counseling; and litigat[es] cases

25   involving issues of gender discrimination in employment and education at all stages."  (*Id.* at ¶

26   24.)  Equal Rights Advocates also "counsels and represents women who have been victims of

27   sexual harassment and/or sexual assault in matters pursuant to Title IX."  (*Id.*)

28   //

2

United States District Court
Northern District of California

### C.     Victim Rights Law Center

Plaintiff Victim Rights Law Center's "mission is to provide legal representation to victims of rape and sexual assault to help rebuild their lives and to promote a national movement committed to seeking justice for every rape and sexual victim."  (*Id.* at ¶ 28.)  In furthering its mission, Victim Rights Law Center provides free legal services to victims, a "substantial portion" of whom are students.  (*Id.* at ¶ 29.)  The Law Center's "attorneys represent campus victims to communicate effectively with campus administrators, acquire interim measures and accommodations to secure their education, prepare and attend disciplinary hearings, file appeals, and if necessary, file complaints with the [the Department's] Office of Civil Rights."  (*Id.*)

### D.     Second Amended Complaint Allegations

The gravamen of Plaintiffs' collective allegations is that the Department's Title IX policy guidance issued in September 2017 ("2017 Guidance") was motivated by discriminatory animus and that it removed protections for victims of sexual harassment and sexual assault.  (*See* Dkt. No. 81 at 2-6 (providing detailed background on the 2017 Guidance and preceding Title IX policy).)  As a result, the 2017 Guidance: (i) requires a diversion of resources that impedes Plaintiffs' daily operations; (ii) "limits the efficacy" of the avenues of redress available to Plaintiffs' clients; (iii) increases the costs borne by Plaintiffs in providing their services; and (iv) "directly conflicts with, impairs, and frustrates [Plaintiffs'] organizational mission and priorities."  (Dkt. No. 86 at ¶¶ 14, 25, 30.)  Plaintiffs further allege that the 2017 Guidance violates the equal protection guarantee of the Fifth Amendment of the United States Constitution because it "disproportionately burdens women and girls," and "was motivated by the baseless and discriminary . . . stereotype that women and girls tend to lie about or exaggerate experiences of sexual assault and harassment."  (*Id.* at ¶ 6.)

### III.     Procedural History

In January 2018, Plaintiffs filed their initial complaint for injunctive relief against the Department, and Elisabeth D. DeVos and then-acting Assistant Secretary for Civil Rights Candice Jackson in their official capacities.  (Dkt. No. 1.)  Plaintiffs filed an amended complaint the following month, seeking injunctive relief and bringing causes of action for: (i) violation of the

1   Administrative Procedure Act ("APA"), 5 U.S.C. § 706; (ii) *ultra vires* action; and (iii) violation

2   of the equal protection guarantee under the Fifth Amendment.  (Dkt. No. 23.)  Defendants moved

3   to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and

4   12(b)(6).  (Dkt. No. 40.)  The Court granted Defendants' motion to dismiss, concluding that the

5   allegations were insufficient to show standing to bring an equal protection claim, the 2017

6   Guidance did not constitute final agency action for purposes of the APA claim, and the allegations

7   did not plausibly suggest that Defendants acted outside their authority for the *ultra vires* action

8   claim.  (Dkt. No. 81.)  The Court granted Plaintiffs leave to amend as to the equal protection and

9   *ultra vires* action claims, but dismissed with prejudice the APA claim, concluding that the 2017

10  Guidance did not constitute final agency action as a matter of law.[3]  (*Id.* at 21.)

11       On October 31, 2018, Plaintiffs filed the second amended complaint for injunctive relief,

12  again bringing equal protection and *ultra vires* action claims.  (Dkt. No. 86.)  Defendants filed the

13  instant motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) on December 14, 2018.  (Dkt.

14  No. 95.)  The motion is fully briefed, (*see* Dkt. Nos. 96 & 102), and the Court heard oral argument

15  on March 7, 2019.

