UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SURVJUSTICE INC, et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>ELISABETH DEVOS, et al.,<br><br>     Defendants. | Case No. 18-cv-00535-JSC<br><br>**ORDER RE: PLAINTIFFS' MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 107 |

Plaintiffs SurvJustice, Inc., Equal Rights Advocates, and Victim Rights Law Center (collectively, "Plaintiffs") bring this action for injunctive relief against Defendants U.S. Department of Education (the "Department"), Secretary Elisabeth D. DeVos, and Acting Assistant Secretary for Civil Rights Kenneth L. Marcus (collectively, "Defendants").[1]  Plaintiffs seek to vacate the Department's policy regarding enforcement of Title IX of the Education Amendments of 1972, as detailed in Department guidance issued on September 22, 2017.  (Dkt. No. 86 at ¶ 1.)[2]  Now pending before the Court is Plaintiffs' motion for reconsideration, (Dkt. No. 107), of this Court's October 1, 2018 order dismissing with prejudice Plaintiffs' claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, (Dkt. No. 81).  After careful consideration of the parties' briefing, the Court concludes that oral argument is not needed, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS Plaintiffs' motion because the Ninth Circuit's recent decision in *Gill v. U.S. Dep't of Justice*, 913 F.3d 1179 (9th Cir. 2019) warrants reconsideration of the October 2018 order to the extent it dismissed Plaintiffs' APA claim with prejudice.

//

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 18 & 36.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

## BACKGROUND

The factual background and procedural history of this case are detailed in the October 2018 order granting Defendants' motion to dismiss the first amended complaint. (*See* Dkt. No. 81 at 2-8.) As relevant here, Plaintiffs alleged that the Department's Title IX policy guidance issued in September 2017 ("2017 Guidance") is arbitrary and capricious and thus violates the APA. The Court dismissed Plaintiffs' APA claim with prejudice, concluding that the 2017 Guidance did not constitute "final agency action" for purposes of judicial review under the APA. (*Id.* at 16-20 (concluding that the 2017 Guidance failed the second prong of *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (requiring that the challenged government action be "one by which rights or obligations have been determined, or from which legal consequences will flow.")).)

On February 8, 2019, Plaintiffs filed a motion for leave to file a motion for reconsideration of the Court's dismissal of Plaintiffs' APA claim, (Dkt. No. 103), which the Court granted, (Dkt. No. 104). Plaintiffs filed their motion for reconsideration pursuant to Federal Rule of Civil Procedure 54(b) thereafter. (Dkt. No. 107.) The motion is fully briefed, (*see* Dkt. Nos. 115 & 116).

## LEGAL STANDARD

Pursuant to Rule 54(b), a court order that does not terminate the action "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.") (internal quotation marks and citation omitted). Under Civil Local Rule 7-9(b), a party seeking reconsideration of an interlocutory order must show one of the following: (1) "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought"; (2) "[t]he emergence of new material facts or a change of law occurring after the time of such order; or (3) [a] manifest failure by the Court to consider material facts or dispositive legal

2

arguments which were presented to the Court before such interlocutory order."[3]  N.D. Cal. Civ. L.R. 7-9(b).

**DISCUSSION**

Plaintiffs argue that reconsideration of the Court's October 2018 order is warranted based on the Ninth Circuit's "intervening decision" in *Gill v. U.S. Dep't of Justice*, 913 F.3d 1179 (9th Cir. 2019).  (Dkt. No. 107 at 3.)  Plaintiffs assert that *Gill* "clarifies what actions constitute 'final agency action' under *Bennett v. Spear*, 520 U.S. 154 (1997)."  (*Id.*)  Defendants counter that "*Gill* does not represent a change in the law, and nothing in *Gill* casts doubt upon this Court's conclusion that the [2017] Guidance is not final agency action."  (Dkt. No. 115 at 5.)  The Court disagrees.  As discussed below, *Gill* reflects "shifting precedent" warranting reconsideration on the issue of finality and the Court's dismissal of Plaintiffs' APA claim with prejudice.  *See United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000) (recognizing district courts' inherent authority to reconsider interlocutory orders "based on shifting precedent.").

