1
2
3
4                    UNITED STATES DISTRICT COURT
5                  NORTHERN DISTRICT OF CALIFORNIA
6

7    SURVJUSTICE INC, et al.,              Case No. 18-cv-00535-JSC
8                 Plaintiffs,
                                           **ORDER DENYING MOTION TO**
9          v.                              **INTERVENE**
10   ELISABETH DEVOS, et al.,              Re: Dkt. No. 89
11                Defendants.
12

13         Six organizations—Women's and Children's Advocacy Project, Equal Means Equal,

14   National Coalition Against Violent Athletes, Allies Reaching for Equality, Women Matter, We

15   Are Woman, and SAFE Campuses, LLC (collectively, "Equality Advocates")—move to intervene

16   as Plaintiffs.[1]  (Dkt. No. 89.)[2]  After carefully considering the parties' submissions, and having

17   had the benefit of oral argument on March 7, 2019, the Court DENIES Equality Advocates'

18   motion to intervene because their motion is untimely, they have failed to establish Article III

19   standing, and Plaintiffs adequately represent their interests.

20                                **BACKGROUND**

21   **I.     Procedural and Factual Background**

22         Plaintiffs filed this lawsuit on January 25, 2018, challenging the lawfulness of the

23   Department of Education's interpretive guidance regarding Title IX of the Education Amendments

24   of 1972 (Title IX), issued by Defendants on September 22, 2017 ("2017 Guidance").  The

25   ───────────────

26   [1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
     636(c).  (Dkt. Nos. 18 & 36.)  Equality Advocates—not yet a party—has not consented, but the
27   Court may still decide the motion to intervene.  *See Robert Ito Farm, Inc. v. Cty. of Maui*, 842
     F.3d 681, 687 (9th Cir. 2016).
28   [2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

1    complaint alleged that the Guidance: (1) violated the Administrative Procedure Act ("APA"); (2)

2    violated the Equal Protection Guarantee of the Fifth Amendment; and (3) constituted an ultra vires

3    action. (Complaint ¶ 2-3.) Plaintiffs amended their complaint on February 21, 2018, and

4    Defendants moved to dismiss the action on May 2, 2018. (Dkt. Nos. 23 & 40.) Equality

5    Advocates filed a motion for leave to file an amicus brief on June 14, 2018, which the Court

6    granted on June 29, 2018. (Dkt. Nos. 46, 47, 57.) The parties appeared for oral argument on July

7    19, 2018. (Dkt. No. 64.) On August 31, 2018, Equality Advocates filed their first motion to

8    intervene. (Dkt. No. 71.) Both Plaintiffs and Defendants opposed that motion. (Dkt. Nos. 74 &

9    75.) The motion was set for hearing on October 18, 2018.

10       Prior to the hearing date, the Court granted Defendants' motion to dismiss. (Dkt. No. 81.)

11   The Court held that Plaintiffs' allegations were insufficient to show third party standing to bring

12   an equal protection claim or state a claim for relief for ultra vires action; the Court dismissed both

13   claims with leave to amend. (*Id.*) The Court dismissed with prejudice Plaintiffs' APA claim

14   because the 2017 Guidance did not constitute final agency action as a matter of law. (*Id.*) Three

15   days after the Court granted the motion to dismiss, Equality Advocates withdrew their first motion

16   to intervene. (Dkt. No. 82.) Plaintiffs filed a second amended complaint on October 31, 2018.

17   (Dkt. No. 86.) Equality Advocates moved to intervene for a second time as plaintiffs 20 days

18   later. (Dkt. No. 89.)

19       Equality Advocates seek leave to intervene as a matter of right pursuant to Federal Rule of

20   Civil Procedure 24(a), and in the alternative, seek permissive intervention pursuant to Federal

21   Rule of Civil Procedure 24(b)(1), "to advance claims on behalf of women as a class." (Dkt. No.

22   89 at 7.) Equality Advocates argue that intervention as of right is warranted because the interest of

23   women as a class are not adequately represented by Plaintiffs, as their only remaining claims are

24   equal protection and ultra vires action claims. Equality Advocates further argue that Plaintiffs'

25   equal protection claim is limited in scope because it only attacks Defendants' motivation as gender

26   bias and does not assert a claim of unequal treatment.

