**UNITED STATES DISTRICT COURT for the
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| SURVJUSTICE, INC., EQUAL RIGHTS ADVOCATES, and VICTIM RIGHTS LAW CENTER, <br><br> Plaintiffs, <br><br> v. <br><br> ELISABETH D. DEVOS, *in her official capacity as Secretary of Education*, KENNETH L. MARCUS, *in his official capacity as Assistant Secretary for Civil Rights*, and U.S. DEPARTMENT OF EDUCATION, <br><br> Defendants. | Case No. 18-cv-0535-JSC <br><br> **DECLARATION OF WILLIAM E. TRACHMAN** |

I, William E. Trachman, declare the following:

1. I have worked at the U.S. Department of Education, (the "Department"), Office for Civil Rights ("OCR") since December 18, 2017. I initially served as Deputy Assistant Secretary for Policy and Development, and I currently serve as Senior Counsel to the Office for Civil Rights.

2. I am aware of litigation against the Department in the above-referenced matter, which attempts to challenge a Dear Colleague Letter issued by OCR on September 22, 2017, and the accompanying Q&A on Campus Sexual Misconduct (collectively, the "2017 Guidance").

3. I make this declaration based on my personal knowledge and information made available to me in the course of my official duties.

**Core Responsibilities of OCR**

4. OCR's stated mission is to ensure equal access to education and to promote educational excellence throughout the nation through vigorous enforcement of civil rights.[1]

---

[1] *See* U.S. Department of Education, About OCR, https://www2.ed.gov/about/offices/list/ocr/aboutocr.html

**Declaration of William E. Trachman, *SurvJustice v. DeVos*, No. 18-cv-0535-JSC**

1

5. OCR enforces several Federal civil rights laws that prohibit discrimination in programs or activities that receive Federal financial assistance from the Department ("recipients"), including Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1682 *et seq.*, which prohibits recipients of federal education funds from engaging in discrimination on the basis of sex.

6. OCR's primary activities include (i) resolving complaints of discrimination filed by the public, pursuant to 34 C.F.R. § 100.7(b); (ii) conducting agency-initiated investigations, typically called compliance reviews or directed investigations, pursuant to 34 C.F.R. § 100.7(a); (iii) monitoring recipients' adherence to resolution agreements reached with OCR; (iv) issuing regulations interpreting the civil rights laws under its jurisdiction, including Title IX, and policy guidance to clarify how it evaluates a recipient's compliance with the statutory and regulatory obligations; (v) answering stakeholder inquiries and responding to requests for information from and providing technical assistance to recipients and stakeholders; and (vi) administering and disseminating the Civil Rights Data Collection.

**OCR Enforcement**

7. Title IX requires the Department to enforce the nondiscrimination provisions in the statute and accompanying regulations through an administrative enforcement process. *See* 20 U.S.C. § 1682.

8. To this end, the Department has promulgated regulations setting forth procedures for the administrative enforcement process. *See* 34 C.F.R. § 106.71 (incorporating the procedures in the Title VI regulations at 34 C.F.R. §§ 100.6-100.11).

9. In most cases, the administrative enforcement process begins when a complaint is filed with OCR. *See* 34 C.F.R. § 100.7(b). If, after investigating a complaint alleging violations under Title IX, for example, OCR determines that a recipient is violating Title IX, it must first seek to achieve voluntary compliance. *See* 20 U.S.C. § 1682(2) (voluntary compliance); 34 C.F.R. § 100.7(c), (d) (investigation); *id.* § 100.8(d) (voluntary compliance).

10. If voluntary compliance is not achieved, OCR can effectuate compliance with Title IX in one of two ways: (1) It can initiate administrative proceedings to withhold further funds; or (2) it can refer the matter to DOJ with a recommendation to file a civil action to enjoin further violations (1 and 2 collectively referred to as "enforcement action"). *See* 20 U.S.C. § 1682; 34 C.F.R. § 100.8(a). The conclusion of

1  either process could result in the Department's termination of funding, refusing to grant or to continue
2  funding, or decision to take other action authorized by law. *See* 20 U.S.C. § 1682.

3  11. If OCR initiates the administrative proceedings, that process requires a hearing before an
4  administrative law judge, with a right to an administrative appeal, and discretionary review by the
5  Secretary of Education. *See* 20 U.S.C. § 1682(1); 34 C.F.R. § 100.10(b), (e). If, after this process, a
6  recipient is found to be in violation of Title IX, it can restore its eligibility by complying with the terms
7  of the final administrative decision. *Id.* § 100.10(g). After any adverse administrative decision, a recipient
8  is entitled to judicial review in the court of appeals for the district in which the recipient is located. *See*
9  20 U.S.C. § 1683 (incorporating 20 U.S.C. § 1234g(b)).