16                                          **DISCUSSION**

17       Defendants move to dismiss Plaintiffs' equal protection claim pursuant to Rule 12(b)(1)

18  for lack of standing and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

19  Defendants also move to dismiss Plaintiffs' *ultra vires* action claim under Rule 12(b)(6).  The

20  Court addresses each ground for dismissal in turn.

21  **I.      Rule 12(b)(1)**

22       Pursuant to Rule 12(b)(1), a district court must dismiss an action if it lacks jurisdiction

23  over the subject matter of the suit.  *See* Fed. R. Civ. P. 12(b)(1).  "A party invoking federal

24  jurisdiction has the burden of establishing that it has satisfied the 'case-or-controversy'

25  requirement of Article III of the Constitution [and] standing is a 'core component' of that

26  requirement."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  In ruling on a motion to

27  _____

28  [3] Plaintiffs' motion for reconsideration as to their APA claim is pending before the Court.  (*See* Dkt. No. 107.)

United States District Court
Northern District of California

United States District Court
Northern District of California

dismiss under Rule 12(b)(1), the court must "accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party."  *Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009) (internal quotation marks and citation omitted).

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance."  *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004).  Courts must consider "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Id.* at 128-29 (internal quotation marks and citation omitted).  The constitutional aspect considers whether the plaintiff has satisfied the "'case-or-controversy' requirement of Article III," *see Lujan*, 504 U.S. at 560, by demonstrating "(1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the injury," *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010).  "The prudential limitations, in contrast, restrict the grounds a plaintiff may put forward in seeking to vindicate [its] personal stake."  *Fleck & Assocs. v. City of Phoenix*, 471 F.3d 1100, 1104 (9th Cir. 2006).  Thus, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, . . . the plaintiff generally must assert his own rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Defendants argue that dismissal is warranted under Rule 12(b)(1) primarily because Plaintiffs lack prudential standing to assert an equal protection claim on behalf of third parties. (Dkt. No. 95 at 13-19.)  Defendants further argue that Plaintiffs also lack Article III standing because "they have not satisfied the causation and redressability prongs" of constitutional standing.  (*Id.* at 20.)  Defendants' arguments get the standing analysis backwards.  *See Fleck & Assocs.*, 471 F.3d at 1105 (holding that because the plaintiff "failed to allege a cognizable personal injury, the prudential limits on 'third-party standing' are beside the point.")  As the *Fleck* court explained:

> Under traditional standing doctrine, a party meeting the constitutional requirements of injury, causation, and redressability, may, on rare occasions, "act[ ] as [an] advocate [for] the rights of third parties," *Craig v. Boren*, 429 U.S. 190, 195, 97 S. Ct. 451, 50 L.Ed.2d 397 (1976), if he can overcome the prudential rule limiting grounds for relief.  However, exceptions to the prudential rule presuppose a litigant who has already met the constitutional requirements.  *See*

1
2

> *Kowalski*, 543 U.S. at 128-29, 125 S. Ct. 564 (reiterating that constitutional standing limits are separate and distinct from prudential rule against asserting third-party rights).

3   *Id.* (alterations in original).  Thus, because Defendants challenge *both* Article III and prudential

4   standing, the Court must first determine whether Plaintiffs have constitutional standing.  *See id.*

5   (noting that "exceptions to the prudential rule presuppose a litigant who has already met the

6   constitutional requirements.").  Further, district courts in this circuit consider challenges to

7   prudential standing in the context of motions to dismiss under Rule 12(b)(6), not under Rule

8   12(b)(1).  *See Elizabeth Retail Props. LLC v. KeyBank Nat'l Ass'n*, 83 F. Supp. 3d 972, 985-86

9   (D. Or. 2015) ("While constitutional standing is evaluated under Rule 12(b)(1), prudential

10  standing is evaluated under Rule 12(b)(6)."); *Doe v. Hamburg,* No. 12-cv-03412-EMC, 2013 WL

11  3783749, at \*5 (N.D. Cal. July 16, 2013) (same) (citing *Cetacean Cmty v. Bush*, 386 F.3d 1169,

12  1174-75 (9th Cir. 2004) and that court's discussion of dismissal under Rule 12(b)(1) for cases in

13  which the plaintiff lacks Article III standing, and dismissal under Rule 12(b)(6) for cases in which

14  statutory standing is lacking); *Gentges v. Trend Micro Inc.*, No. C 11-5574 SBA, 2012 WL

15  2792442, at \*4 n.3 (N.D. Cal. July 9, 2012)  ("While Article III standing may be raised in a Rule

16  12(b)(1) motion, questions of prudential standing must be raised in a Rule 12(b)(6) motion.")