**I.    APA Claims Generally and the *Bennett* Test**

Under the APA, a plaintiff may seek judicial review of "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Determining whether an agency action is "final" is a two-step process.  *Bennett*, 520 U.S. at 177-78.  The action must first "mark the consummation of the agency's decisionmaking process."  *Id.* (internal quotation marks and citation omitted).  Next, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Id.* at 178 (internal quotation marks and citation omitted).

As previously discussed, the Court's October 2018 order determined that that the 2017 Guidance did not constitute final agency action for purposes of judicial review under the APA because the Guidance did not produce legal consequences, and thus failed the second *Bennett*

---

[3] The Court granted Plaintiffs' motion for leave to file a motion for reconsideration under Local Rule 7-9(b), (*see* Dkt. No. 104), based on Plaintiffs' *initial* showing and argument regarding "[t]he emergence of new material facts or a change of law occurring" after the Court's October 2018 order, (*see* Dkt. No. 103 at 3-4).  The Court now addresses the merits of Plaintiffs' motion for reconsideration under the Local Rule 7-9(b) standard.

1 prong. (Dkt. No. 81 at 16-20.) In reaching that determination, the Court noted that the 2017
2 Guidance is not binding on schools and does not require them to comply with the Guidance or face
3 legal consequences, but instead, "merely provides 'information' for schools regarding how the
4 Department's Office of Civil Rights will assess [a school's] compliance" with existing law—Title
5 IX and its implementing regulations. (*Id.* at 18.) Thus, "if a school is in compliance with Title IX
6 and its regulations, it need not change its policies in response to the 2017 Guidance." (*Id.* (noting
7 that "voluntarily changing a policy in response to an agency's nonbinding enforcement guidance is
8 not the same as being *required* to do so by the guidance itself.") (emphasis added)).)

9 Plaintiffs argue that *Gill* provides "ample grounds" for the Court to reconsider that
10 determination because the *Gill* court held both that "nonbinding policies can result in legal
11 consequences under *Bennett*," and "practical effects alone can render an agency action final."
12 (Dkt. No. 107 at 4, 7-12.)

13 **II.** *Gill*

14 The plaintiffs in *Gill* sued the Department of Justice under the APA, challenging federal
15 government action that "standardize[d] the sharing of terrorism-related information through the
16 adoption of a 'Functional Standard.'" 913 F.3d at 1182. The Functional Standard governed the
17 collection, sharing, and use of Suspicious Activity Reports ("SARs") by federal, state, and local
18 law enforcement agencies through a nationwide information repository ("eGuardian") accessible
19 to all Nationwide Suspicious Activity Reporting Initiative ("NSI") participants. *Id.* The
20 government moved to dismiss the complaint, arguing in part "that the Functional standard did not
21 constitute final agency action pursuant to the APA." *Id.* at 1184. The district court denied that
22 motion, but later granted summary judgment in favor of the government on other grounds. The
23 plaintiffs appealed that ruling.

24 On appeal, the Ninth Circuit noted that it "review[s] de novo whether agency action is
25 final," and that in determining finality for purposes of an APA claim, "[w]e focus on the practical
26 and legal effects of the agency action and interpret finality in a pragmatic and flexible manner."
27 *Id.* (quoting *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006)).
28 The government argued that the Functional Standard did not constitute final agency action

under the second *Bennett* prong because it "merely provides guidelines for [agencies'] voluntary participation and does not impose binding obligations." *Id.* (alteration in original). The plaintiffs countered that "the Functional Standard has legal force because the Department can revoke an agency's eGuardian membership for violating the terms of the eGuardian User Agreement, which requires compliance with the Standard." *Id.* at 1184-85. Further, the plaintiffs argued that "compliance with the Functional Standard is a practical requirement of the NSI, and that this 'condition on participation' renders the Functional Standard final." *Id.* at 1185. The court agreed with the plaintiffs on both scores, concluding that "the Functional Standard constitutes final agency action because it has legal and practical effects." *Id.*

First, the *Gill* court determined that the Functional Standard produced legal consequences despite its nonbinding nature. The court noted:

> To be sure, participation in the NSI remains within the agencies' discretion. And, absent that participation, the Functional Standard does not obligate analysts or agencies to send SAR information or penalize them for sending non-complaint SARS. But, as the Department conceded below, once an agency decides to participate, the eGuardian User Agreement permits the Department to revoke agency membership for violating various policies, including the Functional Standard.