27       Equality Advocates' proposed complaint seeks declaratory and injunctive relief under the

28   following nine causes of action: (1) Action in Excess of Authority, APA, 5 U.S.C. § 706(2)(C); (2)

2

Actions Not in Accordance with Law, APA, 5 U.S.C. § 706(2)(A); (3) Actions Contrary to Constitutional Right, Power, Privilege, or Immunity, APA; (4) Actions Unwarranted by Facts, APA; (5) discrimination in violation of Title IX; (6) violation of the Tenth Amendment; (7) violation of the Spending Clause; (8) Declaratory Judgment; (9) Ultra Vires action.  (Dkt. No. 89 at ¶¶ 58-119.)  Equality Advocates seeks a court order: (1) vacating the 2017 Guidance; (2) enjoining Defendants from requiring entities to abide by the guidance; (3) declaring that Defendants have violated the Administrative Procedures Act; (4) declaring that the guidance is unlawful; (5) declaring that the rules are discriminatory; (6) entering a restraining order and permanent nationwide injunction.  (*Id.* at 48.)

Both Plaintiffs and Defendants again oppose Equality Advocates' motion to intervene. (*See* Dkt. Nos. 90 & 91.)

## DISCUSSION

## I.      INTERVENTION AS OF RIGHT

Federal Rule of Civil Procedure 24(a) provides, in relevant part, that, "[o]n timely motion, the court must permit anyone to intervene who . . .  (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  To establish the right to intervene under Rule 24(a)(2), a third party applicant must satisfy four elements:

> (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the  disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (internal quotation marks and citation omitted).  "While an applicant seeking to intervene has the burden to show that these four elements are met, the requirements are broadly interpreted in favor of intervention."  *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citation omitted).

//

United States District Court
Northern District of California

United States District Court
Northern District of California

### A.   Timeliness

Intervention sought as a matter "of right" can be granted only "[o]n timely motion." Fed. R. Civ. P. 24(a).  Timeliness is a threshold question addressed to the court's sound discretion.  The district court's timeliness determination is reviewable only for an abuse of discretion.  *NAACP v. New York*, 413 U.S. 345, 366 (1973); *Smith v. Los Angeles Unified School Dist.*, 830 F.3d 843, 853-854 (9th Cir. 2016).  Courts consider the following factors when determining whether intervention was timely: (1) the stage of the proceedings at the time the applicant seeks to intervene; (2) prejudice to the existing parties from applicant's delay in seeking leave to intervene; and (3) any reason for and the length of delay in seeking intervention (i.e., how long the prospective intervenors knew or reasonably should have known of their interest in the litigation). *Smith*, 830 F.3d at 854.  If a court finds "that the motion to intervene was not timely, [it] need not reach any of the remaining elements of Rule 24."  *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

Equality Advocates do not address the three timeliness factors in their moving papers but instead argue generally that their application is timely because Plaintiffs filed their second amended complaint in October 2018 and "all the issues raised by Equality Advocates have already been submitted in this case, in the form of an amicus brief and previously filed Motion to Intervene."  (Dkt. No. 89 at 16.)  Both parties argue that the application is untimely based on the factors outlined in *Smith*.

#### 1.   Stage of the Proceedings

As discussed above, Plaintiffs filed their second amended complaint on October 31, 2018, following the Court's October 1, 2018 order granting Defendants' motion to dismiss the first amended complaint.  Defendants argue that the case is at an advanced stage because the parties have already completed two rounds of briefing.  Defendants further argue that Equality Advocates' motion to intervene is untimely because they filed it after the parties agreed on a stipulated briefing schedule for Defendants' motion to dismiss.  Equality Advocates' only response is that "[p]laintiff filed their amended complaint only a week ago on October 31, 2018." (Dkt. No. 89 at 16.)  This response makes little sense, as Equality Advocates filed their motion to

United States District Court
Northern District of California

intervene on November 20, 2018, which was three weeks after the second amended complaint was filed. The Court has already ruled on two rounds of motions to dismiss and a motion for reconsideration. Equality Advocates bring claims that have already been substantively decided by the Court. Based on the status of the claims at issue at this stage of the litigation, this factor weighs against timeliness.

2.   <u>Prejudice to the Existing Parties from Applicant's Delay</u>

The most important factor in determining a motion under Rule 24(a) is whether the applicant's delay in seeking intervention will prejudice the existing parties. *Smith*, 830 F.3d at 857. Prejudice under this factor is "that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more difficult." *Id.* (internal citations omitted).