10  12. If OCR refers the matter to DOJ, DOJ can seek an injunction in Federal district court to restrain
11  the violations. *See* 20 U.S.C. § 1682; 34 C.F.R. § 100.8(a)(1).

12  13. The Department cannot terminate any funding until 30 days after reporting the termination to
13  both houses of Congress. *See* 20 U.S.C. § 1682.

14  **2017 Guidance**

15  14. As part of my duties in OCR, I understand that if OCR initiates an enforcement action, it
16  would be based on Title IX and its implementing regulations. The 2017 Guidance states that the
17  guidance "does not add requirements to applicable law," and that "enforcement efforts proceed from
18  Title IX itself and its implementing regulations." 2017 Q&A at 7 and 2017 DCL at 2.

19  **Assurances**

20  15. Every application for Department funds must include an assurance from an applicant or
21  recipient that its education program or activity will be operated in compliance with the civil rights laws,
22  including Title IX. *See* 34 C.F.R. 106.4(a).

23  16. Consistent with the Paperwork Reduction Act of 1995, the Department publishes in the
24  Federal Register every three years the Assurance of Compliance–Civil Rights Certificate ("Assurance of
25  Compliance"). *See* https://www.govinfo.gov/content/pkg/FR-2018-02-20/pdf/2018-03334.pdf.

26  17. As part of my duties in OCR, I participated in the most recent development, review, and
27  issuance of the Assurance of Compliance.

28

**Declaration of William E. Trachman, *SurvJustice v. DeVos*, No. 18-cv-0535-JSC**
3

18. OCR collects the Assurance of Compliance from all applicants of Federal financial assistance, whether received directly or through another grant, from the Department.

19. Under the Assurance of Compliance, the applicants agree to comply with the civil rights statutes enforced by OCR, including Title IX, and all regulations, guidelines, and standards under that statute. U.S. Dep't of Educ., Office for Civil Rights, *Assurance of Compliance—Civil Rights Certificate*, *available at* www.ed.gov/ocr/letters/boy-scouts-assurance-form.pdf. OCR may use the signed assurances of compliance in an enforcement action if an applicant is found to have violated one of these civil rights laws.

20. The Assurance of Compliance refers to the obligation of applicants to comply with "[a]ll regulations, guidelines, and standards issued by the Department under any of [the listed] statutes." The terms "guidelines" and "standards" addressed in the Assurance of Compliance refer to certain notices or appendices that the Department published in the Federal Register or Code of Federal Regulations, or to specific standards referenced in the regulations. Examples include: *Guidelines for Eliminating Discrimination and Denial of Services on the Basis of Race, Color, National Origin, Sex, and Handicap*, 34 C.F.R. pt. 100, Appendix B; *Guidelines on current title IX requirements related to single-sex classes and schools*, 67 Fed. Reg. 31102-03, 31098-99 (2002) (issued pursuant to Section 5131(c) of the Elementary and Secondary Education Act of 1965, which required that the Secretary "issue guidelines for local educational agencies" seeking funding for "programs to provide same-gender schools and classrooms").

21. The Department's interpretation of the Assurance of Compliance is that the "regulations, guidelines, and standards issued by the Department under any of [the listed] statutes" to which the Assurance of Compliance refers do not include the 2017 Guidance. Therefore, if OCR initiates an enforcement action under the Assurance of Compliance, it would proceed under Title IX and its implementing regulations, not the 2017 Guidance.

22. In addition to the OCR Assurance of Compliance, grant applicants must also complete the OMB Assurance for Non-Construction Programs ("OMB assurance"), Standard Form 424B. This is an assurance from grant applicants to certify compliance with, among other things, the terms of the grant,

various laws related to that grant, and "all applicable requirements of all other Federal laws, executive orders, regulations, and policies governing this program."

23. The Department's interpretation of the OMB assurance is that the "Federal laws, executive orders, regulations, and policies governing this program" to which the OMB assurance refers do not include the 2017 Guidance. Therefore, if OCR initiates an enforcement action under the OMB assurance it would proceed under Title IX and its implementing regulations, not the 2017 Guidance.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 29, 2019

William E. Trachman