17  (citing *Cetacean Cmty*, 386 F.3d at 1174-75).[4]

18         Accordingly, the Court will address only Defendants' arguments regarding Article III

19  standing in the context of their motion to dismiss under Rule 12(b)(1).

20         **A.      Plaintiffs Demonstrate Article III Standing**

21         As previously discussed, Plaintiffs have the burden of establishing constitutional standing

22  by showing: "(1) an injury in fact that is (a) concrete and particularized and (b) actual or

23  imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the injury."

24

25  [4] This is largely a distinction without a difference here, however, because Defendants move to
    dismiss under both Rule 12(b)(1) and 12(b)(6) and the same standard of review applies.  *See*

26  *Warth*, 422 U.S. at 501 ("For purposes of ruling on a motion to dismiss for want of standing, . . .
    courts must accept as true all material allegations of the complaint, and must construe the

27  complaint in favor of the complaining party."); *see also Manzarek v. St. Paul Fire & Mar. Ins.
    Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (noting that for purposes of ruling on a Rule 12(b)(6)

28  motion, the court must "accept factual allegations in the complaint as true and construe the
    pleadings in the light most favorable to the nonmoving party.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1  *Wolfson*, 616 F.3d at 1056.  Here, Defendants challenge only the second and third prong of the

2  constitutional standing inquiry—causation and redressability.[5]

3        **1.    Causation**

4        Defendants argue that Plaintiffs fail to demonstrate causation because the 2017 Guidance

5  "has no legal effect" and Plaintiffs "have not shown how Defendants' Fifth Amendment violation

6  would be imputed onto a school that voluntarily changes its Title IX policies."  (Dkt. No. 95 at 20-

7  21.)  Thus, Defendants insist that Plaintiffs "have not traced any injury to the 2017 Guidance."

8  (*Id.* at 20.)  The Court disagrees.

9        Plaintiffs allege that Defendants unlawfully regulated a third party, causing injury to

10  Plaintiffs themselves; specifically, Plaintiffs allege that colleges and universities' implementation

11  of the 2017 Guidance caused Plaintiffs' organizational injury.  Thus, "causation and redressability

12  . . . hinge on the response of the regulated (or regulable) third party to the government action or

13  inaction."  *See Lujan*, 504 U.S. at 562.  In such cases, "[m]ore particular facts are needed to show

14  standing."  *Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015) (quoting *Mendia v.

15  Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014)).  "To plausibly allege that the injury was not the

16  result of the *independent* action of some third party, the plaintiff must offer facts showing that the

17  government's unlawful conduct is at least a substantial factor motivating the third parties'

18  actions."  *Id.* (internal quotation marks and citation omitted).  Plaintiffs have done so here.

19        The second amended complaint—when construed in the light most favorable to

20  Plaintiffs—sufficiently pleads a causal link between Plaintiffs' organizational injury and the 2017

21  Guidance, based on the reaction of some schools to the Guidance.  Plaintiffs allege that

22  "[f]ollowing the issuance of the 2017 Title IX Policy, schools have modified and/or stated their

23  intention to modify their practices" to conform to the Guidance.  (Dkt. No. 86 at ¶ 124 (citing

24  action taken in response to the 2017 Guidance by the South Dakota Board of Regents, University

25  _____

26  [5] The Court's October 2018 order held that Plaintiffs satisfied the injury-in-fact prong of Article
III standing as to their APA and *ultra vires* action claims because Plaintiffs asserted organizational
27  standing and demonstrated: (1) frustration of their organizational mission; and (2) diversion of
resources because of that frustration.  (*See* Dkt. No. 81 at 10-14.)  Because Defendants do not
28  challenge the injury-in-fact prong as to Plaintiffs' equal protection claim, the Court incorporates
by reference its analysis in the previous order and applies it here.

of Houston, University of Michigan, and University of Kentucky).)  Plaintiffs further allege that in response to the 2017 Guidance, other schools "have also changed their policies in such a way that could delay resolution of reports of sexual misconduct, including sexual assault."  (*Id.* at ¶ 125 n.56 (citing action taken by Grand Valley State University and Auburn University).)  Thus, Plaintiffs do not merely speculate that schools *will* change their Title IX policies to conform to the 2017 Guidance, they plead facts showing that certain schools *already have*.  These allegations are sufficient to satisfy the causation element of Article III standing because they show that the 2017 Guidance "is at least a substantial factor motivating" the schools' actions.  *See Novak*, 795 F.3d at 1019.