*Id.* The court determined that potential revocation of eGuardian membership constituted a legal consequence sufficient to demonstrate finality and satisfy the second *Bennett* prong. In doing so, the court noted that the Functional Standard was not "materially distinguishable" from the challenged agency action in *Oregon Natural Desert*. *Id.* ("Like the suspension of permits in *Oregon Natural Desert*, 465 F.3d at 988, eGuardian membership revocation is a legal consequence.").

The court further concluded that "[t]he Functional Standard is also final agency action because of its practical effects," based on the agencies' understanding of the consequences of noncompliance—revocation of eGuardian membership. *Id.* (discussing *Havasupai Tribe v. Provencio*, 906 F.3d 1155 (9th Cir. 2018)). In doing so, the court noted:

> [B]ecause the eGuardian User Agreement permits the Department to revoke participating agencies' access for failure to comply with the Functional Standard, once an agency joined the NSI there was the

        immediate understanding that its analysts would conform to the Functional Standard when submitting SARs.

*Id.* Thus, the court's holding regarding finality based on the practical effects of the Functional Standard relied on the same grounds as the court's holding regarding finality based on the Functional Standard's legal consequences—the existence and effect of the eGuardian User Agreement.

### III. *Gill's* Effect on this Action

As previously discussed, Plaintiffs assert that *Gill* represents a change of law warranting reconsideration of the Court's October 2018 order because the *Gill* court extended and broadened previous Ninth Circuit rulings by holding both that "nonbinding policies can result in legal consequences under *Bennett*," and "practical effects alone can render an agency action final." (Dkt. No. 107 at 4, 7-12.) The Court addresses each argument in turn, and agrees that *Gill* warrants reconsideration of the October 2018 order to the extent the Court dismissed Plaintiffs' APA claim with prejudice.[4]

#### A. Legal Consequences

Plaintiffs argue that "*Gill* extends the holding of *Oregon Natural Desert*," because it holds "that even loss of membership in a voluntary program based on a breach of a user agreement, rather than a statute or regulation, is a legal consequence under *Bennett* where that agreement requires that the participant comply with agency policies." (Dkt. No. 107 at 7.) Plaintiffs assert that like the user agreement in *Gill*, schools here "sign agreements (in the form of assurances) agreeing not only to comply with the Title IX statute and regulations, but also with policies like the challenged guidance." (*Id.* at 7-8 (citing U.S. Dep't of Educ., Office for Civil Rights, *Assurance of Compliance*, https://www2.ed.gov/about/offices/list/ocr/letters/boy-scouts-

---

[4] Defendants argue that, as a threshold matter, *Gill* does not represent a "material change in the law" and is thus "an inadequate basis for reconsideration." (Dkt. No. 115 at 8.) The Court disagrees. The Ninth Circuit has noted that district courts have the inherent authority to reconsider interlocutory orders "based on shifting precedent." *Martin*, 226 F.3d at 1049 (addressing reconsideration in the context of then C.D. Cal. Local Rule 7.16(b) (now C.D. Cal. Local Rule 7-18), which tracks the "change in law" requirement for reconsideration under N.D. Cal. Local Rule 7-9(b)). Although *Gill* does not represent a sea change in APA caselaw but instead relies on precedent, it does reflect "shifting precedent" as an extension of how the Ninth Circuit determines finality for purposes of APA claims. Thus, *Gill* is a proper basis for Plaintiffs' motion for reconsideration.

assurance-form.pdf; U.S. Dep't of Educ., *Revised Assurances Template*, https://www2.ed.gov/admins/lead/account/stateplan17/reviseded18100576.pdf).)[5] The Assurance of Compliance[6] states, in pertinent part:

> The applicant provides this assurance for the purpose of obtaining Federal grants, loans, contracts (except contracts of insurance of guaranty), property, discounts, funds made available through the U.S. Department of Education, or other Federal financial assistance from the Department. This assurance applies to all Federal financial assistance from or funds made available through the Department, including any that the applicant may seek in the future.