Equality Advocates argue that the parties will not be prejudiced by intervention because Equality Advocates' legal arguments were raised in their amicus brief and previous motion to intervene. Nonetheless, Defendants and Plaintiffs argue that they are prejudiced by the introduction of new legal theories, some of which the Court has already dismissed.[3] *See Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) (finding intervention would prejudice the parties where it would greatly widen the scope of litigation). Plaintiffs argue that they are further prejudiced because if Equality Advocates intervenes, Defendants are likely to move to dismiss Equality Advocates' additional claims which would require a third round of briefing. The parties' arguments regarding prejudice and undue delay based on the introduction of new claims are persuasive.[4]

---

[3] Plaintiffs and Defendants both note that Equality Advocates assert four claims under the APA despite the Courts previous ruling that the 2017 Guidance does not constitute final agency action as a matter of law. While the Court has reconsidered the dismissal with prejudice, (*see* Dkt. No. 121), granting intervention will require it to duplicate analysis it has already engaged in with current parties.

[4] In their reply, Equality Advocates insist that Defendants and Plaintiffs would not be burdened by Equality Advocates' APA claims because Plaintiffs did not assert the same facts and legal arguments to support their APA claims. Further, Equality Advocates concedes that Defendants will be required to file another motion to dismiss but argues that this will require few resources since it will mirror the motion to dismiss in the Massachusetts case.

In *Smith v. Marsh*, the Ninth Circuit affirmed the district court's conclusion that intervention would prejudice the parties where the putative intervenor sought to "inject new issues and matters that are well beyond the scope" of the parties' claims and defenses, and "many substantive and procedural issues had already been settled by the time of the intervention motion." 194 F.3d at 1051.  Although in *Smith* the length of delay between the complaint and the attempt to intervene (15 months) was longer than the delay here, similar indicators of prejudice apply. Equality Advocates' additional claims under the Tenth Amendment, Spending Clause, and Title IX generally would expand the scope of the litigation when neither Plaintiffs nor Defendants have addressed any of those legal theories.  *Smith*, 194 F.3d at 1051 (finding that intervenors would prejudice defendants by adding claims challenging the constitutionality of anti-discrimination law).  Thus, this factor weighs against timeliness.

### 3.    Applicants' Proffered Reason for Delay

The focus of the length of delay prong "is on the date the person attempting to intervene should have been aware his interests would no longer be protected adequately by the parties, rather than the date the person learned of the litigation."  *Officers for Justice v. Civil Service Comm'n of City & County of San Francisco*, 934 F.2d 1092, 1095 (9th Cir. 1991) (emphasis added) (internal quotation marks and alterations omitted).  Equality Advocates assert that they refrained from intervening in the hopes that Plaintiffs would amend their complaint to advance the legal theories set forth by Equality Advocates in their June 2018 amicus brief.  (Dkt. No. 89 at 9.)  This argument is unpersuasive.

Equality Advocates' motion to intervene acknowledges that Plaintiffs filed their original complaint in January 2018 and first amended complaint the following month, and that "[n]either complaint included a Title IX claim, a Tenth Amendment claim, or a Spending Clause claim." (Dkt. No. 89 at 11.)  Indeed, Plaintiffs assert that counsel for Equality Advocates "tweeted disagreement with the arguments made in the complaint, which disagreement is reflected in the legal arguments [Equality Advocates] now seek to inject into this litigation."  (Dkt. No. 91 at 6.) Equality Advocates also acknowledge that they were aware at the time Plaintiffs opposed Defendants' first motion to dismiss in June 2018 that Plaintiffs failed "to address[ ] or

United States District Court
Northern District of California

United States District Court
Northern District of California

1    advocate[ ] for equal treatment of women." (*Id.*)  At oral argument Equality Advocates explained

2    that they delayed moving to intervene in the hopes that Plaintiffs would change their tact.  But

3    differences in litigation strategy is an insufficient explanation for delay.  *League of United Latin*

4    *Am. Citizens*, 131 F.3d at 1306 (finding that because differences in litigation strategy did not

5    satisfy the inadequate representation prong because such differences could not justify the

6    applicants' delay).

7         In sum, Equality Advocates' proposed reason for delay fails to excuse their delay in

8    seeking to intervene.  Thus, this factor weighs against intervention.

9                                                      ***

10        Equality Advocates' motion to intervene is not timely.  The Court may deny Equality

11   Advocates motion to intervene on this basis alone.  *See League of United Latin Am. Citizens*, 131

12   F.3d at  1302 ("[I]f we find that the motion to intervene was not timely, [we] need not reach any of

13   the remaining elements of Rule 24.") (internal quotation marks and citation omitted).  Even if

14   timeliness was met, however, the remaining Rule 24(a)(2) elements are not satisfied.