At oral argument, Defendants cited *Novak v. United States* for the proposition that Plaintiffs must plead causation with particularity because they assert injury arising from Defendants' allegedly unlawful regulation of a third party, and not Plaintiffs themselves.  That is true; however, as discussed above, Plaintiffs have done so by identifying specific schools that have changed their policies to conform to the 2017 Guidance.  Further, the *Novak* court concluded that causation was lacking because the "[p]laintiffs' own complaint" alleged facts demonstrating that the regulated third parties "may well have engaged in their injury-inflicting actions even in the absence of the government's challenged conduct."  *Id.* at 1019 (internal quotation marks and citation omitted).  There are no such allegations here.

### 2.  Redressability

To demonstrate redressability, Plaintiffs must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561.  Thus, Plaintiffs "need to show that there would be a change in the legal status as a consequence of a favorable decision and that a practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly addresses the injury suffered."  *Novak*, 795 F.3d at 1019-20 (internal quotation marks and citations omitted).

The second amended complaint seeks, in pertinent part: (1) a declaration that the 2017 Guidance is unlawful; and (2) an injunction ordering Defendants to vacate the 2017 Guidance.  Defendants argue that "it is entirely speculative that vacating the 2017 Guidance would affect

United States District Court
Northern District of California

1    schools' decisions regarding their Title IX policies," (*see* Dkt. No. 95 at 21), because this Court

2    has already determined that the 2017 Guidance is voluntary and not legally binding on schools,

3    (*see* Dkt. No. 81 at 17-20).  Plaintiffs counter that they have redressable injuries because "an order

4    vacating the 2017 Title IX Policy would likely result in schools returning to policies and practices

5    in place under the former policy."  (Dkt. No. 96 at 20.)  Plaintiffs further argue that consideration

6    of the legal effect of the 2017 Guidance constitutes "shoehorn[ing] the final agency action

7    requirement [of an APA claim] into the standing inquiry for a constitutional claim."  (*See* Dkt. No.

8    96 at 20).  The Court agrees.

9         As stated in the Court's October 2018 order, the 2017 Guidance does not constitute a

10   binding change in law; instead, "if a school disagreed with the 2017 Guidance and chose not to

11   follow it, it would suffer no legal consequences as long as it continued to comply with Title IX

12   and its implementing regulations."  (*Id.* at 18.)  However, in the context of Plaintiffs' equal

13   protection claim, they have alleged facts showing that some schools *have* modified their policies

14   in direct response to the 2017 Guidance; thus, vacating the Guidance because it violates the Fifth

15   Amendment would prevent other schools from following suit.  Further, declaring the 2017

16   Guidance unconstitutional would reflect "a change in legal status" of the Guidance, making it

17   likely that those schools that have changed their policies to conform to the 2017 Guidance would

18   return to their former policies (or adopt other policies that do not reflect the 2017 Guidance), so as

19   not to face the significant likelihood of legal action challenging their continued use of policies

20   declared unconstitutional.  In other words, the "practical consequence" of an order declaring the

21   2017 Guidance unconstitutional "would amount to a significant increase in the likelihood that the

22   plaintiff would obtain relief that directly addresses the injury suffered," *see Novak*, 795 F.3d at

23   1019-20.

24        Defendants' reliance on *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.* fails to persuade.

25   (*See* Dkt. Nos. 95 at 21; 102 at 10-11 (citing 366 F.3d 930 (D.C. Cir. 2004), *abrogated on other*

26   *grounds by Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017)).)  The

27   membership organization-plaintiffs in *Nat'l Wrestling Coaches* sought an order vacating certain

28   Title IX enforcement guidance that allegedly caused the "elimination of men's varsity wrestling

9

programs at certain universities." 366 F.3d at 933. In pertinent part, the plaintiffs specifically challenged a "1979 Policy Interpretation and [its] 1996 Clarification" on grounds that the guidance violated the equal protection guarantee under the Fifth Amendment. *Id.* at 936. The court affirmed the district court's dismissal for lack of Article III standing, concluding that the "alleged injury results from the independent decisions of federally funded educational institutions that choose to eliminate or reduce the size of men's wrestling teams in order to comply with Title IX," and the plaintiffs had "failed to demonstrate how a favorable judicial decision on the merits of their claims will redress this injury." *Id.* The court summarized its ruling thusly:

> In this case, appellants offer nothing but speculation to substantiate their assertion that a favorable judicial decision would result in schools altering their independent choices regarding the restoration or preservation of men's wrestling programs. Appellants do not contest the constitutionality of Title IX, nor do they challenge the 1975 regulations. Therefore, that legal regime, which requires schools to take gender equity concerns into account when structuring their athletic programs, would remain in place even if the disputed 1996 Clarification and the 1979 Policy Interpretation were revoked. And under that legal regime, schools would still have the discretion to eliminate men's wrestling programs, as necessary, to comply with the gender equity mandate of Title IX. A judicial decision striking down the 1996 Clarification and the 1979 Policy Interpretation would not afford appellants redress sufficient to support standing.

*Id.* In other words, even if the challenged policy was revoked, the alleged injury—elimination of men's wrestling programs—could continue under Title IX. The court further noted that the plaintiffs did "not suggest that any particular school necessarily would forego elimination of a wrestling team or reinstate a previously disbanded program in the absence of these interpretive rules." *Id.* at 939. Thus, "nothing but speculation suggests that schools would act any differently than they do with [the challenged policy] in place." *Id.* at 940.

The challenged policy here, however, substantively differs from the Rescinded Guidance, and there is nothing to suggest that in complying with Title IX and its implementing regulations schools would engage in the allegedly injurious conduct absent the 2017 Guidance. Further, in addition to the issues regarding redressability, the *Nat'l Wrestling Coaches* court found a lack of evidence as to causation and distinguished the plaintiffs' showing with cases in which "causation is so clear that redressability inexorably follows." *See id.* at 942. Conversely here, Plaintiffs

United States District Court
Northern District of California

1    plead facts showing a causal relationship between the 2017 Guidance and the conduct of specific

2    schools in revising their sexual misconduct policies in direct response to the guidance.  Because

3    that conduct allegedly flows directly from the 2017 Guidance, it follows that if the Guidance were

4    declared unconstitutional and vacated on those grounds, schools would have no reason to continue

5    implementing the injurious and unlawful policies.  *See id.* at 943.

6                                                    ***

7         Plaintiffs have satisfied the elements of Article III standing.  Accordingly, the Court

8    DENIES Defendants' motion to dismiss under Rule 12(b)(1).  The Court next addresses

9    Defendants' Rule 12(b)(6) motion and whether Plaintiffs have demonstrated third-party standing

10   to assert the constitutional rights of others for purposes of their equal protection claim, and

11   whether Plaintiffs have stated an *ultra vires* action claim.

## II.      Rule 12(b)(6)

13        A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege

14   "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

15   550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

16   content that allows the court to draw the reasonable inference that the defendant is liable for the

17   misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court ruling on a Rule

18   12(b)(6) must "accept factual allegations in the complaint as true and construe the pleadings in the

19   light most favorable to the non-moving party."  *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519

20   F.3d 1025, 1031 (9th Cir. 2008).

### A.      Plaintiffs Fail to Demonstrate Third-Party Standing[6]

22        The Court's October 2018 order dismissed Plaintiffs' equal protection claim because

23   Plaintiffs were advocating for the constitutional rights of third parties but failed to demonstrate

---

[6] As noted in the Court's October 2018 order, the Court need not consider whether the "zone of interests" test set forth in *Lexmark Int'l v. Static Control Components, Inc.*, 124 S. Ct. 1377 (2014) is applicable to the prudential standing issue raised here.  In *Lexmark*, the Supreme Court did not address the issue of third-party standing.  *See* 124 S. Ct. at 1387 n.3; *see also Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1118 n.9 (9th Cir. 2015) ("conclud[ing], in unison with all other courts to have spoken on the issue [after *Lexmark*], that the third-party standing doctrine continues to remain in the realm of prudential standing.").

United States District Court
Northern District of California

1    third-party standing.  (*See* Dkt. No. 81 at 14-16 (noting that the complaint only generally alleged

2    that the 2017 Guidance discriminates against women in violation of the equal protection clause of

3    the Fifth Amendment).)  The Court granted Plaintiffs leave to amend to correct that deficiency.