U.S. Dep't of Educ., *Assurance of Compliance*. Applicants assure that they will comply with Title IX, among other statutes, as well as "[a]ll regulations, ***guidelines***, and standards issued by the Department under any of these statutes." *Id.* (emphasis added). The Assurance specifies that it "is binding on the applicant," and applicants "must comply" with it "to continue receiving Federal financial assistance from the Department." *Id.* Thus, the Assurance provides that if the applicant fails to comply, "the financial assistance can be terminated and the applicant can be declared ineligible to receive further assistance." *Id.* If the 2017 Guidance constitutes the type of "guidelines" referenced in the Assurance, then *Gill* supports Plaintiffs' contention that the Guidance produces legal consequences; specifically, the potential termination of financial assistance for failure to comply.

Defendants offer two arguments as to why the Court should reject Plaintiffs' "assurances argument" regarding the legal consequences of the 2017 Guidance. First, Defendants argue as a "threshold reason" that the argument is untimely because it "was not presented in the first amended complaint, and it was mentioned in only one cursory paragraph of Plaintiffs' opposition

---

[5] The Court takes judicial notice of the "assurances" documents because they are matters of public record whose accuracy is not subject to reasonable dispute. *See Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (noting that at the Rule 12(b)(6) stage district courts may take judicial notice of official government documents). The Court cannot, however, draw inferences from those documents "or take notice of facts that might reasonably be disputed" at this stage. *See United States v. Corinthian Colls.*, 655 F.3d 984, 998-99 (9th Cir. 2011) (taking judicial notice at the Rule 12(b)(6) stage of the existence of documents but not factual matter within the documents that was "subject to reasonable dispute.").

[6] For purposes of this motion, the Court will address only the Assurance of Compliance. The Revised Assurances Template cited by Plaintiffs was issued in May 2017 and by its terms expired on September 30, 2017. *See* https://www2.ed.gov/admins/lead/account/stateplan17/reviseded18100576.pdf.

to Defendants' motion to dismiss." (Dkt. No. 115 at 9 n.1.) The Court disagrees. Plaintiffs now present the argument, which was timely raised in opposition to Defendants' motion to dismiss, in the context of this action's similarity to the intervening change in law reflected in *Gill*. Thus, the assurances argument is suitable for purposes of reconsideration.

Second, Defendants argue that the 2017 Guidance "is distinct from the 'regulations, guidelines, and standards' referred to in the assurance." (*Id.* at 9.) Defendants further argue that they "do[ ] not contend—and to be abundantly clear, will not contend and hereby disclaim[ ] any contention—that the 2017 Guidance is among the documents with which a recipient promises to comply when it signs an Assurance of Compliance." (*Id.* at 9-10.) Defendants' stance clearly differs from the government's position in *Gill*, wherein the government conceded at the summary judgment stage that "once an agency decides to participate, the eGuardian User Agreement permits the Department to revoke agency membership for violating various policies, including the Functional Standard." *See Gill*, 913 F.3d at 1185 (finding that the eGuardian membership revocation is a legal consequence for purposes of the second *Bennett* prong).

Defendants' argument, however, can succeed at the motion to dismiss stage only if they have established as a matter of law that the 2017 Guidance is not the type of "guidelines" referred to in the Assurance. They have not. Attorney argument that the guidelines referred to in the Assurance do not encompass the 2017 Guidance does not meet Defendants' burden, especially on a motion to dismiss where all plausible inferences must be drawn in Plaintiffs' favor. Further, Defendants' identification of other guidelines that they contend are the type of guidelines contemplated by the Assurance, (*see* Dkt. No. 48 at 15), does not mean that as a matter of law the 2017 Guidance does not also constitute such "guidelines." Defendants' citation to the statute describing the administrative and judicial process for terminating federal funding, (*see* Dkt. No. 115 at 10), likewise does not satisfy their burden because it does not address the Assurance's affirmative statement that "financial assistance can be terminated and the applicant can be declared ineligible to receive further assistance" for failure to comply, *see* U.S. Dep't of Educ., *Assurance of Compliance*. While a more fulsome record may establish that the 2017 Guidance is not encompassed by the Assurance, the Court cannot conclude based on the current record that as