15        **B.        Significant Protectable Interest Relating to the Controversy**

16        Equality Advocates have not adequately alleged standing; therefore, they have not satisfied

17   the significant protectable interest prong of Rule 24(a)(2).  Standing is implicitly addressed in the

18   significant interest requirement.  *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810,

19   821, n.3. (9th Cir. 2001); *see also Perry v. Schwarzenegger*, 630 F.3d 898, 904 (9th Cir. 2011)

20   (analyzing standing under the significant protectable interest prong).

21        An intervenor of right must demonstrate Article III standing when it seeks additional relief

22   beyond that which the plaintiff requests.  *Town of Chester, N.Y. v. Laroe Estates, Inc*., 137 S. Ct.

23   1645, 1651 (2017); *see also Hill v. Volkswagen*, 894 F.3d 1030, 1044 (9th Cir. 2018) (finding no

24   intervention as of right where requested relief goes beyond what the plaintiff requested and

25   intervenor has not adequately alleged Article III standing).  Equality Advocates'

26   proposed complaint seeks a court order: (1) vacating the 2017 Guidance; (2) enjoining Defendants

27   from requiring entities to abide by the guidance; (3) declaring that Defendants have violated the

28   Administrative Procedures Act; (4) declaring that the guidance is unlawful; (5) declaring that the

7

rules are discriminatory; and (6) entering a restraining order and permanent nationwide injunction. Plaintiffs' second amended complaint seeks a court order: (1) declaring the Dear Colleague Letter and the Q&A issued in September 2017 unlawful; (2) an injunction ordering Defendants to vacate the Dear Colleague Letter and the Q&A issued in September 2017; (3) an award of Plaintiffs costs, attorneys' fees, and other disbursements for this action; and (4) any other relief this Court deems appropriate.  Because Equality Advocates proposed complaint seeks additional claims for relief beyond what Plaintiffs' request, Equality Advocates must establish Article III standing.

Equality Advocates argue that they have standing under a "zone of interest" of Title IX, but as Defendants argue, they fail to show Article III standing as either an association or an organization.  Equality Advocates' reliance on standing under a "zone of interest" test fails absent a showing that they also satisfy Article III standing.  *See Pit River Tribe v. BLM,* 793 F.3d 1147, 1155 (9th Cir. 2015) (noting that the plaintiff is required to have Article III standing and to be in the zone of interest protected or regulated by the statute); *see also Federal Election Commission v. Akins*, 524 U.S. 11, 19-20 (1998) (addressing both the zone-of-interests test and Article III standing).  Equality Advocates could have established Article III standing by sufficiently pleading organizational or associational standing.  *See Smith v. Pacific Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) ( "[A]n organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission [by defendant's actions]; and (2) diversion of its resources to combat [that frustration]."); *Western Watersheds Project v. Kraayenbrink*, 620 F.3d 1187, 1198 (9th Cir. 2010) (finding that since intervenors had associational standing to pursue the appeal they had Article III standing).  However, Equality Advocates do not argue that they have organizational or associational standing and, as discussed below, the proposed complaint fails to plead facts demonstrating either associational or organizational standing.

### 1.   Organizational Standing

Under organizational standing, "[a]n organization may satisfy the Article III requirements of injury in fact if it can demonstrate: (1) frustration of its organizational mission [by the defendant's actions]; and (2) diversion of its resources to combat [that frustration]."  *Smith v. Pac.*

United States District Court
Northern District of California

1  *Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004).  Here, each intervenor must establish

2  its own standing.

3          *a.*        *Frustration of Organizational Mission*

4        Where a defendant's conduct has "perceptibly impaired" an organizational plaintiff's

5  "ability to provide [services to its clients], there can be no question that the organization has

6  suffered injury in fact."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).  Here, the

7  only intervenor who alleges that it has clients who suffered an injury as a result of the 2017

8  Guidance is the Women's and Children's Advocacy Project ("WCAP").  WCAP alleges that two

9  of its clients were "subjected to policies and procedures that afforded them separate, different and

10  worse treatment compared to the policies and procedures afforded to students who suffered harms

11  based on race and national origin.  Both clients filed complaints with the Department of

12  Education's Office for Civil Rights before the DeVos Rules were issued."  (Dkt. No. 89 at 13.)

13  However, WCAP has not satisfied the second prong of organizational standing, which requires

14  diversion of resources.