4         A plaintiff asserting third-party standing must show: (1) its own injury; (2) a close

5    relationship with the third party; and (3), and "some hindrance to the third party's ability to protect

6    his or her own interests."  *Powers v. Ohio*, 499 U.S. 400, 411 (1991).  The Supreme Court

7    recognized in *Kowalski v. Tesmer* that it has "not looked favorably upon third-party standing"

8    outside the context of First Amendment cases or cases where "enforcement of the challenged

9    restriction *against the litigant* would result indirectly in the violation of third parties' rights," *see*

10   543 U.S. at 130 (internal quotation marks and citation omitted).  It is undisputed that this action

11   falls into neither category of case.  That fact alone, however, is not dispositive.  *See Singleton v.*

12   *Wulff*, 428 U.S. 106, 118 n.7 (1976) (refusing to adopt a *per se* rule regarding third-party standing

13   requiring that the challenged restriction directly interfere with a litigant's conduct).

14        As discussed above, Plaintiffs have demonstrated an organizational injury.  Regarding the

15   "close relationship" prong, the second amended complaint alleges that "Plaintiff organizations

16   have a close relationship with the women and girls they serve.  Each organization has attorney-

17   client relationships with women and girl students who they represent in Title IX proceedings

18   before schools."  (Dkt. No. 86 at ¶ 131.)  Plaintiffs' opposition further clarifies that the "relevant"

19   third party whose rights they seek to advance consists of "female survivors of sexual violence who

20   are protected by Title IX (primarily students) and to whom Plaintiffs provide legal representation

21   or with whom Plaintiffs otherwise have an advisory or representative relationship."  (Dkt. No. 96

22   at 14.)

23        Defendants do not "disput[e] that Plaintiffs have pleaded a sufficiently close relationship

24   with their current clients to satisfy third party standing."  (Dkt. No. 102 at 6-7.)  Defendants

25   instead argue only that Plaintiffs fail to satisfy the last prong of third-party standing—the inability

26   of the parties to bring their own equal protection claims.  The Court agrees that Plaintiffs have

27   shown injury and a close relationship under the test; as those issues are not in dispute, the Court

28   addresses the remaining prong.

United States District Court
Northern District of California

Plaintiffs allege that their clients "face barriers to bringing litigation on their own behalf to challenge the Policy as discriminatory." (Dkt. No. 86 at ¶ 136.) Such barriers include: (1) "[t]he desire to maintain confidentiality"; (2) the possibility of "further re-traumatization by participation in a federal lawsuit"; (3) "[f]ear of retaliation" by their clients' harassers and from the schools themselves"; and (4) "practical and procedural barriers" regarding ripeness and mootness indicating a "low likelihood that a student will obtain relief prior to graduation." (Dkt. Nos. 86 at ¶¶ 137-142; 96 at 16.)[7]

Defendants argue that Plaintiffs' asserted hindrances are insufficient to invoke third-party standing because it is possible for the third party to raise the equal protection claim themselves, "and there is evidence that third parties in fact have raised such claims." (Dkt. No. 95 at 18 (citing *Tesmer*, 543 U.S. at 132).) The Court agrees.

Plaintiffs appear to allege legitimate privacy, safety, and procedural concerns; however, Defendants are correct "that third parties, at least in some instances, have also challenged the 2017 Guidance despite the alleged hindrances." (Dkt. No. 95 at 19.) Defendants' motion cites *Equal Means Equal v. Dep't of Educ.*, No. 1:17-cv-12043-MLW (D. Mass. Filed Oct. 19, 2017), and argues that the case demonstrates that Plaintiffs' asserted barriers to litigation are not genuine barriers. The plaintiffs in *Equal Means Equal* consist of an advocacy organization, three pseudonymous "Jane Doe" college students, "and similarly situated others," who are—as Plaintiffs, here—seeking to vacate the 2017 Guidance. *See* Complaint, *Equal Means Equal*, No. 1:17-cv-12043-MLW (D. Mass. filed Oct. 19, 2017); *see also Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that judicial notice is appropriate for "undisputed matters of public record, including documents on file in federal or state courts.") (internal citation omitted).