a matter of law the Assurance does *not* encompass the 2017 Guidance and that the failure to follow the Guidance therefore *cannot* produce a legal consequence—withholding of federal funds for violating the Assurance. That said, Defendants are correct that the first amended complaint does not reference the Assurance of Compliance. Thus, *Gill* does not warrant reconsideration of the Court's *dismissal* of Plaintiffs' APA claim; it does, however, warrant reconsideration of the Court's dismissal with prejudice. Indeed, Plaintiffs assert that "[i]f this Motion is granted, Plaintiffs will include allegations about these assurances in their amended complaint." (Dkt. No. 116 at 4 n.4.)

### B. Practical Effects

Plaintiffs argue that *Gill* "holds that practical effects can independently establish finality" regardless of the legal consequences of the challenged government action. The Court is not convinced that the *Gill* court's holding regarding finality based on the practical effects of the Functional Standard can carry that weight. The holding instead appears intertwined with the court's holding regarding the legal consequences because both rely on the eGuardian User Agreement. The *Gill* court noted that in *Havasupai,* the court "held a Forest Service Mineral Report was a 'practical requirement to the continued operation' of a mine—and therefore final agency action—because the parties 'understood that mine operations would not resume until' the Mineral Report's determination of valid existing rights 'was completed.'" *Gill*, 465 F.3d at 1185 (quoting *Havasupai*, 906 F.3d at 1163). The *Gill* court found that the eGuardian User Agreement triggered a similar "immediate understanding" because participating agencies knew that they had to "conform to the Functional Standard when submitting SARs" or else their membership would be revoked. *Id.* Thus, the practical effects of the Functional Standard were tied to the eGuardian User Agreement—just like the Functional Standard's legal consequences. In other words, the practical effects were not entirely independent of the legal consequences.

The Assurance provides, in pertinent part, that "[t]he applicant understands that it must comply with" not only "Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. 1681 et seq.," but also "[a]ll regulations, guidelines, and standards issued by the Department" under Title IX "in order to continue receiving Federal financial assistance from the Department."

U.S. Dep't of Educ., *Assurance of Compliance*. As with the legal consequences of the 2017 Guidance, if the "guidelines" referenced in the Assurance encompass the 2017 Guidance, and universities and colleges believe that they do, then *Gill* supports the conclusion that the 2017 Guidance constitutes final agency action based on its practical effects.

\*\*\*

*Gill* reflects "shifting precedent" regarding the issue of finality and the facts in that case are sufficiently analogous to those here based on the Assurance of Compliance schools must sign to receive federal funding. Accordingly, the Court concludes that reconsideration of its October 2018 order is warranted to the extent it dismissed Plaintiffs' APA claim with prejudice. The first amended complaint does not reference the assurance documents; however, Plaintiffs assert that "[i]f this Motion is granted, Plaintiffs will include allegations about these assurances in their amended complaint." (Dkt. No. 116 at 4 n.4.) Thus, the Court dismisses the APA claim with leave to amend to include additional factual allegations regarding the finality of the 2017 Guidance.

## IV. Defendants' Additional Grounds for Dismissal

Defendants' opposition to the instant motion notes that "even if the Court were to reconsider its determination that the 2017 Guidance is not final agency action, that would not necessarily mean that the Court would reverse its dismissal of Plaintiffs' APA claims." (Dkt. No. 115 n.3.) The Court would instead "need to evaluate Defendants' alternative arguments in favor of dismissal of Plaintiffs' APA claims." (*Id.*) The Court agrees.

Defendants' motion to dismiss the first amended complaint argued that dismissal of Plaintiffs' APA claim was warranted both under Rule 12(b) for lack of standing and under Rule 12(b)(6) because the 2017 Guidance does not constitute final agency action and Plaintiffs have an adequate remedy outside of their APA claim.[7] The Court's October 2018 order concluded that

---

[7] Defendants also argued that dismissal was warranted "because the 2017 Guidance is not a legislative rule" requiring notice and comment under 5 U.S.C. § 553." (Dkt. No. 40 at 26.) Defendants' opposition to the instant motion reiterates those grounds for dismissal "if the Court were to reconsider its determination that the 2017 Guidance is not final agency action." (Dkt. No. 115 at 12 n.3.) Plaintiffs note, however, that their "APA claims do not include a notice and comment claim, as Defendants previously recognized." (Dkt. No. 116 at 6 n.6 (citing Defs.'