15        The other five intervenors do not adequately allege that their organizational missions have

16  been frustrated as a result of the 2017 Title IX policy change.  The five intervenors other than

17  WCAP provide their mission and organization history as a basis for their interest in this litigation.

18  Several of the intervenors —Equal Means Equal, National Coalition Against Violent Athletes,

19  Allies Reaching for Equality, Safe Campuses, LLC—allege that since the release of the 2017

20  Guidance, they  have "served many women and victims of sex-based harms who were subjected to

21  discrimination by schools in the form of separate, different, and unequal treatment in the response

22  to and redress of sex-based harm on campus."  (Dkt. No. 89 at 13-16.)  However, this does not

23  sufficiently allege that they have observed a decrease in student-filed complaints, have been

24  frustrated due to declines in reporting, or that the 2017 Guidance made it more difficult to obtain

25  beneficial outcomes for their clients.  Simply stating their organizational mission and that they

26  have served clients after the 2017 Guidance is not enough to show that Defendants' conduct has

27  "perceptibly impaired" an organizational plaintiff's "ability to provide [services to its clients]."

28

1    *Havens*, 455 U.S. at 379.  Therefore, they have not sufficiently alleged that their organizational

2    mission is frustrated such that they have standing.

3                    b.        *Diversion of Resources*

4            "[A] diversion-of-resources injury is sufficient to establish organizational standing at the

5    pleading stage, even when it is 'broadly alleged.'" *Nat'l Council of La Raza v. Cegavske*, 800

6    F.3d 1032, 1040 (9th Cir. 2015) (quoting *Havens*, 455 U.S. at 379).  Equality Advocates have not

7    sufficiently pled any diversion-of-resources injury.

8            Equality Advocates have not sufficiently alleged that the 2017 Guidance has required them

9    to divert resources that otherwise "would have been spent on some other activity that advances

10   their goals."  *See Nat'l Council of La Raza*, 800 F.3d at 1040 (finding organizational standing

11   where plaintiffs were not "simply going about their 'business as usual,' unaffected by

12   [defendant's] conduct."); *see also Smith*, 358 F.3d at 1105 (allegations of diversion of resources

13   sufficient to survive motion to dismiss where plaintiff-organization "specifically stated in its

14   complaint that 'in order to monitor the violations and educate the public regarding the

15   discrimination at issue, [plaintiff] has had (and, until the discrimination is corrected, will continue)

16   to divert its scarce resources from other efforts to [further its mission]' ").  Equality Advocates do

17   not make any claims that they have had to increase the number of students' rights trainings,

18   increase staff attention to Title IX policy, or divert staff resources to getting school officials to

19   respond to complaints.

20           Equality Advocates, as a whole, provide no allegations as to how their resources have been

21   diverted from other matters due to the 2017 Guidance.

22                    2.        Associational Standing

23           "[A]n association has standing to bring suit on behalf of its members when: (a) its

24   members would otherwise have standing to sue in their own right; (b) the interests it seeks to

25   protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief

26   requested requires the participation of individual members in the lawsuit."  *United Food &*

27   *Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (internal

28   quotation marks and citation omitted).  Equality Advocates has not pleaded that that any of the

United States District Court
Northern District of California

10

1   intervenors are associations or that they have members; thus, they do not establish Article III

2   associational standing.

3                                                \*\*\*

4       Equality Advocates have not established that they have standing to intervene; therefore,

5   they do not have a significant protectable interest in this litigation.  *Southwest Ctr. for Biological*

6   *Diversity,* 268 F.3d at 810 n.3.

7         **C.**        **Whether Disposition Will Impair or Impede Equality Advocates' Interest**

8       The third intervention prong considers whether the disposition of the action may, as a

9   practical matter, impair or impede the applicant's ability to protect its interest.  *Prete*, 438 F.3d at

10   954.  Equality Advocates make no argument under the third prong, but generally argue that the

11   "interest of women as a class are not adequately represented by the plaintiffs"; namely, because

12   Plaintiffs do not assert any Title IX claim, a Tenth Amendment claim, Spending Clause claim, or

13   claims for women's rights to equal treatment.  (Dkt. No. 89 at 2-3.)