Plaintiffs' opposition does not address the litigation in *Equal Means Equal*, and Plaintiffs

---

[7] Plaintiffs allege that an individual's constitutional claim challenging the 2017 Guidance "likely would not be ripe until after she had been sexually assaulted and proceeded through the campus Title IX process to completion." (Dkt. No. 86 at ¶ 142.) Plaintiffs further allege that "[e]ven if [the individual] had not graduated by the time the the campus Title IX process concluded, it is extremely likely that she would have graduated (or been pushed out of school) by the time she could obtain relief in a federal lawsuit, making any requests for relief practically—if not legally—moot." (*Id.*)

United States District Court
Northern District of California

United States District Court
Northern District of California

1    fail to explain how the hindrances they allege in this case are plausible when similarly situated

2    individuals in *Equal Means Equal* are currently asserting their own constitutional and statutory

3    rights.  Plaintiffs instead note that "an obstacle need not be insurmountable."  (*See* Dkt. No. 96 at

4    17 (citing *Singleton*, 428 U.S. at 114-15).)   That is true; however, the obstacle must still be

5    *plausible*.  The Court cannot ignore pending litigation involving similarly situated plaintiffs

6    asserting their own claims against the same defendants challenging the same government action.

7    *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) (noting that on a

8    12(b)(6) motion, "[t]he court need not . . . accept as true allegations that contradict matters

9    properly subject to judicial notice or by exhibit.").  Simply put, the pending litigation in *Equal*

10   *Means Equal* cuts directly against Plaintiffs' allegations of hindrance.  *See Gentges*, 2012 WL

11   2792442, at *6 (finding a lack of prudential standing where the allegations of injury where

12   "directly contravened" by the contract at issue) (citing *Sprewell*, 266 F.3d at 988).  Plaintiffs cite

13   no case in which a court granted third-party standing under similar circumstances, and the Court's

14   research reveals none.

15          *Tesmer* is instructive on this point.  There the Supreme Court determined—despite

16   evidence of significant barriers—that the attorney-petitioners seeking to assert third-party standing

17   failed to demonstrate that the indigent criminal defendants they sought to represent were unable to

18   assert their own constitutional claims challenging a Michigan state statute prohibiting appointment

19   of appellate counsel for indigent defendants.[8]  543 U.S. at 131-32; *see also id.* at 140-41

20   (Ginsburg, J. dissenting) (discussing barriers faced by inmates).  The petitioners argued "that

21   unsophisticated, *pro se* criminal defendants could not satisfy the necessary procedural

22   requirements [to challenge the denial of appointment of appellate counsel in Michigan state court],

23   and, if they did, they would be unable to coherently advance the substance of their constitutional

24   claim."  *Id.* at 132.  The Supreme Court rejected that argument, citing Michigan state court cases

25   and a then-pending writ of certiorari in which *pro se* criminal defendants had done precisely what

26

27   _____

28   [8] The *Tesmer* Court also determined that the attorney-petitioners failed to demonstrate a close
     relationship (or any relationship at all) with the *pro se* criminal defendants they sought to
     represent.  543 U.S. at 131.

petitioners claimed they could not do—challenge their denial of appellate counsel in state and federal court. *Id.*

Plaintiffs argue that *Tesmer* does not stand for the proposition that "past litigation by an individual negates any barrier for someone else to sue today," nor "does it hold that *any* example of an individual overcoming an asserted hindrance to litigation should bar the finding of prudential standing." (Dkt. No. 96 at 17-18.)  The Court agrees.  *Tesmer* does suggest, however, that an alleged hindrance to litigation is not plausible where it is directly undercut by judicially noticeable facts showing that a similarly situated third party was undeterred in litigating the same issue against the same defendant.  That is precisely the circumstance here.

Plaintiffs' reliance on *Powers v. Ohio*, 499 U.S. 400 (1991) (concluding that criminal defendant-petitioner had third-party standing to assert equal protection claim on behalf of jurors in the context of petitioner's "right to object to the prosecutor's improper exclusion of jurors"), *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989) (concluding that petitioner-attorney had third-party standing to assert constitutional claim on behalf of client regarding enforcement of forfeiture statute under which petitioner asserted an interest in client's property), *Griswold v. Connecticut*, 381 U.S. 479 (1965) (concluding that criminal defendant-appellants convicted under state law forbidding use of contraceptives had third-party standing to challenge constitutionality of the statute by asserting the privacy rights "of married people with whom they had a professional relationship."), and *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004) (concluding that plaintiff-physician had third-party standing to assert constitutional claims on behalf of patients challenging parental consent statute that would subject plaintiff to potential liability), is unavailing for two reasons.  First, each of those cases—unlike here—involve enforcement of a challenged restriction against a "*litigant* [that] would result indirectly in the violation of third parties' rights."  *See Tesmer*, 543 U.S. at 130 (noting that such cases are viewed favorably regarding third-party standing standing).  And in *Singleton v. Wulff*, also cited by Plaintiffs, the Supreme Court concluded that the respondent-physicians had third-party standing to assert constitutional claims on behalf of their patients to challenge a Missouri statute limiting "reimbursable abortions to those that are 'medically indicated.'"  428 U.S. at 113-118.  Although