Plaintiffs demonstrated standing for their APA claim, and as previously discussed, *Gill* warrants reconsideration as to whether the 2017 Guidance constitutes final agency action under *Bennett*. The Court must thus address whether dismissal is otherwise warranted because Plaintiffs have an adequate remedy.

Review of agency action under the APA requires that a plaintiff have "no other adequate remedy in a court." 5 U.S.C. § 704. Defendants contend that Plaintiffs have an adequate remedy—they can sue schools "directly under Title IX." (Dkt. No. 40 at 26.) Defendants further argue that "if Plaintiffs believe that universities are acting inconsistently with Title IX because of how [the Department] is interpreting the statute, that is the course they are required to follow." (*Id.* (citing *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 383 F.3d 1047, 1047-48 (D.C. Cir. 2004)). The Court disagrees.

In *Nat'l Wrestling Coaches*, the "appellants . . . consistently maintained that, in subscribing to Department of Education enforcement policy interpretations, the universities themselves adopted unlawful policies and engaged in unlawful activities." *Id.* at 1048. The court denied appellants' petition for rehearing "because appellants [had] a private cause of action directly against the universities to seek redress for any proscribed acts of sex discrimination committed by the universities." *Id.* (citing as controlling the court's decision in *Washington Legal Foundation v. Alexander*, 984 F.2d 483 (D.C. Cir. 1993) ("*WLF*")). Therefore, appellants' action against the Department was "barred under 5 U.S.C. § 704" based on the existence of an adequate remedy.

The Court finds the dissent in this out-of-circuit case more persuasive, in that it distinguishes "*WLF* and kindred cases [in which] the agency was accused only of failing to stop or penalize illegal behavior by educational institutions," and notes that "by contrast, the agency [here] is charged with bullying those institutions into adopting unlawful practices." *Id.* at 1051. The dissent concludes that while "it is quite logical to have plaintiffs obtain relief through actions directly against wrongdoers when the agency's only role is neglect, it makes little sense to extend *WLF* to a context where the agency itself is, as alleged here, the driving force behind the

---

Reply in Supp. Mot. to Dismiss, Dkt. No. 48 at 13).) Thus, the Court need not address dismissal on those grounds.

11

illegality." *Id*. Here too, Plaintiffs allege that the Department is the "driving force behind the illegality" in issuing the 2017 Guidance. Plaintiffs seek to vacate the 2017 Guidance and are claiming injury—frustration of organizational mission and diversion of resources—resulting from the *issuance* of the Guidance, not necessarily its implementation by schools. Based on Plaintiffs' alleged injuries and the nature of the relief sought, the alternative remedy offered by the Department—suing individual schools—offers only "doubtful and limited relief," and is therefore an inadequate remedy under the APA. *See Bowen v. Massachusetts*, 487 U.S. 879, 901 (1988) ("[D]oubtful and limited relief . . . is not an adequate substitute" sufficient to bar review under Section 704).

Accordingly, the Court denies Defendants' motion to dismiss the APA claim to the extent Defendants argue dismissal is warranted under 5 U.S.C. § 704 based on the existence of an adequate remedy.

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiffs' motion for reconsideration of the Court's October 2018 order based on *Gill v. U.S. Dep't of Justice*, 913 F.3d 1179 (9th Cir. 2019). The Court amends its dismissal of the APA claim with prejudice to a dismissal with leave to amend. Further, the Court denies Defendants' motion to dismiss the APA claim to the extent dismissal is based on the existence of an adequate alternative remedy. Plaintiffs shall file an amended complaint within 30 days of this Order.

The Court will hold an initial case management conference on May 2, 2019 at 1:30 p.m. A joint case management conference statement shall be filed one week before.

This Docket disposes of Docket No. 107.

**IT IS SO ORDERED.**

Dated: March 29, 2019

*/s/ Jacqueline Scott Corley*
JACQUELINE SCOTT CORLEY
United States Magistrate Judge