14       Where "other means" exist to protect the intervenors' interests, such as an alternative

15   forum, the intervenors' interests may not be impaired.  *California ex rel. Lockyer v. United States*,

16   450 F.3d 436, 442 (9th Cir. 2006).  Here, the District of Massachusetts is another forum in which

17   two of the intervenors have pending litigation in which they assert the same Title IX, Spending

18   Clause and Tenth Amendment claims Equality Advocates include in their proposed complaint.  As

19   Plaintiffs have not asserted these claims, it is unclear how Equality Advocates' interests will be

20   impaired by this litigation.  And, in any event, Equality Advocates is not bound by a judgment in

21   this Court.  This factor, too, warrants denial of the motion to intervene.

22         **D.**        **Whether Parties Adequately Represent the Applicant's Interest**

23       A putative intervenor must also show that the existing parties do not adequately represent

24   the intervenor's interest. Fed. R. Civ. P. 24(a)(2).  "If an applicant for intervention and an existing

25   party share the same ultimate objective, a presumption of adequacy of representation arises."

26   *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011).  Both

27   Equality Advocates and Plaintiffs seek to have the 2017 Guidance vacated.  As long as their

28   objectives are the same, the proposed intervenor's disagreement with the existing party's litigation

strategy or tactics does not make their interests adverse so as to justify intervention. *League of United Latin Am. Citizens*, 131 F.3d at 1306.

In their reply, Equality Advocates argue that their objectives are not the same as Plaintiffs because Equality Advocates seeks a "declaration that the Rules are discriminatory" and "a nationwide injunction." This argument is unpersuasive because the ultimate purpose of this litigation is the same: to vacate the 2017 Guidance. Equality Advocates' argument that Plaintiffs do not adequately represent them because they fail to assert Tenth Amendment, Spending Clause, and Title IX claims is also unavailing because this merely reflects a difference in litigation strategy and not the ultimate objective. *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.,* No. 15-cv-01257-JST, 2015 U.S. Dist. LEXIS 114227, at *12 (N.D. Cal. Aug. 27, 2015) (finding that intervenors argument that plaintiffs do not adequately represent them because they did not challenge the constitutionality of the defendant's actions were differences in litigation strategy); *See Renewable Land, LLC v. Rising Tree Wind Farm LLC*, No. 1:12-cv-00809-RJT, 2013 U.S .Dist. LEXIS 34908, at *10 (E.D. Cal. Mar. 11, 2013) (finding that intervenors motion for preliminary injunction amounted to nothing more than differences in litigation strategy). In sum, Equality Advocates have not established that Plaintiffs do not adequately represent Equality Advocates' ultimate interest.

***

The Court DENIES Equality Advocates' Rule 24(a)(2) motion to intervene as of right because Equality Advocates have not established that (1) they timely moved to intervene, (2) they have a protectable interest in the lawsuit's subject matter, (3) that any interest they may have will as a practical matter be impaired by the disposition of this lawsuit, or (4) that Plaintiffs will not adequately protect those interests.

## II.    PERMISSIVE INTERVENTION

Rule 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who . . .  has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In the Ninth Circuit, permissive intervention generally requires: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common

question of law and fact between the movant's claim or defense and the main action." *Freedom From Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011).  Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention.  *See Orange v. Air Cal*., 799 F.2d 535, 539 (9th Cir.1986) ("Permissive intervention is committed to the broad discretion of the district court.").  Where a litigant timely presents such an interest in intervention, courts consider a number of factors in deciding whether to permit intervention, including:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] whether changes have occurred in the litigation so that intervention that was  once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Spangler v. Pasadena Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir. 1977) (footnotes omitted).

As discussed above, Equality Advocates' motion is untimely.  *League of United Latin Am. Citizens*, 131 F.3d at 1308 ("In the context of permissive intervention . . .  we analyze the timeliness element more strictly than we do with intervention as of right.").  Equality Advocates had notice of Plaintiffs' arguments at the outset of this litigation and chose to file an amicus brief instead of seeking to intervene.  Further, Equality Advocates have not established Article III standing.  Additionally, Plaintiffs will be able to adequately represent Equality Advocates in this litigation as both parties' ultimate objective is the same.  The Court declines to exercise its discretion to permit Equality Advocates to intervene.

## CONCLUSION

For the reasons discussed above, the Court DENIES Equality Advocates' Motion for Leave to Intervene under Federal Rules of Civil Procedure 24(a)(2) and 24(b)(1)(B).

This Order disposes of Docket No. 89.

//

//

13

1

**IT IS SO ORDERED.**

2  Dated: March 29, 2019

3

4  JACQUELINE SCOTT CORLEY
United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California