the *Singleton* Court refused to adopt a *per se* rule in third-party standing cases requiring that the challenged policy directly interfere with the litigant's conduct, the Supreme Court noted that "it is not clear why a 'direct interference' or 'interdiction' test would not allow the [third-party standing] assertion in this case." *Id.* at 118 n.7 ("For a doctor who cannot afford to work for nothing, and a woman who cannot afford to pay him, the State's refusal to fund an abortion is as effective an 'interdiction' of it as would ever be necessary.").  Second, none of the cases cited by Plaintiffs involve facts indicating that similarly situated third parties were involved in pending litigation challenging the same policy.

Moreover, third-party standing represents an *exception* to the general prudential limitation that a plaintiff "must assert his own rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth*, 422 U.S. at 499; *see also Fleck & Assocs.*, 471 F.3d at 1105 (noting that "on rare occasions," a litigant may assert "the rights of third parties, *Craig v. Boren*, 429 U.S. 190, 195, 97 S. Ct. 451, 50 L.Ed.2d 397 (1976), if he can overcome the prudential rule limiting grounds for relief.").  Plaintiffs essentially ask the Court to extend the exception of third-party standing to encompass not only a type of case in which the Supreme Court has "not looked favorably upon third-party standing," *see Tesmer*, 543 U.S. at 130, but a case in which the alleged hindrances did not deter similarly situated plaintiffs.  Because this Court is bound by precedent, it declines the invitation to do so.

*** 

Plaintiffs fail to satisfy the requirements of third-party standing to assert an equal protection claim on behalf of third parties.  Accordingly, the Court grants Defendants' motion to dismiss the equal protection claim under Rule 12(b)(6) for lack of prudential standing.  The Court need not address the parties' other arguments regarding failure to state a claim.

**B.**   ***Ultra Vires* Action**

Non-statutory review of agency action is available when the action is *ultra vires*; that is, when an agency has violated an unambiguous and mandatory legal requirement.  *Leedom v. Kyne*, 358 U.S. 184, 188-89 (1958).  The Court's October 2018 order granting dismissal of the first amended complaint's *ultra vires* claim concluded that Plaintiffs provided "wholly conclusory

United States District Court  
Northern District of California

allegations," and failed to plausibly allege that Defendants acted outside their legal authority in issuing the 2017 Guidance. (Dkt. No. 81 at 21.) Thus, the Court dismissed the claim but granted Plaintiffs leave to amend. (*Id.*)

The second amended complaint fails to cure the previous deficiencies; indeed, the complaint contains no new allegations regarding the *ultra vires* claim. The complaint instead includes a footnote stating that Plaintiffs "are not alleging additional facts in support of their *ultra vires* claim, but maintain it for the purpose of appeal, if necessary." (Dkt. No. 86 at 51 n.58.) Given the absence of any new allegations, the Court dismisses this claim for the reasons set forth in its previous order. (*See* Dkt. No. 81 at 21.) Further, the Court grants dismissal with prejudice because Plaintiffs did not amend their complaint after being granted leave to amend, but instead "re-pled the same facts and legal theories." *See Loos v. Immersion Corp.*, 762 F.3d 880, 890-91 (9th Cir. 2014) (affirming district court's dismissal without leave to amend where the plaintiff "failed to correct the deficiencies identified in his original complaint.").

## CONCLUSION

For the reasons set forth above, the Court DENIES Defendants' motion to dismiss under Rule 12(b)(1) for lack of Article III standing. The Court GRANTS Defendants' motion to dismiss Plaintiffs' equal protection claim under Rule 12(b)(6) for lack of prudential standing. The dismissal is with prejudice as to these Plaintiffs because they have not and cannot show third-party standing. The Court likewise GRANTS Defendants' motion to dismiss with prejudice as to Plaintiffs' *ultra vires* action claim.

This Order disposes of Docket No. 95.

**IT IS SO ORDERED.**

Dated: March 29, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

17